## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

SHANNON OLSON,

      Plaintiff,

  v.

TAKEDA PHARMACEUTICALS
AMERICA, INC., TAKEDA
PHARMACEUTICALS USA, INC., f/k/a
TAKEDA PHARMACEUTICALS
NORTH AMERICA, INC., TAKEDA
PHARMACEUTICALS COMPANY,
LIMITED, TAKEDA
PHARMACEUTICALS COMPANY
LIMITED, N.A., JODI GAYLE-
GARCIA, in her individual and official
capacities, MATTHEW HAND, in his
individual and official capacities,
GREGORY CROUCH, in his individual
and official capacities, CHRISTINE
MEALEY, in her individual and official
capacities, HEIDI MILLER, in her
individual and official capacities,

      Defendants.

**CASE NO: 8:23-CV-00590**

## DEFENDANT TAKEDA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## I.    INTRODUCTION

Plaintiff Shannon Olson filed a 15-count shotgun complaint against Takeda and several current or former Takeda employees claiming that Takeda discriminated against her based on a bevy of protected characteristics, failed to accommodate her, retaliated against her, and engaged in intentional infliction of emotional distress. Stripped of its inflammatory rhetoric, however, and this

96298583v.5

Complaint only lists a series of petty grievances—not actionable discrimination or retaliation, and certainly not anything extreme or outrageous.

Olson complains that a newer employee received more favorable treatment than her and that Takeda did not adequately recognize her accomplishments. She disagrees with a decision by Takeda's third-party benefits administrator to deny her request for short-term disability coverage. And she faults Takeda for refusing to approve her request for a religious exemption from Takeda's vaccination policy, as well as Takeda's decision to initially deny her request for an exemption under the Americans With Disability Act ("ADA"), which it reconsidered. From these allegations, Olson asserts that Takeda discriminated against her on the basis of her race, age, gender, religion, and disability, retaliated against her, created a hostile work environment, and engaged in intentional infliction of emotional distress.

Olson's Complaint should be dismissed. Initially, all of her discrimination claims fail because she does not allege an actionable adverse employment action. Those claims, to the extent they are based on the supposedly more favorable treatment of a junior colleague, are also deficient because the new employee is not a viable comparator to Olson, an employee with 23 years of experience at Takeda. And, to the extent she claims Takeda failed to promote her, she failed to exhaust her administrative remedies. Olson's effort to recast her disparate treatment claims as a disparate impact claim also fails because she provides no statistical evidence to support a disparate impact claim or explain how Takeda's policies had a disparate impact.

2

Olson's claims for retaliation and hostile work environment should be dismissed with leave to replead, because they are quintessential shotgun claims that leave both Takeda and the Court guessing as to what facts underlie these claims.

And Olson's failure-to-accommodate claim is deficient because, as noted by Olson, Takeda reconsidered the denial of her request to be exempted from Takeda's vaccination policy.

Olson's claim for intentional infliction of emotional distress ("IIED") must be dismissed, because the conduct alleged in the Complaint is not sufficiently extreme or outrageous. Florida courts are extremely reluctant to allow IIED claims based on workplace conduct, even when the plaintiff claims the employer made insensitive or disparaging comments or engaged in intimidating acts.

Finally, Olson's claims for "damages" and "declaratory relief" are not viable claims but, rather, generic freestanding requests for relief that are duplicative of specified causes of action and do not create a separate basis for liability or relief.

In sum, Takeda respectfully requests that the Court dismiss Olson's Complaint in its entirety, with leave to replead only her claims for retaliation (Counts V, VI, X, XIV) and hostile work environment (Counts IX and XII).

## II.    FACTUAL ALLEGATIONS

Shannon Olson is a plaintiff without an injury. Olson worked at Takeda for 23 years in a sales representative role. (Compl. ¶ 1., ECF No. 1.) After more than two decades of issue-free employment, Olson alleges a new supervisor, Jodi Gayle-

Garcia, initiated the parade of minor inconveniences that make up the bulk of this lawsuit.

### A. Olson complains she was treated worse than an under-40, African American employee.

In August 2019, Takeda hired Jordan Davis (African American, under 40). (*Id.* ¶¶ 4, 9.) At the time Takeda hired him, Davis also had a role as an assistant basketball coach under Renaldo Garcia, Gayle-Garcia's husband. (*Id.* ¶¶ 4-5.) Olson spends pages complaining about how Davis, a new hire, was given opportunities to improve while Takeda showed insufficient appreciation for her level of performance. (*See id.* ¶¶ 3, 22, 24, 30-31.) According to Olson, Davis also received preferential treatment because he was allowed to maintain a separate position as a varsity basketball coach in addition to his employment at Takeda. (*Id.* ¶ 14.) In contrast, she points to her disclosing a patent she obtained to Takeda, which resulted in her being investigated for potentially conflicting business activity. (*Id.* ¶¶ 11, 92.)

Friction between Olson and Davis continued. Davis did not perform at a level Olson found acceptable, and she claims his poor performance generated more work for her. (*Id.* ¶¶ 21-40.) Gayle-Garcia attempted to have Olson work with Davis to improve his performance, and Davis apparently did not respond in a constructive manner. (*Id.*) Olson also perceived that Gayle-Garcia or other employees at Takeda were more empathetic to Davis than her—a disparity she ascribes to his age, race, and gender. (*Id.* ¶¶ 15-17.)

4

On January 8, 2021, Takeda promoted Gayle-Garcia into a different role at Takeda, and Matthew Hand, another Takeda employee, became Olson's interim manager. (*Id.* ¶ 44.) Around the same time, Takeda announced that the company was changing its COVID-19 mitigation protocols and returning sales personnel to the field, provided that they comply with certain mitigation measures, including masking COVID-19 testing, and social distancing. (*Id.* ¶¶ 53-54.) Davis apparently responded to this policy change by refusing to return to in-person work. (*Id.* ¶ 54.)

Olson claims the additional workload and responsibilities related to picking up the slack from Davis caused her to request a leave of absence, which Takeda granted. (*Id.* ¶ 59.) When Olson sought coverage under Takeda's short-term disability policy, Lincoln Financial Group, the leave administrator, denied coverage. (*Id.* ¶ 62.) While Olson was out on leave, Takeda fired Davis. (*See id.* ¶ 73.)

On June 30, 2021, Olson returned to work. (*Id.* ¶ 71.) Upon her return from leave, Hand delivered Olson's performance review and informed her that she was not selected for a Territory Manager promotion. (*Id.* ¶¶ 74-77.) Olson does not allege that she applied for this promotion.

In August 2021, Olson requested a meeting with Takeda HR and expressed concern that her performance review had been completed while she was on leave. (*Id.* ¶ 83.) Later in the month, Olson had a meeting with her new supervisor and Greg Crouch, a senior manager at Takeda. (*Id.*) By her account, Olson characterizes the meeting as hostile and alleges that Hand and Crouch seemed aggravated by the

meeting, as well as Olson's efforts to revive her dissatisfaction with how Davis—now a former employee—was treated relative to her. (*Id.* ¶¶ 83-93.)

## B. Olson requests a religious exemption from Takeda's COVID-19 vaccination policy

As 2021 progressed, Takeda gradually resumed in-person activity for vaccinated employees. Olson had not provided proof of vaccination, so she was ineligible to attend in-person events. (*See id.* ¶ 80.) And, in September 2021, Takeda notified Olson that she would need to be vaccinated against COVID-19 to remain employed by Takeda. (*Id.* ¶ 97.) In response, Olson submitted a request for a religious accommodation to Takeda's vaccination policy. (*Id.* ¶ 99.) According to Olson, "fundamental to her Christian faith is a teaching that requires her to refuse medical intervention, including a vaccination, if her informed conscience comes to this sure judgment." (*Id.* ¶ 101.)

After Olson submitted her request for a religious exemption, Takeda HR met with her to discuss her request for a religious accommodation, which Olson again characterizes as confrontational. (*Id.* ¶¶ 106-07.) Soon after, Takeda informed Olson her request for a religious accommodation had been denied. (*Id.* ¶ 114.)

## C. Olson requests and receives a medical exemption from Takeda's COVID-19 vaccination policy

On October 22, 2021, Olson requested a medical accommodation request seeking an exemption from Takeda's vaccination policy. (*Id.* ¶¶ 119-20.) Takeda initially denied her request for a medical exemption and informed her that she had seven days to become vaccinated or she would be terminated. (*Id.* ¶ 122.) Olson

went to Crouch to request that Takeda reconsider its decision. (*Id.* ¶¶ 125-27.) It did; Takeda provided Olson with a 90-day extension to become vaccinated. (*Id.*)

Tellingly, Olson ends her story there. She does not claim that she requested any further accommodation. And she does not allege that Takeda terminated her employment.

### D.    Olson files her Charge of Discrimination and this lawsuit.

On December 22, 2201, Olson filed a Charge of Discrimination with the EEOC and the Florida Commission on Human Relations ("FCHR"). (*Id.* ¶ 129.) In her Charge, Olson identified the following bases for her Charge:

- Olson claims that Davis received preferential treatment by Takeda, both in terms of job performance and his ability to keep a job as a basketball coach. Olson claims this treatment was connected to her race, sex, and age.

- Due to what she describes as a hostile work environment, she had to take leave and requested short-term disability coverage, which Lincoln Financial Group denied.

- Olson requested a religious exemption from Takeda's vaccination policy, and Takeda denied her request.

- Olson requested a medical accommodation from Takeda's vaccination policy, which was initially denied before being extended.

(Charge of Discrimination, attached as **Exhibit A**.)[1] Notably, her Charge does not claim that she applied for a promotion or that Takeda failed to promote her because of any of the preceding issues.

---

[1] The Court may consider the Charge of Discrimination because it is incorporated into the Complaint. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Fernandez-Esnard v. Mount Sinai Med. Ctr. of Fla., Inc.*, No. 1:16-CV-23555-UU, 2016 WL 10932953, at *1 (S.D. Fla. Nov. 15, 2016) (Court may consider charge

After Olson received a right-to-sue letter, Olson filed a 15-count complaint against Takeda and five current or former Takeda employees. In her Complaint, she asserts the following claims: (1) Disparate treatment under Title VII for gender and age (Count I); Disparate impact under Title VII for gender and age (Count II); (3) Religious discrimination under Title VII and the FCRA (Counts III and IV); (4) Retaliation under Title VII, the FCRA, and the ADA (Counts V, VI, X, and IV); (5) Failure to accommodate under the ADA and FCRA (Counts VIII and XII); (6) Hostile work environment under the ADA and FCRA (Counts IX and XIII); and (7) Intentional infliction of emotional distress (Count XV).

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. The Court accepts the factual allegations as true and construes them in the light most favorable to the non-moving party. *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (citation omitted). Legal conclusions, though, "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009), and the complaint, stripped of all legal conclusions, must make a claim for relief not merely possible, but plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

of discrimination at motion to dismiss stage); *Rodrigues v. SCM I Invs., LLC*, No. 2:15-CV-128-FTM-29CM, 2015 WL 6704296, at *2 (M.D. Fla. Nov. 2, 2015) (same). *Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)*

## IV.    ARGUMENT

Olson's Complaint conflates length with merit. Most of Olson's allegations concern trivial non-events that do not constitute an adverse employment action or relate to a non-viable comparator. Her core complaint is that she is unhappy with how a new employee received opportunities to improve while she wasn't adequately recognized by Takeda and that Takeda—in unspecified ways—discriminated or retaliated against her. These disagreements do not qualify as adverse employment actions. Additionally, she is not similarly situated to Davis, her proposed comparator for her race, age, and gender discrimination claims, and, to the extent she claims Takeda failed to promote her, she failed to exhaust her administrative remedies.

Olson's disparate impact claim also fails because she provides no statistical evidence to support a disparate impact claim or explain how Takeda's policies had a disparate impact. Olson's claims for retaliation and hostile work environment should be dismissed with leave to replead because they are quintessential shotgun claims that leave both Takeda and the Court guessing as to what facts underlie these claims. And Olson's failure-to-accommodate claim is deficient because, as noted by Olson, Takeda reconsidered the denial of her request to be exempted from Takeda's vaccination policy.

Finally, Olson's claim for intentional infliction of emotional distress ("IIED") must be dismissed because the conduct alleged in the Complaint is not sufficiently extreme or outrageous.

9

**A.    Olson has not stated a claim for disparate treatment based on her age, gender, disability, or religion under Title VII or the FCRA.**

Even assuming the factual allegations in the Complaint are true, Olson did not suffer an adverse employment action in connection with any protected characteristic. To the extent these claims are based on Takeda's supposedly preferential treatment of Davis, the claims also fail because Davis is not a viable comparator. Finally, Olson's claim that Takeda declined to promote her is not actionable because she failed to exhaust her administrative remedies.

*i.   Olson did not suffer an adverse action.*

These claims uniformly require that Olson must have suffered an adverse employment action to have a viable claim. *See, e.g.*, *Bhuiyan v. PNC Bank, Nat'l Ass'n*, No. 19-14265, 2023 WL 2733510, at *4 (11th Cir. Mar. 31, 2023) (citing *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021) (requiring adverse employment action for disparate treatment claim based on religion)); *Maynard v. Bd. of Regents of Div. of Fla. Dept. of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (adverse employment action required for Title VII disparate treatment claims) (citation omitted). An adverse employment action does not extend to any quibble between an employer and employee. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) ("Trivial slights are not

actionable [under Title VII].")).[2] Rather, the alleged adverse employment action must amount to "a serious and material change in the terms, conditions, or privileges of [her] employment." *Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008) (cleaned up). A sufficiently material change can be discrete, like a termination, demotion, suspension without pay, or other specific actions. *Monaghan*, 955 F.3d at 860 (citation omitted). Olson fails to allege an actionable adverse employment action.

**Outside Employment Policy.** Olson misrepresents that Takeda completely prohibited outside employment and references Takeda's "Outside Employment and Other Activities" policy. In reality, Takeda permits outside employment *subject to Takeda's approval* and conditions detailed in its policy. (*See* Outside Employment Policy, attached as **Exhibit B**.)[3] Olson merely claims that Takeda allowed Davis to have another position—a determination expressly permitted by the policy, and which does not qualify as an adverse action *as to her employment*. Nor does the fact that Takeda investigated her potential outside

---

[2] So too for Olson's FCRA claims. Discrimination claims under the ADA, Title VII, and the FCRA are governed by the same burdens of proof and analytical framework. *See Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007) (noting disability claims under the FCRA and ADA are analyzed under the same framework); *Addison v. Fla. Dep't of Corr.*, 683 F. App'x 770, 773-74 (11th Cir. 2017) ("Claims brought under the FCRA are analyzed under the same standards as Title VII because the FCRA is modeled on Title VII.") (citing *Jones v. United Space Alliance, L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007) ("Florida courts apply Title VII caselaw when they interpret the FCRA")).

[3] This policy is referenced in Olson's Complaint and may likewise be considered without converting this motion into a motion for summary judgment.

employment activity in connection with a patent she obtained. Olson does not allege that Takeda prevented her from engaging in outside employment activities or that she requested authorization under Takeda's policy and Takeda improperly denied her request. Thus, Olson's claims fail to the extent they are based on Takeda's Outside Employment Policy.

**Denial of Short-Term Disability Benefits**. Olson's attempt to blame Takeda for Lincoln Financial Group's determination that she was ineligible for short-term disability benefits likewise fails. Lincoln Financial Group is a third-party administrator and made the decision to deny Olson's short-term disability request. (*See id.* ¶ 61.) Olson has not and cannot allege that *Takeda* denied her request for leave, because that is not how disability benefit plans work. Thus, Olson cannot base a *discrimination claim* on Takeda for the decision by a plan administrator, because Takeda did not make the benefits determination.

**Denial of religious accommodation request**. Olson did not experience any adverse employment action because Takeda denied her religious exemption request. As noted by Olson, she received an ADA-based extension on the compliance deadline for Takeda's vaccination policy. (*Id.* ¶¶ 127-28.) She does not allege that Takeda rescinded that ADA-based exemption, and she therefore did not suffer an adverse employment action as a result of this denial.

**More favorable treatment of Davis**. Olson's efforts to base a claim on Takeda's supposedly more favorable treatment of Davis fares no better. Fundamentally, Olson's complaint is that Takeda did not recognize that Davis was

a low-performing employee quickly enough and that his poor performance increased her own workload. (*See* Compl. ¶¶ 21-42.) But that theory, even if correct, does not amount to an adverse employment action *against Olson*. *Monaghan*, 955 F.3d at 860 (noting that, unless pled as a hostile work environment claim, the adverse employment action required for a disparate treatment claim must be a discrete action, like a reduction in pay, suspension, or termination).

### ii. *Davis is not a viable comparator.*

To the extent Olson claims discrimination because Takeda treated Davis more favorably because of his race, age, and gender, this claim likewise fails because Davis is not a viable comparator. Absent direct evidence, Olson must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) she was treated less favorably than a similarly-situated individual outside her protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The proposed comparator must be similarly situated in all material respects. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1227-28 (11th Cir. 2019).

Even accepting the allegations in the Complaint as true, Olson and Davis are not similarly situated. Olson was a 23-year veteran at Takeda and a Field Senior Sales Representative. (Compl. ¶¶ 1, 41.) Davis, by contrast, was a new hire and a

Sales Representative—not a Senior Sales Representative. (*Id.* ¶¶ 4, 10.)[4] Olson and Davis are therefore not similarly situated in all material respects, and Olson cannot rely on Davis as a proposed comparator. *Lewis*, 918 F.3d at 1228 (recognizing "different work histories" as a basis for different treatment); *see also Brown v. Synovus Fin. Corp.*, 783 F. App'x 932, 930 (11th Cir. 2019) (occupying a different position meant proposed comparator was not similarly situated); *Waldera v. MarketSource, Inc.*, No. 1:19-CV-3495-TCB, 2021 WL 4164002, at *7 (N.D. Ga. Aug. 5, 2021) (distinguishing proposed comparators on basis of significant difference in experience).

### iii. Olson failed to exhaust her administrative remedies regarding her alleged promotion opportunity.

Olson suggests her claim includes a claim that she should have been promoted, but Takeda did not promote her because of some protected characteristic. (Compl. ¶¶ 153, 186, 205, 211, 217.) She cannot include any alleged failure to promote as part of her claims because she did not exhaust her administrative remedies for this alleged adverse action.

To pursue a claim under Title VII, the FCRA, and the ADA, Olson must exhaust her administrative remedies. *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1339-40 (11th Cir. 2017); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004); *McCullough v. Nesco Res. LLC*, 760 F. App'x 642, 646 (11th Cir.

---

[4] It should not come as a surprise that Olson had better productivity than Davis and that Takeda would ask an experienced employee like Olson to work with Davis to improve his performance.

96298583v.5

2019) ("Before a plaintiff may bring an FCRA civil action, he must exhaust his administrative remedies, as set forth in Fla. Stat. § 760.11."). "The administrative process is initiated by timely filing a charge of discrimination [with the EEOC]." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). "In light of the purpose of the EEOC exhaustion requirement, [the Eleventh Circuit has] held that a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotation and citation omitted). Although EEOC complaints are liberally construed, "a plaintiff is precluded from raising allegations in a civil action unless they are reasonably related to the underlying charges raised before the EEOC." *Price v. M & H Valve Co.*, 177 F. App'x 1, 14 (11th Cir. 2006).

Here, Olson did not claim in her Charge that Takeda failed to promote her because of any protected characteristic. (*See* Charge of Discrimination, Ex. A.) Olson also did not claim that she applied for any promotion opportunity. (*See generally* Compl.) Accordingly, this aspect of Olson's claim must be dismissed.

### B.    Olson has not stated a claim under a disparate impact theory.

Olson next claims that Takeda's DEI and "Sales Workday" policies led to a disparate impact in terms of Takeda's treatment of white women compared to black men. (Compl. ¶ 158.) This claim simply recasts her deficient disparate treatment allegations into a new theory, and it should likewise be dismissed. Moreover, Olson did not exhaust her administrative remedies with respect to this claim.

Disparate impact is a distinct theory of liability from disparate treatment. To establish a *prima facie* case of disparate treatment, Olson must identify the "the specific employment practice that allegedly has a disproportionate impact" and demonstrate causation through statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination. *Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 810 (11th Cir. 2015). Even at the motion to dismiss stage, a plaintiff "usually" must cite "a statistical disparity" to plausibly allege a disparate impact claim. *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 497 (11th Cir. 2015); *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d Cir. 2020). "[T]he statistics must plausibly suggest that the challenged practice actually has a disparate impact," and the statistics must also "focus on the disparity between appropriate comparator groups." *Mandala*, 975 F.3d at 210.

Olson utterly fails to explain how Takeda's policies policy resulted in prohibited discrimination. She does not claim that Takeda's policies establishes differing performance standards for employees based on protected characteristics.

16

She does not explain what aspect of either policy alleged led to a disparate impact. She offers no statistical proof or potential disparity created by Takeda's policies, or any aspect of either policy that had been applied in a way to generate a statistically significant disparate impact on white women over the age of 40. The claim must therefore be dismissed.

Even if Olson's disparate impact claim were adequately pled, she failed to exhaust her administrative remedies. Olson's Charge does not identify either of these policies or claim that Takeda applied them in a manner that resulted in a disparate impact. (*See* Charge of Discrimination, Ex. A.) "Courts have consistently required that discrimination charges 'identify or describe the neutral employment practice which is alleged to disproportionately affect protected employees' in order to exhaust disparate-impact claims." *Murray v. Bombardier, Aerospace Corp.*, No. 18-CV-61226-WPD, 2019 WL 13256084, at *2 (S.D. Fla. Feb. 21, 2019) (quoting *Brown v. Ameriprise Fin. Servs., Inc.*, 707 F. Supp. 2d 971, 976 (D. Minn. 2010)); *see also Lee v. GEO Secure Servs., LLC*, No. 22-CV-60689, 2022 WL 17740272, at *5 (S.D. Fla. Nov. 16, 2022), *R&R adopted*, No. 22-CIV-60689-RAR, 2022 WL 17736219 (S.D. Fla. Dec. 16, 2022) (collecting cases and noting "[s]everal other courts have similarly concluded that a plaintiff failed to exhaust administrative remedies as to a disparate impact claim where their EEOC complaint alleged only disparate treatment and failed to identify a facially neutral policy allegedly causing a disparate impact"). Olson's generic allegations that Takeda had a "culture" that

developed "double standards" is insufficient to satisfy her exhaustion requirement, particularly where she fails to identify any impacted individual other than herself.

### C. Olson does not identify how Takeda failed to accommodate her alleged disability.

Olson fails to identify how Takeda failed to accommodate her alleged disability—or even what alleged disability forms the basis of this claim. She claims she has a "disability" (singular) and that Takeda "discriminated against Plaintiff because of his [*sic*] disability by failing or refusing to provide Olson a reasonable accommodation." (Compl. ¶ 236.)[5] But this claim completely fails to address: (1) what accommodation Olson sought; (2) whether Takeda denied the requested accommodation; and (3) the basis for the alleged denial. *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020).

Assuming Olson is referring to Takeda's initial decision to deny her requested exemption from Takeda's vaccination policy, Takeda provided her with an extension on compliance with the vaccination policy, and Olson does not allege (and cannot allege) that Takeda rescinded this extension or denied a later requested accommodation. The Court should therefore dismiss Olson's claims for failure to accommodate under Title VII and the FCRA.

### D. Olson has not stated a claim for retaliation or hostile work environment.

---

[5] Olson may also claim to have PTSD, but none of the factual allegations discuss this alleged condition, and it is unclear whether this is detritus from another complaint that was inadvertently retained or a part of her Complaint here. (Compl. ¶ 219.)

Olson fails to plead the events that she claims constitute retaliation. In other counts, Olson actually identifies the events underlying the related claims. (*See* Compl. ¶ 178 (listing alleged forms of religious discrimination); ¶ 225 (listing alleged forms of disability discrimination).) For her retaliation claims, however, Olson provides only the shotgun-style Complaint this circuit has condemned many times over to claim that "[i]n retaliation for engaging in protected activity, Defendant subjected Plaintiff to adverse employment action as alleged above and incorporated by reference herein." (*Id.* ¶¶ 209, 215, 297.)[6]

In a recent concurring opinion, Judge Tjoflat noted the danger posed by this type of generic pleading, which can result in both the defendant and the Court not learning about the contours of a plaintiff's claim until well into discovery. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 868 (11th Cir. 2020) (Tjoflat, J., concurring). By generically incorporating all allegations in the Complaint into a retaliation count, Takeda cannot discern what Olson actually contends to be retaliation by Takeda. When faced with an impermissible shotgun pleading, the Court should require Olson to re-plead the claim rather than attempt to divine what Olson is claiming to be retaliation. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002); *see also Byrne*

---

[6] In Count X (ADA Retaliation), Olson does describe certain specific actions that allegedly constitute retaliation. (*Id.* ¶¶ 249-58.) This allegation is muddled, however, because it appears to refer to a different defendant and events that are not described in the factual allegations of the Complaint, so it is unclear whether these are allegations Olson is actually making or erroneously included material from a prior complaint. (*See id.*)

19

*v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), *abrogated on other grounds recognized by Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 n.10 (11th Cir. 2018) ("As we have stated on several occasions over the past twelve years, if, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, must intervene *sua sponte* and order a repleader."). The Court should require Olson to actually and specifically identify the facts regarding how Takeda allegedly retaliated against her or created a hostile work environment.

### E. Olson has not stated a claim for intentional infliction of emotional distress.

Olson's IIED claim fares no better because she failed to allege sufficiently extreme or outrageous conduct by Takeda. "To state a cause of action for intentional infliction of emotional distress, a complaint must allege four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. 2d DCA 2007). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (internal citation and quotations omitted).

In evaluating whether conduct is adequately outrageous, "the subjective response of the person who is the target of the actor's conduct does not control . . . Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is atrocious, and utterly intolerable in a civilized

community." *Malverty v. Equifax Info. Servs., LLC*, 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019) (citing *Liberty Mut. Ins. Co.*, 968 So. 2d at 595).

Florida law requires a "particularly high" degree of outrageousness to survive a motion to dismiss. *See Patterson v. Downtown Med. &Diagnostic Ctr., Inc.*, 866 F. Supp. 1379, 1383 (M.D. Fla. 1994). False accusations, threats, or insults are insufficiently outrageous or intolerable to generate liability. *See Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) (quoting *Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (per curiam)). And even prolonged courses of disturbing or inappropriate conduct cannot state a claim as a matter of Florida law. *See Lay v. Roux Labs., Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (finding insufficient, as a matter of law, plaintiff's claim for intentional infliction of emotional distress when employer threatened her with job loss and used humiliating language).

Florida courts elevate this lofty standard even further when the alleged IIED occurred in the course of employment. *See Lara v. Painting Concepts, Inc.*, No. 09-81573-CIV, 2010 WL 11505192, at *2 (S.D. Fla. May 21, 2010) (collecting cases and noting that precedent "especially within the employment context" demonstrates "an unwillingness by Florida courts to allow a plaintiff to proceed on [an IIED] theory").

Olson's allegations do not come close to meeting this standard. Her allegations against Takeda are based on her apparent belief that Davis received better treatment than her, that his poor performance generated more work for her,

96298583v.5

Takeda personnel expressed more empathy towards him than toward her, and the denial of her religious accommodation and initial denial of her requested ADA accommodation. (Compl. ¶ 303.)

Garden-variety disagreements during a job—even those involving allegedly hostile behavior or "vicious verbal attacks"—are insufficiently extreme and outrageous to form a viable IIED claim. *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012); *see also Roberts v. Amtrust Bank*, No. 14-81266-CIV, 2014 WL 7273982, at *3 (S.D. Fla. Dec. 22, 2014) ("the complained-about conduct concerns allegations that Plaintiff was held to a 'higher' standard than other employees and was subjected to criticisms of her work performance and unjust evaluations . . . Given the outrageousness requirement, the Court finds that this behavior does not meet the [IIED] standard."); *Lay*, 379 So. 2d at 452 (rejecting IIED claim when employer threatened plaintiff with job loss and used humiliating language); *Williams*, 877 So. 2d 869, 870-71 (Fla. 3d DCA 2004) (constant use of racial slurs and offensive racial language and false accusations are insufficiently outrageous because liability for IIED "does not extend to mere insults, indignities, threats, or false accusations"). Nothing in Olson's Complaint amounts to the extreme and outrageous conduct required to state an IIED claim. Instead, Olson has simply parroted the same allegations underlying her discrimination claims, which describe her disagreement with certain decisions during her employment, but none of which are sufficiently severe to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be

regarded as atrocious, and utterly intolerable in a civilized community." *Roberts, 2014 WL 7273982, at \*2* (dismissing IIED claim based on allegations that plaintiff was held to a "higher standard" and subjected to unwarranted criticisms of her work performance) (citation omitted). The Court should therefore also dismiss Olson's IIED claim with prejudice.

**F.    There is no such thing as a claim for "damages" or freestanding "declaratory relief."**

Olson concludes with a generalized request for "damages" and "declaratory relief." (Compl. ¶¶ 305-08.) Olson's claim for damages simply repeats the relief sought in prior counts, and her request for declaratory judgment is duplicative of the coercive claims she raises earlier without identifying any basis for declaratory relief.

**V.    CONCLUSION**

For the foregoing reasons, the Court should grant Takeda's motion and dismiss Olson's Complaint, with leave to replead only her claims for retaliation (Counts V, VI, X, XIV) and hostile work environment (Counts IX and XII).

96298583v.5

DATED: July 24, 2023

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Alex Meier*

    Alex Meier
    ameier@seyfarth.com
    Florida Bar No. 1011557
    SEYFARTH SHAW LLP
    1075 Peachtree Street, N.E.
    Suite 2500
    Atlanta, Georgia 30309-3958
    Telephone: (404) 885-1500
    Facsimile: (404) 892-7056

    Attorney for Defendant Takeda
    Pharmaceuticals America, Inc.

24

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

SHANNON OLSON,

        Plaintiff,

   v.

TAKEDA PHARMACEUTICALS
AMERICA, INC., TAKEDA
PHARMACEUTICALS USA, INC., f/k/a
TAKEDA PHARMACEUTICALS
NORTH AMERICA, INC., TAKEDA
PHARMACEUTICALS COMPANY,
LIMITED, TAKEDA
PHARMACEUTICALS COMPANY
LIMITED, N.A., JODI GAYLE-
GARCIA, in her individual and official
capacities, MATTHEW HAND, in his
individual and official capacities,
GREGORY CROUCH, in his individual
and official capacities, CHRISTINE
MEALEY, in her individual and official
capacities, HEIDI MILLER, in her
individual and official capacities,

        Defendants.

**CASE NO: 8:23-CV-00590**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2023, I electronically filed DEFENDANT

TAKEDA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO

DISMISS PLAINTIFF'S COMPLAINT using the CM/ECF system, which will

automatically send e-mail notification of such filing to all counsel of record.

                By:    <u>/s/ Alex Meier</u>
                      Alex Meier
                      Attorney for Defendant

96298583v.5