**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

SHANNON OLSON,

Plaintiff,

v.

TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA PHARMACEUTICALS USA, INC., f/k/a TAKEDA PHARMACEUTICALS NORTH AMERICA, INC., TAKEDA PHARMACEUTICALS COMPANY, LIMITED, TAKEDA PHARMACEUTICALS COMPANY LIMITED, N.A., JODI GAYLE-GARCIA, in her individual and official capacities, MATTHEW HAND, in his individual and official capacities, GREGORY CROUCH, in his individual and official capacities, CHRISTINE MEALEY, in her individual and official capacities, HEIDI MILLER, in her individual and official capacities,

Defendants.

**CASE NO: 8:23-CV-00590**

**DEFENDANT MATTHEW HAND'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Shannon Olson attempts to equate ordinary disagreements in the workplace into conduct that is so outrageous it cannot be tolerated in a civilized society. She seeks to hold Defendant Matthew Hand liable for intentional infliction of emotional distress under Florida law, despite failing to allege facts that meet the standards for this claim. Hand therefore moves to dismiss Olson's claims against

him with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## MEMORANDUM OF LAW

## I. INTRODUCTION

Plaintiff Shannon Olson filed a kitchen-sink lawsuit against Takeda and several current and formal employees alleging discrimination or retaliation based on almost every available protected class.[1] Olson also brings claims for intentional infliction of emotional distress ("IIED") (Count XV) which must be dismissed. Florida courts are extremely reluctant to allow IIED claims based on workplace conduct, even when the plaintiff claims the employer made insensitive or disparaging comments or engaged in intimidating acts. The Court has even found that conduct far worse than what Olson alleges, does not to meet the IIED standard. Olson only lists a litany of perceived slights and complaints about her employment at Takeda, which fall far short of the high standard to establish that Hand's alleged conduct is "atrocious, and utterly intolerable in a civilized community." *Malverty v. Equifax Info. Servs.*, LLC, 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019) (citing *LeGrande v. Emmanuel*, 889 So. 2d 991, 994 (Fla. 3d DCA 2004)).

## II. OLSON'S ALLEGATIONS

[1] On July 25, 2023, Olson stipulated to the dismissal of the FCRA and Title VII claims against the individual Defendants in this action, so this motion does not address those claims. Hand anticipates filing a joint stipulation memorializing that dismissal in the near future.

After nearly two decades of issue-free employment at Takeda, Plaintiff Shannon Olson, a long-time sales representative, hit a rough patch. (Compl. ¶¶ 1-2, ECF No. 1.) It began once Olson's direct supervisor Defendant Jodi Gayle-Garcia, a District Business Manager, began working at Takeda, and continued after Olson began reporting to Defendant Matthew Hand, the Interim Jacksonville District Manager. (*Id.* ¶¶ 2,5,44.) Hand stepped in after Takeda promoted Gayle-Garcia into a different role at the company. (*Id.* ¶44.)

### A. Olson complains to Hand about being treated worse than an under-40, African American employee.

According to Olson, Hand was responsible for the enforcement of Takeda's policies, which she believes were disparately applied to her and Mr. Jordan Davis, an under 40 African American male. (*Id.* ¶ 5.). Davis, Olson claims, was hired by Gayle-Garcia to fill unspecified obligations under Takeda's Diversity, Inclusion, and Equity Policy, which is neither described nor attached to the Complaint. (*Id.* ¶ 9.) Olson claims that Gayle-Garcia "vested Mr. Davis, a Takeda employee identically situated to Plaintiff, with privileges and immunities to which Plaintiff had not been afforded…." (*Id.* pg. 3). According to Olson, Hand picked up where Gayle-Garcia left off, allowing Davis to do what he wanted while she was subject to several of Takeda's policies, and forced to pick up Davis's slack.

Not long after Hand began, Olson advised him of Davis's lackluster performance and the ongoing discrepancies between the number of meetings she scheduled, and the number of engagements Davis had. (*Id.* ¶¶ 44-46.) Olson explained that the discrepancy was unlikely to change because Davis had a second

job, which precluded him from meeting the expectations of his job. (*Id.*) Davis's "second job" which Olson claims violated Takeda's Outside Employment Policy, was his role as an assistant basketball coach under Renaldo Garcia, Gayle-Garcia's husband. (Id. ¶¶ 4-5, 14.).

Over the next few months, Olson raised several concerns to Hand regarding Davis, including that he was fabricating his weekly meetings to reflect a higher engagement and that he was severely underperforming, which increased Olson's own workload. (*Id.* ¶¶ 50, 57.) During this entire time, Davis maintained his role as an assistant basketball coach. According to Olson, Hand acknowledged her concerns and shared her frustrations regarding Davis's performance. (*Id.* ¶ 57).

Olson claims that as a direct result of her workload and disparate treatment, she requested paid short disability leave from April 9, 2021, to June 30, 2021. (*Id.* ¶¶ 59, 71.) According to Olson, Takeda, through its insurance provider Lincoln Financial Group ("LFG"), denied her request for paid disability leave on May 4, 2021. (*Id.*) Olson also claims her workload continued to accumulate while she was on leave. (*Id.* ¶ 66.)

### B. Olson returns from Short Term Disability Leave and continues to be treated unfairly.

By the time Olson returned from her leave, Davis was no longer employed with Takeda. (*Id.* ¶ 73). On July 20, 2021, Olson met with Hand to discuss her performance review for the April 1, 2020, through March 31, 2021, fiscal year, and learned that she was not selected for the Territory Manager promotion. (*Id.* ¶¶ 74-77.) Olson found it suspicious that her performance review was completed as part

of Takeda's normal performance review process while she was out on leave and that Hand relied in part of feedback from Jodi Gayle-Garcia, her prior manager. (*Id.*)

Following her review, on August 20, 2021, Olson claims that the next notable incident between her and Hand occurred when Hand and Greg Crouch, a senior Takeda employee, became confrontational during a meeting regarding her compliance with Takeda's COVID-19 testing protocol. (*Id.* ¶¶ 74-77.) Olson claims Hand and Crouch spoke to her in a "vicious tone." (*Id.* ¶ 87.) They began "treating [Olson] as if she had committed murder" and "their demeanors appeared as if they were angry, scared, and almost as though they lacked control of their own emotions and words." (*Id.*) Olson claims, that had she not informed Hand of her plan to get tested, he would not have inquired or required that she get tested. (*Id.*) In Olson's mind, Hand, and Crouch's hostility towards her, resulted from her complaints about Davis's poor performance and her questioning why her performance evaluation was completed during her leave. (*Id.* ¶¶ 82, 87.)

Olson escalated her concerns to Takeda HR related to her performance review and to what she perceived as Takeda's preferential treatment towards Davis. (*Id.* ¶¶ 82, 89.) Olson also claimed Takeda personnel failed to exhibit sufficient empathy for her circumstances and failed to adequately address her concerns. (*Id.* ¶¶ 94, 96-97.)

### C. Olson requests a religious exemption from Takeda's COVID-19 vaccination policy.

On September 10, 2021, Takeda told Olson that she must become fully vaccinated to continue her employment. (*Id.* ¶ 97). On or about September 22, 2021, Olson requested a religious accommodation from complying with Takeda's vaccination policy. (*Id.* ¶ 99). Shortly after she made her request, Olson spoke with Employee Relations Partner, Christine Mealey to discuss her accommodation request. (*Id.* ¶ 106). During this call, Mealey asked Olson questions about her requested exemption, which Olson again characterizes as hostile or demeaning. (*Id.*)

On October 13, 2021, Takeda denied Olson's religious accommodation request. (*Id.* ¶¶ 114-115).

### D. Olson requests a medical accommodation to circumvent Takeda's vaccination mandate.

After Takeda denied her request for a religious exemption from Takeda's vaccination policy, Olson requested a medical accommodation to avoid complying with Takeda's vaccination policy. (*Id.* ¶¶ 119-122). Takeda initially denied her request but later authorized a 90-day extension for Olson to comply with its vaccination policy. (*Id.* ¶¶ 121, 127-28). Olson does not claim that Takeda denied any further accommodation requests, terminated her employment, or subsequently took any adverse action against her in connection with its vaccination policy. (*See generally* Compl.) Nor does Olson explain what, if any, role Hand had in evaluating her accommodation requests.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. The Court accepts the factual allegations as true and construes them in the light most favorable to the non-moving party. *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (citation omitted). Legal conclusions, though, "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009), and the complaint, stripped of all legal conclusions, must make a claim for relief not merely possible, but plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV. ARGUMENT

Hand should not be a defendant in this lawsuit. Olson's common-law claim for IIED is defective because Hand's alleged actions are not remotely close to the "extreme and outrageous" conduct required to state a viable IIED claim. Hand therefore requests that the Court dismiss Olson's IIED claim against him with prejudice.

### A. Olson cannot state an IIED claim against Hand based on animus for her colleague.

Olson's IIED claim must fail because she does not allege sufficient, extreme or outrageous conduct by Hand. "To state a cause of action for intentional infliction of emotional distress, a complaint must allege four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Liberty Mut. Ins.*

*Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. 2d DCA 2007). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."(*Id.*) (internal citation and quotations omitted).

In evaluating whether conduct is adequately outrageous, "the subjective response of the person who is the target of the actor's conduct does not control . . . Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is atrocious, and utterly intolerable in a civilized community." *Malverty v. Equifax Info. Servs.*, LLC, 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019) (citing *Liberty Mut. Ins. Co.*, 968 So. 2d at 595.

Florida law requires a "particularly high" degree of outrageousness to survive a motion to dismiss. *See Patterson v. Downtown Med. &Diagnostic Ctr., Inc.*, 866 F. Supp. 1379, 1383 (M.D. Fla. 1994). False accusations, threats, or insults are insufficiently outrageous or intolerable to generate liability. *See Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) (quoting *Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (per curiam)). And even prolonged courses of disturbing or inappropriate conduct cannot state a claim as a matter of Florida law. *See Lay v. Roux Labs., Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (finding insufficient, as a matter of law, plaintiff's claim for intentional infliction of emotional distress when employer threatened her with job loss and used humiliating language).

Florida courts elevate this lofty standard even further when the alleged IIED occurred in the course of employment. *See Lara v. Painting Concepts, Inc.*, No.

09-81573-CIV, 2010 WL 11505192, at *2 (S.D. Fla. May 21, 2010) (collecting cases and noting that precedent "especially within the employment context" demonstrates "an unwillingness by Florida courts to allow a plaintiff to proceed on [an IIED] theory").

Olson's allegations do not come close to meeting this standard. Her allegations against Hand are rooted in her deep animus towards Davis and her apparent belief that Davis received better treatment than her, that his poor performance generated more work for her, that Takeda personnel, including Hand, expressed more empathy towards Davis than toward her, and that Hand continued what she believes was unfair treatment initiated by Gayle-Garcia before her promotion to another role within the company. (Compl. ¶¶ 3, 5, 9, 22-51, 94 ECF No. 1.) Olson does not allege that Hand had any involvement related to evaluating or deciding her requests for a religious or medical exemption from Takeda's vaccination policy. (*See generally* Compl.)

Garden-variety disagreements during a job—even those involving allegedly hostile behavior or "vicious verbal attacks"— are insufficiently extreme and outrageous to form a viable IIED claim. *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012); *see also* *Roberts v. Amtrust Bank*, 2014 U.S. Dist. LEXIS 176128, *7 ("the complained-about conduct concerns allegations that Plaintiff was held to a 'higher' standard than other employees and was subjected to criticisms of her work performance and unjust evaluations . . . Given the outrageousness requirement, the Court finds that this behavior does not meet the [IIED]

standard."); *Lay*, 379 So. 2d at 452 (rejecting IIED claim when employer threatened plaintiff with job loss and used humiliating language); *Williams*, 877 So. 2d 869, 870-71 (Fla. 3d DCA 2004) (constant use of racial slurs and offensive racial language and false accusations are insufficiently outrageous because liability for IIED "does not extend to mere insults, indignities, threats, or false accusations"). None of Hand's alleged actions even come close to behavior that the Court has determined does not meet the IIED standard. Nothing alleged is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Roberts, 2014 WL 7273982, at *2 (dismissing IIED claim based on allegations that plaintiff was held to a "higher standard" and subjected to unwarranted criticisms of her work performance) (citation omitted). The Court should therefore also dismiss Olson's IIED claim with prejudice.

### B. Olson's freestanding claims for "damages" and "declaratory relief" are not viable.

To the extent that Olson's freestanding claims for "damages" and "declaratory relief" are viewed as claims rather than requests for relief, those claims fail because they lack any explanation for why Hand is liable and because Olson's statutory and common-law claims are defective.

## V. CONCLUSION

If any harassment occurred, it has been Olson's harassment of current or former Takeda employees by asserting obviously defective and frivolous claims against them rooted in her obsession and aversion for Davis. Olson's IIED claim

against Hand fails because she does not allege sufficiently extreme and outrageous conduct. Olson's IIED claim against Hand should therefore be dismissed with prejudice.

**Local Rule 3.01(g) Certification**

The undersigned certifies that on July 25, 2023, counsel conferred with Plaintiff's counsel via email regarding the dismissal of Plaintiff's Title VII and FCRA claims against the individual Defendants in this action. The parties agreed to stipulate to the dismissal of all counts against Hand other than Count XV (IIED).

DATED: July 27, 2023

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Alex Meier*

Alex Meier
ameier@seyfarth.com
Florida Bar No. 1011557
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Attorney for Defendant Takeda Pharmaceuticals America, Inc.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

SHANNON OLSON,

Plaintiff,

v.

TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA PHARMACEUTICALS USA, INC., f/k/a TAKEDA PHARMACEUTICALS NORTH AMERICA, INC., TAKEDA PHARMACEUTICALS COMPANY, LIMITED, TAKEDA PHARMACEUTICALS COMPANY LIMITED, N.A., JODI GAYLE-GARCIA, in her individual and official capacities, MATTHEW HAND, in his individual and official capacities, GREGORY CROUCH, in his individual and official capacities, CHRISTINE MEALEY, in her individual and official capacities, HEIDI MILLER, in her individual and official capacities,

Defendants.

**CASE NO: 8:23-CV-00590**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2023, I electronically filed DEFENDANT MATTHEW HAND'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

By: */s/ Alex Meier*
Alex Meier
Attorney for Defendant