UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

SHANNON OLSON,

          Plaintiff,

   v.

TAKEDA PHARMACEUTICALS
AMERICA, INC, JODI GAYLE-
GARCIA, in her individual and official
capacities, MATTHEW HAND, in his
individual and official capacities,
GREGORY CROUCH, in his individual
and official capacities, CHRISTINE
MEALEY, in her individual and official
capacities, HEIDI MILLER, in her
individual and official capacities,

          Defendants.

CASE NO: 8:23-CV-00590

JURY TRIAL DEMANDED

**DEFENDANTS JODI GAYLE-GARCIA,
MATTHEW HAND, AND CHRISTINE MEALEY'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Shannon Olson ("Olson") attempts to equate ordinary disagreements in the workplace into conduct that is so outrageous it cannot be tolerated in a civilized society. However, Olson fails to state a claim for intentional infliction of emotional distress because the alleged conduct is not sufficiently extreme and outrageous to state a viable claim under Florida law. Therefore Defendants Jodi Gayle-Garcia ("Garcia"), Matthew Hand ("Hand"), and Christine Mealey ("Mealey"), (collectively the "Individual Defendants"), move to dismiss

97952454v.2

Olson's claims against them with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff Shannon Olson filed a kitchen-sink lawsuit against Takeda and several current and former employees. This Amended Complaint maintains Olson's claim against the Individual Defendants for intentional infliction of emotional distress ("IIED") (Count XV) which must fail. Olson lists a litany of perceived slights and complaints about her employment at Takeda, but the facts alleged fall far short of the high standard to establish that the Individual Defendants' alleged conduct is "atrocious, and utterly intolerable in a civilized community." *Malverty v. Equifax Info. Servs.*, LLC, 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019) (citing *LeGrande v. Emmanuel*, 889 So. 2d 991, 994 (Fla. 3d DCA 2004)).

### II.    OLSON'S ALLEGATIONS

After nearly two decades of issue-free employment at Takeda, Plaintiff Shannon Olson hit a rough patch. (Am. Compl. ¶ 1, ECF No. 33.) Olson, a long-time sales representative, began reporting to Defendant Jodi Gayle-Garcia, a District Business Manager at Takeda. (*Id.* ¶¶ 1-2.)

---

[1] Olson also made a claim for individual liability under Title VII against the Individual Defendants. On September 5, 2023, counsel for Olson confirmed that this claim should have been limited to Takeda. Thus, this motion is unopposed to the extent it seeks the dismissal of Count I against the Individual Defendants.

97952454v.2

Gayle-Garcia, according to Olson, hired Jordan Davis, an under-40 African American male and family friend of the Gayle-Garcia's. (*Id.* ¶¶ 4-5, 9.) Olson suspects Gayle-Garcia hired Davis to fill unspecified obligations under Takeda's Diversity, Inclusion, and Equity Policy, which is neither described nor attached to the Amended Complaint. (*Id.* ¶ 9.) Over the following months, Olson claims she suffered a series of slights from Gayle-Garcia ranging from not being immediately informed that she was selected to represent her sales district on conference calls (*id.* ¶¶ 8-9), to supposedly inadequate expressions of sympathy in response to personal family issues she experienced (*Id.* ¶¶ 15-17), to being directed by Gayle-Garcia to spend additional time attempting to improve Davis's performance (*id.* ¶¶ 22-40.) Olson then catalogues a series of meetings where Gayle-Garcia encouraged Olson to help Davis, a new employee, improve his performance, and she expresses her dissatisfaction with the disparity between his performance and her own. (*Id.* ¶¶ 22-42.)

On January 8, 2021, Takeda promoted Gayle-Garcia to a new role, and Olson began reporting to Defendant Matthew Hand, the Interim Jacksonville District Manager. (*Id.* ¶¶ 2, 5, 44.)

### A.   Olson complains to Hand about being treated worse than an under-40, African American employee.

According to Olson, Hand continued where Gayle-Garcia left off, allowing Davis to do what he wanted while she was subject to several of Takeda's policies, and forced to pick up Davis's slack.

97952454v.2

Not long after Hand began, Olson advised him of Davis's lackluster performance and the discrepancies between their number of engagements. (*Id.* ¶¶ 44-46.) Olson explained that the discrepancy was unlikely to change because Davis had a second job, which precluded him from meeting the expectations of his job. (*Id.*) Davis's "second job," which Olson claims violated Takeda's Outside Employment Policy, was his role as an assistant basketball coach under Renaldo Garcia, Gayle-Garcia's husband. (*Id.* ¶¶ 4-5, 14.)

Over the next few months, Olson raised several concerns to Hand regarding Davis, including that he was fabricating his weekly meetings to reflect a higher engagement and that he was severely underperforming, which increased Olson's own workload. (*Id.* ¶¶ 50, 57.) According to Olson, Hand acknowledged her concerns and shared her frustrations regarding Davis's performance. (*Id.* ¶ 57).

Olson claims that, as a direct result of her workload and disparate treatment, she requested paid short disability leave from April 9, 2021, to June 30, 2021. (*Id.* ¶¶ 59, 71.) According to Olson, Takeda, through its insurance provider Lincoln Financial Group ("LFG"), denied her request for paid disability leave on May 4, 2021. (*Id.*) Olson also claims her workload continued to accumulate while she was on leave. (*Id.* ¶ 66.)

### B. Olson returns from Short Term Disability Leave and continues to be treated unfairly.

By the time Olson returned from her leave, Davis was no longer employed with Takeda. (*Id.* ¶ 73.) On July 20, 2021, Olson met with Hand to discuss her performance review for the April 1, 2020, through March 31, 2021, fiscal year, and

4

97952454v.2

learned that she was not selected for the Territory Manager promotion. (*Id.* ¶¶ 74-77.) Olson found it suspicious that her performance review was completed as part of Takeda's normal performance review process while she was out on leave and that Hand relied in part of feedback from Jodi Gayle-Garcia, her prior manager. (*Id.*)

Following her review, on August 20, 2021, Olson claims that the next notable incident between her and Hand occurred when Hand and Greg Crouch, a senior Takeda employee, became confrontational during a meeting regarding her compliance with Takeda's COVID-19 testing protocol. (*Id.* ¶¶ 74-77.) Olson claims Hand and Crouch spoke to her in a "vicious tone." (*Id.* ¶ 87.) They began "treating [Olson] as if she had committed murder" and "their demeanors appeared as if they were angry, scared, and almost as though they lacked control of their own emotions and words." (*Id.*) Olson claims, that had she not informed Hand of her plan to get tested, he would not have inquired or required that she get tested. (*Id.*) In Olson's mind, Hand, and Crouch's hostility towards her, resulted from her complaints about Davis's poor performance and her questioning why her performance evaluation was completed during her leave. (*Id.* ¶¶ 82, 87.)

Olson then went to Takeda HR and complained about her performance review and to what she perceived as Takeda's preferential treatment towards Davis. (*Id.* ¶¶ 82, 89.) Olson also claimed Takeda personnel failed to exhibit sufficient empathy for her circumstances and failed to adequately address her concerns. (*Id.* ¶¶ 94, 96-97.)

97952454v.2

### C.   Olson requests a religious exemption from Takeda's COVID-19 vaccination policy and discusses her request for religious accommodation with Mealey.

On September 10, 2021, Takeda told Olson that she must become fully vaccinated to continue her employment. (*Id.* ¶ 97.) On or about September 22, 2021, Olson requested a religious accommodation from complying with Takeda's vaccination policy. (*Id.* ¶ 99.) Shortly after she made her request, Olson spoke with Employee Relations Partner, Christine Mealey to discuss her accommodation request. (*Id.* ¶ 106.) During this call, Mealey asked Olson questions about her requested exemption, which Olson again characterizes as hostile or demeaning. (*Id.*) On October 13, 2021, Takeda denied Olson's religious accommodation request. (*Id.* ¶¶ 114-15.)

### D.   Olson requests a medical accommodation to circumvent Takeda's vaccination mandate.

After Takeda denied her request for a religious exemption from Takeda's vaccination policy, Olson requested a medical accommodation to avoid complying with Takeda's vaccination policy. (*Id.* ¶¶ 119-22.) Takeda initially denied her request but later authorized a 90-day extension for Olson to comply with its vaccination policy. (*Id.* ¶¶ 121, 127-28.) Olson does not claim that Takeda denied any further accommodation requests, terminated her employment, or subsequently took any adverse action against her in connection with its vaccination policy. (*See generally* Am. Compl.) Nor does Olson explain what, if any, role Hand had in evaluating her accommodation requests.

97952454v.2

### E.    Olson amends her Complaint but makes no substantive revisions.

The Individual Defendants explained why Olson's claims were deficient as part of the pre-filing conferral process. And, rather than respond to the Individual Defendants' original motions to dismiss, Olson opted to file an amended complaint. Yet other than dismissing most (but not all) of the claims where Olson alleged individual liability that does not exist under the applicable statute, she left her factual allegations essentially untouched. (*See* Redline of Complaint and Amended Complaint, attached as **Exhibit A**.)

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. The Court accepts the factual allegations as true and construes them in the light most favorable to the non-moving party. *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (citation omitted). Legal conclusions, though, "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009), and the complaint, stripped of all legal conclusions, must make a claim for relief not merely possible, but plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV.    ARGUMENT

Olson admits her Title VII claim against the Individual Defendants should be dismissed, because Title VII does not authorize individual liability.

Olson's common-law claim for IIED is similarly defective because the alleged actions are not remotely close to the "extreme and outrageous" conduct

97952454v.2

required to state a viable IIED claim. The Individual Defendants therefore request that the Court dismiss Olson's claims against them with prejudice. Olson had the opportunity to bolster the factual allegations through her amended complaint, and she should not receive leave to amend.

### A.   Individual liability does not exist under Title VII.

Olson's claims against the Individual Defendants under Title VII fails because this statute does not generate individual liability.  On September 5, 2023, Olson conceded that she meant to limit this claim to Takeda. The Individual Defendants' request to dismiss this claim is therefore unopposed and should be granted.

### B.   Olson cannot state an IIED claim against Gayle-Garcia, Hand, and Mealey based on petty work disagreements and animus towards Davis.

Olson's IIED claim must be dismissed because she failed to allege sufficiently extreme or outrageous conduct by Gayle-Garcia, Hand or Mealey. "To state a cause of action for intentional infliction of emotional distress, a complaint must allege four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. 2d DCA 2007). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id*. (internal citation and quotations omitted).

97952454v.2

In evaluating whether conduct is adequately outrageous, "the subjective response of the person who is the target of the actor's conduct does not control . . . Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is atrocious, and utterly intolerable in a civilized community." *Malverty v. Equifax Info. Servs., LLC, 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019)* (citing *Liberty Mut. Ins. Co., 968 So. 2d at 595)*.

Florida law requires a "particularly high" degree of outrageousness to survive a motion to dismiss. *See Patterson v. Downtown Med. &Diagnostic Ctr., Inc., 866 F. Supp. 1379, 1383 (M.D. Fla. 1994)*. False accusations, threats, or insults are insufficiently outrageous or intolerable to generate liability. *See Lopez v. Target Corp., 676 F.3d 1230, 1236 (11th Cir. 2012)* (quoting *Williams v. Worldwide Flight Servs., Inc., 877 So. 2d 869, 870 (Fla. 3d DCA 2004)* (per curiam)). And even prolonged courses of disturbing or inappropriate conduct cannot state a claim as a matter of Florida law. *See Lay v. Roux Labs., Inc., 379 So. 2d 451, 452 (Fla. 1st DCA 1980)* (finding insufficient, as a matter of law, plaintiff's claim for intentional infliction of emotional distress when employer threatened her with job loss and used humiliating language).

Florida courts elevate this lofty standard even further when the alleged IIED occurred in the course of employment. *See Lara v. Painting Concepts, Inc., No. 09-81573-CIV, 2010 WL 11505192, at *2 (S.D. Fla. May 21, 2010)* (collecting cases and noting that precedent "especially within the employment context"

97952454v.2

demonstrates "an unwillingness by Florida courts to allow a plaintiff to proceed on [an IIED] theory").

Olson's allegations against Gayle-Garcia, Hand, and Mealey do not come close to meeting this standard. Her allegations against Gayle-Garcia are based on her apparent belief that Davis received better treatment than her, that his poor performance generated more work for her, Takeda personnel expressed more empathy towards him than toward her, and Gayle-Garcia treated Davis better due to his relationship with her family or because of supposed obligations under Takeda's DEI policy. (Am. Compl. ¶¶ 3, 5, 9, 22-40.)

Her allegations against Hand are similarly rooted in her deep animus towards Davis and her apparent belief that Davis received better treatment than her, that his poor performance generated more work for her, that Takeda personnel, including Hand, expressed more empathy towards Davis than toward her, and that Hand continued what she believes was unfair treatment initiated by Gayle-Garcia before her promotion to another role within the company. (Am. Compl. ¶¶ 3, 5, 9, 22-51, 94.) Olson does not allege that Hand had any involvement related to evaluating or deciding her requests for a religious or medical exemption from Takeda's vaccination policy. (*See generally* Am. Compl.)

None of Hand's alleged actions even come close to behavior that the Court has determined does not meet the IIED standard. Nothing alleged is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a

10

97952454v.2

civilized community." *Roberts v. Amtrust Bank*, No. 14-81266-CIV, 2014 WL 7273982, at *3 (S.D. Fla. Dec. 22, 2014) (dismissing IIED claim based on allegations that plaintiff was held to a "higher standard" and subjected to unwarranted criticisms of her work performance) (citation omitted).

Her allegations against Mealey stem from her personal belief that Takeda unfairly denied her request for religious accommodations. She also disagrees with how Mealey communicated the denial. However, Olson acknowledges that Takeda engaged in the interactive process, and she does not allege that Mealey actually had any involvement related to evaluating or deciding her requests for a religious exemption from Takeda's vaccination policy. (See generally Am. Compl.) Her disagreement with the outcome of her request and Mealey's communication of this denial does not establish a claim for IIED. These alleged actions do not even come close to behavior that the Court has determined does not meet the IIED standard.

Garden-variety disagreements during a job—even those involving allegedly hostile behavior or "vicious verbal attacks"—are insufficiently extreme and outrageous to form a viable IIED claim. *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012); *see also Roberts v. Amtrust Bank*, 2014 U.S. Dist. LEXIS 176128, *7 ("the complained-about conduct concerns allegations that Plaintiff was held to a 'higher' standard than other employees and was subjected to criticisms of her work performance and unjust evaluations . . . Given the outrageousness requirement, the Court finds that this behavior does not meet the [IIED] standard."); *Lay*, 379 So. 2d at 452 (rejecting IIED claim when employer

threatened plaintiff with job loss and used humiliating language); *Williams, 877 So. 2d 869, 870-71 (Fla. 3d DCA 2004)* (constant use of racial slurs and offensive racial language and false accusations are insufficiently outrageous because liability for IIED "does not extend to mere insults, indignities, threats, or false accusations"). The Court should therefore also dismiss Olson's IIED claim with prejudice.

### C.     Olson's freestanding claims for "damages" and "declaratory relief" are not viable.

To the extent that Olson's freestanding claims for "damages" and "declaratory relief" are viewed as claims rather than requests for relief, those claims fail because they lack any explanation for why the Individual Defendants are liable and because Olson's statutory and common-law claims are defective.

## V.     CONCLUSION

If any harassment occurred, it has been Olson's harassment of current or former Takeda employees by asserting obviously defective claims against them. Olson admits her Title VII claim is defective and should be dismissed, and Olson's IIED claim against the Individual Defendants fail because she does not allege sufficiently extreme and outrageous conduct. The Court should therefore dismiss the claims against the Individual Defendants with prejudice.

97952454v.2

DATED: September 6, 2023               Respectfully submitted,

                                       SEYFARTH SHAW LLP

                                       By: */s/ Alex Meier*
                                           Alex Meier
                                           ameier@seyfarth.com
                                           Florida Bar No. 1011557
                                           SEYFARTH SHAW LLP
                                           1075 Peachtree Street, N.E.
                                           Suite 2500
                                           Atlanta, Georgia 30309-3958
                                           Telephone: (404) 885-1500
                                           Facsimile: (404) 892-7056

                                           Attorney for Defendants Takeda
                                           Pharmaceuticals America, Inc., Jodi
                                           Gayle-Garcia, Matthew Hand, and
                                           Christine Mealey

13

97952454v.2

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

SHANNON OLSON,

      Plaintiff,

  v.

TAKEDA PHARMACEUTICALS AMERICA, INC, JODI GAYLE-GARCIA, in her individual and official capacities, MATTHEW HAND, in his individual and official capacities, GREGORY CROUCH, in his individual and official capacities, CHRISTINE MEALEY, in her individual and official capacities, HEIDI MILLER, in her individual and official capacities,

      Defendants.

**CASE NO: 8:23-CV-00590**


**JURY TRIAL DEMANDED**

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2023, I electronically filed DEFENDANTS JODI GAYLE-GARCIA, MATTHEW HAND, AND CHRISTINE MEALEY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

By:   /s/ *Alex Meier*
          Alex Meier
        Attorney for Defendants

97952454v.2