# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

SHANNON OLSON,

      Plaintiff,

    v.

TAKEDA PHARMACEUTICALS
AMERICA, INC,

      Defendant.

**CASE NO: 8:23-CV-00590**

**JURY TRIAL DEMANDED**

## DEFENDANT TAKEDA'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFF'S THIRD AMENDED COMPLAINT

## I.    INTRODUCTION

Plaintiff Shannon Olson ("Olson") continues her crusade to present non-actionable quibbles about her employment into viable legal claims. This effort is just as futile and serves only to illustrate that Olson is willing to misrepresent the facts to this Court in a desperate effort to avoid dismissal.

As the Court noted in its prior order (ECF No. 54), Olson faced seemingly insurmountable obstacles even if she chose to amend, including (1) whether Jordan Davis was a viable comparator, (2) whether Olson exhausted her administrative remedies related to any failure to promote claims, (3) whether Olson has sufficiently alleged a failure to accommodate claim in Count VIII where she has failed to allege her disability and the requested accommodation(s), and (4) whether Plaintiff has sufficiently alleged retaliation or hostile work environment

claims. (*See id.*) Nothing in the Third Amended Complaint ("TAC") remedies these issues.

Olson has not stated a viable claim. Her race discrimination claim (Count I) fails because Davis is not a viable comparator and she did not experience a discrete adverse action. And her discrimination claims based on her alleged religion and disability (Counts II-V) are similarly doomed by the lack of any adverse employment action.

If anything, Olson's TAC is less coherent than its predecessors by mashing together discrimination, retaliation, and failure to accommodate claims into a single claim for "discrimination." Olson is not entitled to unlimited do-overs at fulfilling basic pleading obligations. Consistent with Eleventh Circuit authority, the Court found Olson's SAC to be an impermissible shotgun complaint and provided direct guidance on how to remedy those deficiencies. (*See* Order 5-9, ECF No. 54.) Olson has—if anything—exacerbated the pleading deficiencies identified by the Court, and the Court may and should dismiss this lawsuit with prejudice. *See [Johnson v. Georgia](), 661 F. App'x 578, 580 (11th Cir. 2016)* ("When faced with a shotgun pleading, a district court must order a litigant to replead for a more definite statement of the claim . . . . When the amended complaint still fails to cure the deficiency, the complaint may be subject to dismissal."). Takeda therefore requests that the Court dismiss Olson's Third Amended Complaint with prejudice.

307031375v.2

## II. FACTUAL ALLEGATIONS

Shannon Olson is a plaintiff without an injury. Olson worked at Takeda for 23 years in a sales representative role. (TAC Preliminary Statement, ECF No. 56, Second Am. Compl.¶ 1., ECF No. 33.)[1] After more than two decades of issue-free employment, Olson alleges a new supervisor, Jodi Gayle-Garcia, initiated the parade of minor inconveniences that make up the bulk of this lawsuit.

### A. Olson complains she was treated worse than an under-40, African American employee.

Olson focuses much of her ire on Jordan Davis (African American, under 40), a former Takeda employee. (TAC ¶ 3.) Olson claims that Davis's personal friendship with her then-supervisor, Jodi Gayle-Garcia, and Gayle-Garcia's desire to meet Takeda's Diversity, Equity, and Inclusion ("DEI") requirements, which are alluded to but never described in the TAC. (*See id.* ¶¶ 25-44.)

In the TAC, Olson identifies five "discriminatory actions":

- *Conference calls*: Gayle-Garcia did not inform Olson that she was selected to speak on behalf of the Jacksonville district during certain company-wide update calls, which reduced her exposure across the company. (*Id.* ¶¶ 49-52.)

- *Secondary income*: Olson believes Takeda selectively enforced its policy prohibiting employees from having a secondary income from a source other than Takeda. (*Id.* ¶¶ 53-68.)

- *Caring about Davis more than her*: Olson next complains that Takeda showed more sensitivity to Davis's and other black employees'

---

[1] The Court may consider allegations in the SAC that directly contradict Olson's allegations in the TAC. *Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 201 F. Supp. 3d 1353, 1361 (S.D. Fla. 2016) (citations omitted).

307031375v.2

"emotional well-being" by asking her to see how Davis was coping after the death of George Floyd. (*See id.* ¶¶ 69-71.)

- *Increased duties*: Olson also faults Takeda for attempting to have her demonstrate her ability to improve employee performance. According to Olson, she began doing Davis's job because of his inability to compete the basic functions of his role, which Olson again attributes to Gayle-Garcia's personal relationship with Davis. (*Id.* ¶¶ 72-81.)

- *Attend one "collaboration footprint meeting"*: The next slight identified by Olson is that Gayle-Garcia had Olson and Davis attend a "collaboration footprint meeting" where Gayle-Garcia began taking steps that she believed come off to her supervisors as remedial action and good leadership" by having Olson and Davis make various commitments to track their activity and hold each other accountable. (*Id.* ¶¶ 82-87.)

In the aggregate, Olson characterizes Takeda's attempts to pair her—a self-described high-performing sales representative—with Davis—a low-performing sales representative—together to improve his performance as favoritism by Gayle-Garcia and somehow related to Takeda's DEI objectives. (*See id.* ¶ 32.)

**B. Olson mixes up her timeline and provides an internally contradictory account of her request for a religious accommodation.**

Olson's efforts to salvage a religious discrimination claim present a narrative that is wholly contradicted by her prior complaints. In this iteration of her complaint, Olson argues that Takeda discriminated against her on the basis of her religion by refusing to provide her with a religious accommodation from Takeda's mandatory COVID-19 vaccination policy. (*Id.* ¶¶ 100-04.) Olson postulates that Takeda "interrogat[ed]" her "with the hope that doing so would cause her performance to decrease, which mitigated the egregiousness of Mr. Davis' poor performance, and thereby increase the likelihood that Mr. Davis would not be

terminated––an essential goal of Takeda to maintain his employment because he was black and helped Takeda's DEI policy interests." (*Id.* ¶ 103.)

It is impossible to square this allegation with Olson's prior pleadings. In her amended complaint (ECF No. 33), Olson alleged that Davis left Takeda on or before June 30, 2021, when she returned to work from leave. (Am. Compl. ¶¶ 71, 73, ECF No. 33.) She also alleged that Takeda did not inform her that she must be vaccinated against the COVID-19 virus until September 10, 2021, *weeks after Davis left Takeda.* (*See id.* ¶¶ 71, 73, 97.)

### C. Olson blames Takeda for its third-party leave administrator's determination that she was not entitled to paid short-term disability.

Finally, Olson blames Takeda for a decision made by its third-party leave administrator's actions. Olson alleges that she suffered significant stress and anxiety due to her workload, and she developed PTSD and depression as a result. (TAC ¶¶ 105-07, ECF No. 56.) Olson speculates that Takeda took some action to prevent Olson from receiving short-term disability payment during her limited leave. (*Id.* ¶ 110.)

### D. Olson files her Charge and this lawsuit.

On December 22, 2021, Olson filed a Charge of Discrimination with the EEOC and the Florida Commission on Human Relations ("FCHR"). (Third Am. Compl. ¶ 9.) In her Charge, Olson identified the following bases for her Charge:

- Olson claimed that Davis received preferential treatment by Takeda, both in terms of job performance and his ability to keep a job as a basketball coach. Olson claimed this treatment was connected to her race, sex, and age.

5

- Due to what she described as a hostile work environment, she had to take leave and requested short-term disability coverage, which Lincoln Financial Group denied.

- Olson requested a religious exemption from Takeda's vaccination policy, and Takeda denied her request.

- Olson requested a medical accommodation from Takeda's vaccination policy, which was initially denied before being extended.

(Charge of Discrimination, attached as **Exhibit A**.)[2] Notably, her Charge does not claim she applied for a promotion or Takeda failed to promote her because of any of the preceding issues.

After Olson received a right-to-sue letter, Olson filed a 15-count complaint. (ECF No. 1.) Two motions to dismiss later, Olson has pared her complaint back to five claims based on three theories: (1) Disparate treatment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") for race (Count I); (2) Religious discrimination under Title VII (Count II) and the Florida Civil Rights Act, Fla. Stat. §§ 706.01 *et seq.* ("FCRA") (Count III); and (3) ); disability discrimination under the Americans with Disabilities Act 42 U.S.C. §§ 12101, *et seq.* ("ADA") (Count IV) and the FCRA (Count V). Critically, Olson has

---

[2] The Court may consider the Charge of Discrimination because it is incorporated into the Amended Complaint. *See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)*; *see also Fernandez-Esnard v. Mount Sinai Med. Ctr. of Fla., Inc., No. 1:16-CV-23555-UU, 2016 WL 10932953, at *1 (S.D. Fla. Nov. 15, 2016)* (Court may consider charge of discrimination at motion to dismiss stage); *Rodrigues v. SCM I Invs., LLC, No. 2:15-CV-128-FTM-29CM, 2015 WL 6704296, at *2 (M.D. Fla. Nov. 2, 2015)* (same); Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

307031375v.2

*entirely dropped* her failure-to-accommodate claims and her retaliation claims. (*Compare* TAC *with* SAC.)[3]

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. The Court accepts the factual allegations as true and construes them in the light most favorable to the non-moving party. *Echols v. Lawton, 913 F.3d 1313, 1319 (11th Cir. 2019)* (citation omitted). Legal conclusions, though, "are not entitled to the assumption of truth," *Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)*, and the complaint, stripped of all legal conclusions, must make a claim for relief not merely possible, but plausible. *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)*.

## IV.   ARGUMENT

Olson's Third Amended Complaint still alleges trivial non-events that do not constitute an adverse employment action or relate to a non-viable comparator. Her core complaint is that she is unhappy with how a new employee received opportunities to improve while she wasn't adequately recognized by Takeda and that Takeda engaged in a series of (imagined) slights that somehow constitute

---

[3] Disparate treatment, retaliation, hostile work environment, and failure to accommodate are all separate theories and must be pled in separate counts. *See, e.g., Cooley v. Great S. Wood Preserving, 138 F. App'x 149, 152 (11th Cir. 2005)* ("As part of these minimum pleading requirements, discrete claims should be plead in separate counts."); *Albu v. TBI Airport Mgmt., No. 115CV03120WSDJCF, 2016 WL 8710216, at \*7 (N.D. Ga. Apr. 22, 2016), R&R adopted in relevant part*, No. 1:15-CV-3120-WSD, 2016 WL 3679987 (N.D. Ga. July 12, 2016).

307031375v.2

discrimination. These petty disagreements do not qualify as actionable adverse employment actions. Additionally, she is not similarly situated to Davis, her proposed comparator for her claims and, to the extent she claims Takeda failed to promote her, she failed to exhaust her administrative remedies.

**A.      Olson has not stated a claim for disparate treatment based on her race, disability, or religion under Title VII or the FCRA.**

Olson has limited her TAC to three disparate impact theories. These theories all share one common requirement: an adverse employment action. And Olson has failed to allege any adverse employment action by Takeda against Olson. Additionally, Olson's race discrimination claim fails because Davis is not a viable comparator. Finally, Olson's claim that Takeda declined to promote her is not actionable because she failed to exhaust her administrative remedies.

*i.   Olson did not suffer an adverse action.*

An adverse employment action is a threshold requirement to a disparate treatment claim. *See, e.g.*, *Bhuiyan v. PNC Bank, Nat'l Ass'n*, No. 19-14265, 2023 WL 2733510, at *4 (11th Cir. Mar. 31, 2023) (citing *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021) (requiring adverse employment action for disparate treatment claim based on religion)); *Maynard v. Bd. of Regents of Div. of Fla. Dept. of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (adverse employment action required for Title VII disparate treatment claims) (citation omitted). An adverse employment action does not extend to any quibble between an employer and employee. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020) (citing *Oncale v. Sundowner Offshore Servs., Inc.*,

8

[523 U.S. 75, 81 (1998)](#) ("Trivial slights are not actionable [under Title VII].")).[4] Rather, the alleged adverse employment action must amount to "a serious and material change in the terms, conditions, or privileges of [her] employment." *[Crawford v. Carroll, 529 F.3d 961, 970-71 (11th Cir. 2008)](#)* (cleaned up). A sufficiently material change can be discrete, like a termination, demotion, suspension without pay, or other specific actions. *[Monaghan, 955 F.3d at 860](#)* (citation omitted). Olson fails to allege an actionable adverse employment action.

### a. *No adverse employment action – race discrimination.*

Olson identifies five alleged discriminatory actions in her TAC. (TAC ¶¶ 49, 53, 69, 72, 82.) While Olson might believe them to be discriminatory, none of them constitute an adverse employment action.

**Outside Employment Policy.** Olson misrepresents that Takeda completely prohibited outside employment and references Takeda's "Outside Employment and Other Activities" policy. In reality, Takeda permits outside employment *subject to Takeda's approval* and conditions detailed in its policy.

---

[4] So too for Olson's FCRA claims. Discrimination claims under the ADA, Title VII, and the FCRA are governed by the same burdens of proof and analytical framework. *See [Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007)](#)* (noting disability claims under the FCRA and ADA are analyzed under the same framework); *[Addison v. Fla. Dep't of Corr., 683 F. App'x 770, 773-74 (11th Cir. 2017)](#)* ("Claims brought under the FCRA are analyzed under the same standards as Title VII because the FCRA is modeled on Title VII.") (citing *[Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1310 (11th Cir. 2007)](#)* ("Florida courts apply Title VII caselaw when they interpret the FCRA")).

307031375v.2

(*See* Outside Employment Policy, attached as **Exhibit B**.)[5] Olson merely claims Takeda allowed Davis to have another position—a determination expressly permitted by the policy, and which does not qualify as an adverse action *as to her employment*. Nor does the fact that Takeda investigated her potential outside employment activity in connection with a patent she obtained. Olson does not allege Takeda prevented her from engaging in outside employment activities or that she requested authorization under Takeda's policy and Takeda improperly denied her request. Thus, Olson's claims fail to the extent they are based on Takeda's Outside Employment Policy.

**Conference Call, Meeting Attendance, and Concern About Davis's Response to George Floyd Protest.** Olson details four other specific adverse employment actions in her TAC, all of which are the kind of "trivial slights" this circuit declines to view as actionable under Title VII or the FCRA. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).* While Olson might be miffed that Gayle-Garcia forgot to tell her that she should present on a conference call, inquire about Davis's mental state, or having her attend a meeting with Davis, these minor incidents lack the "sufficient level of substantiality" required to be actionable under Title VII or the FCRA. *Id.*

---

[5] This policy is referenced in Olson's Third Amended Complaint and may likewise be considered without converting this motion into a motion for summary judgment.

307031375v.2

**Alleged Unfair Workload.** Olson's remaining alleged adverse employment action concern her disagreement about Takeda's work assignment process by pairing her with Davis to improve his job performance. This kind of "work assignment" claim is particularly disfavored in the Eleventh Circuit. *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203-04 (11th Cir. 2013) (explaining "[w]ork assignment claims strike at the very heart of an employer's business judgment and expertise" and "Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions.") (citation omitted). And even if Takeda decided to allocate more work to Olson (a self-described exceptional sales representative) versus Davis (who Olson views as a low performer), that decision is not an actionable adverse employment action. *Grimsley v. Marshalls of MA, Inc.*, No. 1:05-CV-3252-TCB, 2007 WL 9710142, at *4 (N.D. Ga. Sept. 28, 2007), *aff'd*, 284 F. App'x 604 (11th Cir. 2008) (finding that "litany of unfair treatment," including being subjected to an increased workload, being denied breaks while black supervisors were not, and being forced to perform tasks outside of his job description were not adverse employment actions).

Nor does Olson even allege that Takeda *required* her to take on a greater workload. Instead, Olson claims that Gayle-Garcia told her to take "more of a leadership role" with Davis if she wanted to be promoted to a Territory Manager. (TAC ¶ 75.) If Olson misinterpreted Gayle-Garcia's request to mean that she should do his job and her own, Olson's decision to complete "100% of the work" assigned to her team does not create a plausible inference that Takeda *required* her to do

11

so. Accordingly, Olson's race discrimination claim fails to state a viable claim and should be dismissed with prejudice.

### b. *No adverse employment action – religious discrimination.*

Olson's religious discrimination claim also lacks an actionable adverse employment action. It appears her claim, while styled as a discrimination claim, is actually a failure-to-accommodate claim. (*See* TAC ¶¶ 98, 104.) But viewed through either lens, it must be dismissed. A religious discrimination and failure-to-accommodate claim (while separate theories) both require an adverse employment action or some kind of discipline. *Bhuiyan v. PNC Bank, Nat'l Ass'n*, No. 19-14265, 2023 WL 2733510, at *4 (11th Cir. Mar. 31, 2023) (citing *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021) (requiring adverse employment action for disparate treatment claim based on religion)); *Staple v. Sch. Bd. of Broward Cnty., Fla.*, No. 20-62313-CIV, 2021 WL 2000373, at *4 (S.D. Fla. Apr. 30, 2021) ("Contrary to Plaintiff's assertions, the Eleventh Circuit has made clear the third element of his prima facie case for failure to accommodate is discharge or discipline, not an adverse employment action.") (citations omitted).

Olson remains employed by Takeda, and she does not claim that Takeda subjected her to any discipline based on her requested accommodation. (*See* TAC Preliminary Statement.)[6] As a result, the Court should also dismiss Olson's disability discrimination claim with prejudice.

---

[6] As with her disability discrimination claim, Olson lists a series of grievances that vaguely resemble a hostile work environment claim, though Olson did not

307031375v.2

Olson similarly fails to allege an actionable adverse employment action in connection with her disability discrimination claim. She now appears to limit this claim to Lincoln Financial Group's determination that she was ineligible for short-term disability. (TAC ¶ 110; *see also* Charge, Ex. A.) As Olson acknowledged in her Charge, Lincoln Financial Group is a third-party administrator and made the decision to deny Olson's short-term disability request. (*See* Charge, Ex. A.) If Olson disagreed with that determination, her remedy was to appeal the determination with Lincoln Financial Group—not file a discrimination claim against Takeda.[7] Olson has therefore also failed to state a claim for disability discrimination.

## ii. *Davis is not a viable comparator.*

Even if Olson had identified an adverse employment action, her claim for race discrimination still fails because Davis is not a similarly situated comparator. Absent direct evidence of discrimination, which she has not alleged, Olson must alleged: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) she was treated less favorably than a similarly situated individual outside her protected class. *See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)*. The proposed comparator must be similarly situated in all

---

allege a failure-to-accommodate claim or a hostile work environment claim. (*See* TAC ¶¶ 143, 161.)

[7] In Paragraphs 177 and 191, Olson has a confusing mashup of "adverse actions," many of which are not discussed anywhere else in the TAC.

307031375v.2

material respects. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1227-28 (11th Cir. 2019).

Olson and Davis are not similarly situated. Olson was a 23-year veteran at Takeda and a Field Senior Sales Representative. (Am. Compl.¶¶ 1, 41; *see also* Charge, Ex. A.)[8] Davis, by contrast, was a new hire and a Sales Representative— not a Senior Sales Representative. (*Id.* ¶¶ 4, 10; Charge, Ex. A.)[9] Olson and Davis are therefore not similarly situated in all material respects, and Olson cannot rely on Davis as a proposed comparator. *Lewis*, 918 F.3d at 1228 (recognizing "different work histories" as a basis for different treatment); *see also Brown v. Synovus Fin. Corp.*, 783 F. App'x 932, 930 (11th Cir. 2019) (occupying a different position meant proposed comparator was not similarly situated); *Waldera v. MarketSource, Inc.*, No. 1:19-CV-3495-TCB, 2021 WL 4164002, at *7 (N.D. Ga. Aug. 5, 2021) (distinguishing proposed comparators on basis of significant difference in experience).

---

[8] Again, the Court may refer to Olson's prior complaint because the allegations in her previous pleadings directly contradict her assertion in the TAC that she and Davis "have the same duties and job, and they both otherwise are identically situated." (TAC Preliminary Statement.) Alternatively, the Court may use Olson's statements in her Charge in deciding this Motion.

[9] It should not come as a surprise that Olson had better productivity than Davis and that Takeda would ask an experienced employee like Olson to work with Davis to improve his performance.

307031375v.2

### iii. *Olson failed to exhaust her administrative remedies regarding her alleged promotion opportunity.*

Olson suggests her claim includes a claim that she should have been promoted, but Takeda did not promote her because of some protected characteristic. (TAC ¶¶ 151, 169, 177, 182, 191, 196.) She cannot include any alleged failure to promote as part of her claims because she did not exhaust her administrative remedies for this alleged adverse action.

To pursue a claim under Title VII, the FCRA, and the ADA, Olson must exhaust her administrative remedies. *Stamper v. Duval Cnty. Sch. Bd.,* 863 F.3d 1336, 1339-40 (11th Cir. 2017); *Bost v. Fed. Express Corp.,* 372 F.3d 1233, 1238 (11th Cir. 2004); *McCullough v. Nesco Res. LLC,* 760 F. App'x 642, 646 (11th Cir. 2019) ("Before a plaintiff may bring an FCRA civil action, he must exhaust his administrative remedies, as set forth in Fla. Stat. § 760.11."). "The administrative process is initiated by timely filing a charge of discrimination [with the EEOC]." *E.E.O.C. v. Joe's Stone Crabs, Inc.,* 296 F.3d 1265, 1271 (11th Cir. 2002). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 929 (11th Cir. 1983)). "In light of the purpose of the EEOC exhaustion requirement, [the Eleventh Circuit has] held that a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of

15

discrimination." *Gregory, 355 F.3d 1277, 1280* (11th Cir. 2004) (internal quotation and citation omitted). Although EEOC complaints are liberally construed, "a plaintiff is precluded from raising allegations in a civil action unless they are reasonably related to the underlying charges raised before the EEOC." *Price v. M & H Valve Co., 177 F. App'x 1, 14 (11th Cir. 2006)*.

Here, Olson did not claim in her Charge that Takeda failed to promote her because of any protected characteristic. (*See* Charge of Discrimination, Ex. A.) Not only does Olson fail to claim she applied for any promotion opportunity, but she also failed to allege that Takeda denied her a promotion. (*See generally* TAC.) Accordingly, this aspect of Olson's claim must be dismissed.

**B.     The Court should dismiss this lawsuit with prejudice.**

The Court should dismiss Olson's lawsuit with prejudice. When considering whether to authorize leave to re-plead, the Court may decline to authorize an amended pleading "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)*.

Leave should be denied because Olson has repeatedly failed to correct identified deficiencies in her Complaint. After dismissing Olson's Amended Complaint *sua sponte* as a shotgun pleading, the Court properly allowed Olson with the opportunity to remedy the deficiencies identified by the Court. (*See* Order

5-9, ECF No. 54); *Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018)*; *Johnson v. Georgia, 661 F. App'x 578, 580 (11th Cir. 2016)*. Despite that opportunity, Olson presented the Court with a Complaint that is arguably worse than its predecessor.

Moreover, Olson made blatant factual misrepresentations to the Court in a desperate effort to survive dismissal. Specifically,

- In her TAC, Olson alleged that she and Davis, her proposed comparator, share the same job title in duties. (TAC Preliminary Statement.) In reality, Olson was a *Senior Sales Representative* while Davis was employed as a *Sales Representative*. (Charge, Ex. A; TAC ¶ 4.)

- In her TAC, Olson blamed the denial of her requested religious accommodation on Takeda's efforts to shield Davis from being terminated. (TAC ¶ 103.) Again, Olson's allegations are directly contradicted by her Charge, which notes that Davis left Takeda on or before June 30, 2021, when she returned to work from leave. (Am. Compl. ¶¶ 71, 73, ECF No. 33; Charge, Ex. A.) She also alleged that Takeda did not inform her that she must be vaccinated against the COVID-19 virus until September 10, 2021, *weeks after Davis left Takeda*, making this allegation factually impossible. (*See id.* ¶¶ 71, 73, 97.)

And Olson's counsel has completely failed to participate in this litigation. Olson has yet to serve initial disclosures (which were due months ago), and Olson completely failed to respond to Takeda's discovery requests. (*See* Correspondence, attached as **Exhibit C**.) Accordingly, the Court can and should find that Olson's undue delay, bad-faith conduct, and failure to correct the deficiencies identified by the Court warrant the dismissal of this lawsuit with prejudice.

307031375v.2

## V. CONCLUSION

For the foregoing reasons, Takeda respectfully requests that the Court dismiss Olson's TAC with prejudice.

DATED: December 28, 2023

Respectfully submitted,

By: */s/ Alex Meier*
    Alex Meier
    ameier@seyfarth.com
    Florida Bar No. 1011557
    SEYFARTH SHAW LLP
    1075 Peachtree Street, N.E.
    Suite 2500
    Atlanta, Georgia 30309-3958
    Telephone: (404) 885-1500
    Facsimile: (404) 892-7056

    Attorney for Defendant Takeda
    Pharmaceuticals America, Inc.

307031375v.2

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

SHANNON OLSON,

        Plaintiff,

   v.

TAKEDA PHARMACEUTICALS
AMERICA, INC,

        Defendants.

**CASE NO: 8:23-CV-00590**

**JURY TRIAL DEMANDED**

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2023, I electronically filed DEFENDANT TAKEDA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

By:   /s/ *Alex Meier*

       Alex Meier
       Attorney for Defendant

307031375v.2