**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| SHANNON OLSON, | |
| *Plaintiff,* | |
| v. | Case No.: 8:23-cv-00590-TPB-CPT |
| TAKEDA PHARMACEUTICALS AMERICA, INC., | |
| *Defendant.* | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS**

Takeda Pharmaceuticals America, Inc. ("Takeda" or "Defendant") has moved to dismiss this action under Rule 12, yet in doing so, ignores the entire essence of the applicable standard Rule 12 sets forth concerning the sufficiency of a pleading at this stage. As explained in greater detail below, it is undisputed that Plaintiff's Third Amended Complaint ("TAC") sufficiently alleges facts that, if taken as true, support each element of her claims—in fact, Takeda itself even concedes this.

At its core, Takeda's motion is nothing more than a hail mary attempt to avoid allowing this action to proceed into the discovery phase of litigation and a last-ditch effort to prevent Plaintiff from accessing information that proves her claims. As made clear in its memorandum of law, Takeda does not argue Plaintiff's TAC fails to allege facts in support of each claim and instead, seeks dismissal of this action by surreptitiously attempting to pass off its own subjective characterizations of the facts alleged in the TAC as findings of fact in hopes that this Court adopts Takeda's opinions as fact and issue what effectively operates as an order granting Takeda summary judgment. But this action is not ripe for summary judgment, and Takeda is not a jurist.

Plaintiff takes no issue with Takeda expressing or even adopting its own opinions as to the

severity and pervasiveness of the conduct alleged. There is no doubt that reasonable minds can differ in regard to the magnitude of any given adverse employment action—which is precisely why Takeda's motion must be dismissed.

When ruling on a Rule 12 motion, the salient question before the Court is whether Plaintiff's TAC alleges sufficient factual information that, if taken as true, supports each element of each claim asserted. Questions such as those as to the egregiousness of the adverse employment actions alleged in the TAC are questions of fact, not questions of law. And because Takeda seeks dismissal based upon its perception of the facts alleged and not the inexistence of, or failure to allege facts sufficient to support a claim, its motion must be denied and this action should be allowed to proceed into discovery on Counts I, IV, and V.[1]

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations; rather, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Importantly, "plausibility is not a

---

[1] After reviewing Defendant's arguments concerning Plaintiff's religious discrimination claims and cross-referencing various dates, Plaintiff voluntarily dismisses her religious discrimination claims (Counts III and IV) with prejudice.

probability standard." *Id*.

<div align="center">

**ARGUMENT**

</div>

## I. PLAINTIFF'S TITLE VII AND ADA CLAIMS ARE WELL-PLED.

### A. <u>Plaintiff alleges she suffered adverse employment action.</u>

Takeda first asserts that Plaintiff's disparate treatment claim should be dismissed because "[Plaintiff] did not suffer an adverse action." (Def.'s Mot. at 8). But this very question—whether Plaintiff suffered an adverse action—is wholly irrelevant and its answer is meaningless when ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). At this stage, there is only one relevant inquiry, and that inquiry asks whether Plaintiff's TAC *alleges* that she suffered adverse employment action—and Takeda itself has even answered this in the affirmative.

In its memorandum of law, Takeda admits that "the TAC [ ] identifies five 'discriminatory actions'." (Def.'s Mot. at 3). And while Plaintiff respectfully points out that her TAC alleges far more than "five discriminatory actions" even a single "serious and material change in the terms, conditions, or privileges of employment" constitutes adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008) (emphasis added). Thus, the question first turns on whether Plaintiff's TAC alleges a "change in the terms, conditions, or privileges of her employment" and if so, the second and final inquiry asks whether Plaintiff has alleged that change was "serious" and "material." Both questions are easily answered in the affirmative.

<div align="center">

*i. Changes in terms, conditions, or privileges of employment.*

</div>

Paragraph 119 and 177 of her TAC allege that Takeda purposefully, willfully, intentionally, or recklessly:

    a. Depriving Plaintiff of an opportunity to speak on the ELT conference calls to ensure Plaintiff did not further impress Takeda or otherwise draw attention to her outstanding performance;

<div align="center">

3

</div>

b.  Allowing Mr. Davis to openly share and discuss his second income and even congratulating him on doing so, while at the same time, vigorously investigating Plaintiff for allegedly having a second income, even though Plaintiff did not have a second income;

c.  Dragging Plaintiff's frivolous secondary income policy violation investigation out for as long as possible with the intent to hinder her ability to perform at such a high level in comparison to Mr. Davis' performance;

d.  Ordering Plaintiff to coddle Mr. Davis' emotional well-being because he was Plaintiff's "African American counterpart" while ignoring Plaintiff's emotional well-being at the time her sister died from depression—which is especially triggering as Plaintiff has dedicated her life to selling Takeda's drugs that treat the very disorder that claimed her sister's life;

e.  Requiring Plaintiff to complete Mr. Davis job duties in addition to her own, attributing credit to Mr. Davis for Plaintiff's work, and ignoring the fact that Mr. Davis was not performing his work at all or nearly at all;

f.  Requiring Plaintiff, not the District Manager, to train Mr. Davis, when Plaintiff holds the same position as Mr. Davis;

g.  Intentionally blurring the line between Plaintiff's failures and Mr. Davis' failures by intentionally including Plaintiff in conversations regarding insufficient performance and by directing remedial instructions that were issued solely because of Mr. Davis' poor performance, to both Mr. Davis and Plaintiff;

h.  Repeatedly and intentionally attributing Mr. Davis' failures to perform his duties as Plaintiff's failures;

i.  Assigning Mr. Davis' duties to Plaintiff, and when fulfilled, attributing credit to Mr. Davis without acknowledging that Plaintiff did the work, and doing so with the intent to harass or mentally break Plaintiff in hopes of decreasing her performance; and

j.  Ignoring known tactics Mr. Davis' employed to avoid having to do his work, including shifting his schedule around to make it appear as though he made engagement and client calls, and cancelling and re-scheduling meetings so it appeared he attended the meetings, while at the same time, demanding more and more of Plaintiff to compensate for the work Mr. Davis was not performing, and the work Takeda knew he was not completing.

**ADA Claim-Related Adverse Employment Actions**

k.  Harassing and ridiculing Plaintiff because of her disability;

l.   Threatening Plaintiff;

m.   Refusing to compensate Plaintiff while she was entitled to compensation on Short Term Disability Leave

n.   Forcing Plaintiff to work while she was on Short Term Disability Leave;

o.   Publicizing that Plaintiff was disabled to one or more persons;

p.   Denying Plaintiff's request for a medical accommodation without any justification;

q.   Refusing to inform Plaintiff why her medical accommodation request was denied;

r.   Threatening to terminate Plaintiff because she is disabled;

s.   Denying Plaintiff a promotion because she is disabled;

t.   Assigning Plaintiff additional work outside the scope of her duties because she is disabled; and

u.   Failing to compensate Plaintiff for the additional work she performed at Takeda outside the scope of her duties because she is disabled.

TAC ¶¶ 119, 177.

It is not subject to reasonable dispute that assigning another employees' workload to Plaintiff without any increase in pay, forcing Plaintiff to spend hours upon hours on defending herself against frivolous "investigations" into alleged policy violations that she otherwise would have dedicated to performing her duties, blaming Plaintiff for performance deficiencies entirely attributable to Mr. Davis, requiring Plaintiff, who is not Mr. Davis' manager but instead, his colleague, equal, and comparator, to train him, do his work, and otherwise continually increasing Plaintiff's workload because Mr. Davis could not do his job, among others adverse employment actions alleged above, each independently constitute "changes" in "terms or conditions" of Plaintiff's employment. Thus, the only remaining question relevant in ruling on a Rule 12 motion

is whether these changes in terms and conditions of Plaintiff's employment are indeed, "serious and material."

### ii. Seriousness and materiality of the changes in terms and conditions of employment.

Paragraph 133 of Plaintiff's Complaint alleges that, "[a]s a direct and proximate result of the adverse employment action taken against Plaintiff because of her race (Caucasian), Takeda violated Title VII's prohibition against racially motivated disparate treatment and the ADA's prohibition of taking adverse employment action against Plaintiff because she is disabled, "Plaintiff sustained economic and non-pecuniary injuries, including humiliation, embarrassment, unnecessary pain and suffering, and she has incurred medical expenses, attorneys' fees, and costs associated with this action" directly and proximately because of the aforesaid changes in the terms and conditions of her employment.[2] *Id.*

"Whether the [alleged adverse employment] action is serious and material is not subjective; rather, 'the employment action must be materially adverse as viewed by a reasonable person in the circumstances'." *Bhuiyan v. PNC Bank, National Assoc.*, 2023 WL2733510 at *4 (11th Cir. Mar. 31, 2023) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In applying this standard, a reasonable person undoubtedly could view the conduct alleged as material, and when drawing all reasonable inferences in Plaintiff's favor and viewing the allegations in a light most favorable to Plaintiff, it is indisputable that Plaintiff has alleged she suffered adverse employment action.

Indeed, the Eleventh Circuit has held far less pervasive allegations sufficiently allege actionable adverse employment action. In *Morgan v. Ford*, the Eleventh Circuit held that a plaintiff's allegation that she was subjected to vulgar comments by her supervisor not only

---

[2] Plaintiff voluntarily strikes all allegations concerning damages arising out of the denial of promotional opportunity.

alleged adverse employment action sufficient enough to state a claim raised, but this single allegation also was sufficient to raise a genuine issue of material question of fact precluding summary judgment. 6 F.3d 750 (11th Cir. 1993). Another case concerning far less severe—and far less numerous—allegations of adverse employment action is *Santiago v. Univ. of Miami*, an action in which just this year, the Southern District of Florida held "allegations that a supervisor who yelled at an employee of her employment, and the employer [took] no action despite repeated complaints from the employee" sufficiently alleged actionable adverse employment action. 2023 WL 3045417 at *9 (citing *Morgan,* 6 F.3d 750).

In comparing the ten-plus allegations in Plaintiff's TAC with the threadbare allegations of objectively less severe conduct, there can be no question as to whether Plaintiff's TAC alleges adverse employment action. And because whether the allegations amount to adverse employment action is a question of fact for the jury—not a question for Takeda to unilaterally decide on its own—Takeda's motion to dismiss Plaintiff's disparate treatment claim on the basis of any alleged failure to plead adverse employment action must be denied.

**B.  Plaintiff alleges Mr. Davis is a viable comparator.**

Takeda's second argument underlying motion to dismiss Plaintiff's Title VII claim is based upon the assertion that Mr. Davis—a fellow sales representative who had identical duties, an identical job, and had identical essential functions as Plaintiff—is not a "viable comparator". Def.'s Mot. at 13-14.

In this Circuit, a viable comparator is "an individual similarly situated in all material respects." *Id.* at 14 (citing *Lewis v. City of Union* City, *Ga.*, 918 F.3d 1213, 1227-28 (11th Cir. 2019). In determining whether a plaintiff and her proffered comparator are "similarly situated in all material respects," the Eleventh Circuit looks to whether a proposed comparator (e.g., Mr.

Davis): (1) "engaged in the same basic conduct as the plaintiff; (2) was subject to the same employment policy, guideline, or rule; (3) had the same supervisor as the plaintiff; and (4) shared the plaintiff's employment or disciplinary history." *Reeves v. Columbus Consolidated Government*, 2024 WL 33903 at *1 (11th Cir. Jan 4, 2024) (citing *Anthony v. Georgia*, 69 F.4th 796, 805 (11th Cir. 2023)).

Here, Mr. Davis satisfies the first three considerations in identical fashion.[3] As to whether Mr. Davis engaged in the same basis conduct as Plaintiff, their daily obligations, tasks, duties, and functions were identical—and although Mr. Davis did not satisfy his obligations, he was tasked with engaging and otherwise was supposed to engage in the same conduct as Plaintiff. (TAC ¶¶ 8-9). To hold that this consideration is so narrow as to mean the actual engagement as opposed to obligation or duty to engage in the same conduct would run contrary to the to the very reason disparate treatment claims exist—the overwhelming majority of which are based upon an employee being treated far worse and/or held to expectations far greater than a colleague who is *supposed to* engage in the same conduct, but does not. Of course this is problematic and runs in direct conflict with the very scenario and conduct Title VII aims to protect against.

The second and third factors are easily satisfied; both Plaintiff and Mr. Davis were subject to the same Takeda policies and they both had the same supervisor—Jodi Gayle-Garcia. The issue is the selective enforcement of those policies, and the disparity between Ms. Gayle-Garcia's treatment of Plaintiff and her treatment towards Mr. Davis.

The fourth factor—the employment or disciplinary history—is what Takeda relies upon in seeking dismissal of Plaintiff's disparate treatment claim. But again, requiring an employees work history to match that of a comparator paves a roadway towards discrimination; it does not

---

[3] Assuming that "engaged in the same basic conduct as the plaintiff" is to mean that the comparator is *supposed to* "engage in the same basic conduct"

combat eliminating it. By requiring the history of employment between an individual who alleges that, based on a protected class, an employer treated one individual less favorably than another is barred from recovery based on the irrelevant and utterly unrelated variable concerning work history. For example, based on this strict and narrow interpretation of what constitutes a viable "comparator", any employer who discriminates against an employee due to their membership in any protected class covered by Title VII may do so, so long as those in its favored class are simply older, younger, more experienced, or less experienced—even when the experience, age, or history of employment bear absolutely no weight on the reason as to *why* the employer is treating one employee more or less favorably based on his or her membership in a protected class.

And while age discrimination claims do exist, only those who are over 40 years of age are able to lodge age discrimination claims; but for those under 40, this unrelated standard and seemingly inadvertent unintended consequence leaves open an easy exit for employers to discriminate. And worst of all, forcing a plaintiff who in all reality was subjected to discrimination on the basis of race, color, religious, sex, gender, or national origin to repackage their claim and allege an age discrimination action—attacks the very heart of the reasons for which Title VII was enacted in the first place.

Boiled down to its essence, "work history" is a very, very narrow and specific component, and if the unintended consequences of requiring a plaintiff to have a colleague who not only exists within the protected class of persons to which the plaintiff does not belong and the class that an employer prefers or treats more favorably, (e.g., any non-Caucasian class of persons which employers treat favorably in furtherance of DEI policies), but also now requires that person in the more favorably treated class to have identical or "the same" work history as a the individual suffering from disparate treatment in order to ever have a means of redress—even when work

history bears no weight on the motive underlying the adverse employment action or the means by which an employer takes adverse employment action against an employee based on his or her membership in a protected class.

As a result, this Court should find that "work history" alone, is not sufficient to justify a holding that Mr. Davis is not a viable comparator. Likewise, a difference in title without any difference in employment duties or functions is no difference at all, and whereas here, both Plaintiff and Mr. Davis are sales representatives, the fact that Plaintiff is a "senior" sales representative does nothing more than emphasize the very point made above: tenure cannot justify discriminatory motives or intent, nor should an employer be free to discriminate as it so chooses as long no two employees work histories are identical.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Takeda's motion to dismiss as to Counts I, IV, and V.

Dated: January 11, 2024

<div style="margin-left: 40%">

Respectfully submitted,
SHANNON OLSON

By: /s/ MICHAEL A. YODER
    Michael A. Yoder*
    YODER LAVEGLIA LLP
    2001 L St NW, Suite 500
    Washington, D.C. 20036
    Tel: (202) 875-2799
    myoder@yoderlaveglia.com
    *admitted *pro hac vice*

By:    /s/ RACHEL L. DREHER
    Rachel Lee Dreher
    DREHER LAW GROUP
    631 Lucerne Ave, Suite 53
    Lake Worth, FL 33460
    Tel: (561) 801-8661

</div>

Fax: (561) 354-5797
dreherlawgroup@gmail.com

*Counsel for Plaintiff Shannon Olson*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed and served via the Court's CM/ECF and/or NextGen electronic filing system upon all parties and counsel of record.


/s/ MICHAEL A. YODER
Michael A. Yoder