# EXHIBIT C

SHANNON OLSON,

        Plaintiff,

    v.

TAKEDA PHARMACEUTICALS
AMERICA, INC.,

        Defendant.

Case No: 8:23-CV-00590-TPB-CPT

## DECLARATION OF MATTHEW HAND

1.

My name is Matthew Hand. I worked as an Interim District Business Manager with Takeda from approximately January 2021 until May 2022. Prior to that time, I worked as a Regional Sales Trainer for Takeda. As an Interim District Business Manager, I reported to Southeast Regional Business Director Greg Crouch. I have personal knowledge of the facts set forth in this Declaration, and I am of competent age and mind to give this Declaration.

2.

Prior to me becoming an Interim District Business Manager, Jodi-Gayle Garcia informed me, in my role as a then-Regional Sales Trainer, that she believed Jordan Davis had a number of performance issues. Gayle-Garcia asked me to work one-on-one with Davis to assist him with developing strategies to improve his performance. I spoke one-on-one with Davis on multiple occasions while a Regional Sales Trainer in an effort to help him improve his performance.

3.

I was introduced to Olson in 2020 and worked with her while I was a Regional Sales Trainer.

4.

As Interim District Business Manager, I supervised Shannon Olson from approximately January 11, 2021, until late 2021. I also managed Jordan Davis from approximately January 11, 2021, until his termination on July 7, 2021.

4.

Upon taking over as Interim District Business Manager, I was aware of there being concerns with Davis's performance—both from Gayle-Garcia's request for me to assist as a Regional Sales Trainer and from her documented feedback on Davis's performance issues.

5.

Davis's performance issues continued after I took over as Interim District Business Manager. I then engaged in coaching discussions with Davis on at least eight occasions between January 15, 2021, and April 21, 2021. Because I continued to have concerns with Davis's inability to consistently sustain his performance, his lack of engagement, and his failure to executed the essential functions of a Sales Representative, Davis was placed on a performance improvement plan ("PIP") on April 23, 2021, which was amended on May 26, 2021. A true and correct copy of that PIP, which accurately describes my interactions with Davis, my specific concerns with Davis performance at the time, and my expectations for Davis

moving forward, among other things, is attached hereto as "Exhibit 1." Ultimately, Davis's performance failed to improve after his placement on the PIP, and he was thus terminated on July 7, 2021. Davis was the only individual terminated under my supervision as an Interim District Business Manager.

6.

I never placed Olson on a PIP. Nor did I discipline her for any of Davis's performance issues.

7.

Promotions from Senior Sales Representative to Territory Manager roles were evaluated and determined on a cyclical basis while I was Interim District Business Manager. For 2021, nominations were made in the latter part of the year. In 2021, an employee could not be eligible for a promotion to Territory Manager if she had received a warning letter between March 15, 2021, and September 15, 2021. Moreover, promotions were only warranted if it was determined that an employee had consistently demonstrated competencies at the level to which they would be promoted, such that they warranted promotion over their peers. A true and correct copy of a document outlining the career path eligibility requirements applicable in 2021, including those that were applicable to Olson, are attached hereto as "Exhibit 2."

8.

On August 20, 2021, Olson was issued a warning letter for a violation of Takeda's Global Code of Conduct and COVID Guidance Protocol, after she met

with me knowing that she had not been vaccinated or tested. A true and correct copy of the warning letter is attached hereto as "Exhibit 3." Olson acknowledged that she engaged in the conduct that resulted in the letter. A true and correct copy of a letter from Olson acknowledging her conduct is attached her to as "Exhibit 4." As a result of the warning letter, Olson was ineligible for promotion to a Territory Manager role in 2021. While that warning letter alone disqualified her, I also did not consider her to have consistently demonstrated strong competencies as a potential Territory Manager, such that a promotion to that role would have been appropriate—particularly when compared to her peers—even had she been otherwise eligible, and thus would not have recommended her for a promotion at that time.

9.

I expected Olson, as a Senior Sales Representative to provide on-the-job training and mentoring to junior Sales Representatives like Davis. Any actions I took with respect to Olson and Davis were in an effort to help the territory that they worked on together be as successful as possible.

10.

I prepared Olson's 2020 year-end performance review, which was delivered to her in 2021. A true and correct copy of that performance review is attached hereto as "Exhibit 5." That review had no impact on whether Olson was (or was not) promoted to Territory Manager. In fact, I do not consider any aspects of the

review to be negative towards Olson. All statements in the review were included because they reflected my understanding of her performance at the time.

11.

To the extent I asked Olson to complete or assist with any task pertaining to her territory, I did so because I believed that it was the best way to ensure that the territory's needs were met, including because of her experience.

12.

I was not aware of any specific disability that Olson may have had while I worked with her.

13.

I did not make any decision or take any action concerning Olson on the basis of her race or disability status, of in retaliation for any request for an accommodation or complaint she may have made. Nor did I make decisions impacting the employment of other individuals on the basis of their races or disability statuses.

14.

While I worked for Takeda, Takeda did not have any Diversity, Equity, and Inclusion ("DEI") policies, quotas, or other requirements that called for, or encouraged, me to treat any individual more or less favorably on the basis of race or disability status. Nor did I treat any individual I supervised more or less favorably on the basis of race or disability status.

15.

Exhibits 1 through 3 and 5 were created in the ordinary course and as a regular practice of Takeda's business, at or near the time of the events detailed therein, by individuals with knowledge of the matters detailed therein, and are kept in the ordinary course of Takeda's business.

I declare under penalty of perjury that the foregoing is true and correct. Executed pursuant to 28 U.S.C. § 1746.

_____
Matthew Hand

9/25/2024
_____
Date

# Exhibit 1

| | |
|---|---|
| **TO:** | Jordan Davis, Sales Representative |
| **FROM:** | Matt Hand, District Business Manager - Interim |
| **CC:** | Greg Crouch, Regional Business Director<br>Staci Thompson, Sr. HR Manager – Neuroscience<br>Susan Potilechio, Employee Relations - USBU<br>Personnel File |
| **DATE:** | May 26, 2021 (Addendum to original April 23, 2021) |
| **RE:** | Performance Improvement Plan – 60 days (calendar days) |

This memorandum serves as notice that you are being placed on a 60-day Performance Improvement Plan. This Performance Improvement Plan is in response to ongoing concerns related to your job performance, starting with the Q2 (July-Sept) Quality Conversation on 10/22/20. Specific areas of concern include: strategic approach, results orientation, change management, administrative responsibilities, core job expectations and failure to follow through on way forward expectations detailed during the 2/4/21 expectations and alignment discussion. Despite coaching discussions over the past several months (1/15/21, 2/4/21, 2/9/21, 2/21/18, 2/25/21, 3/11/21, 3/19/21, 4/21/21) you have been unable to consistently sustain performance, continue to demonstrate a lack of engagement and have failed to execute the essential functions of a Professional Sales Representative. This lack of performance is unacceptable. The areas of deficiency during this period include:

***Strategic Approach/Results Orientation/Change Management:***

Since July 2020 (Q2), you have continued to perform below expectations in various duties required for a Professional Sales Representative. You have been unable to consistently stay engaged and pull through on work commitments and requirements. As discussed, you demonstrate some progression for short periods of time and then regress back to unacceptable behaviors. You have been unable to maintain sustained engagement, commitment and improvement in your job performance.

- As part of your strategic approach, you developed a Return on Investment (ROI) tracker for promotional spend. On 1/15/21, during your Q3 Quality Conversation, it was discussed and agreed that an expectation for all Virtual Field Days (VFDs) would be to bring the updated ROI tracker and discuss it. During 3 VFDs in Q4 (2/4/21, 3/11/21 and 3/19/21), you failed to update or discuss the ROI tracker. This showed an inability to follow through and lack of engagement in the strategic territory management.

- There has been a pattern of under-delivering on expectations and the inability to adapt to changing expectations in the new, virtual and hybrid selling environment. This has resulted in your inability to strategically plan for daily and weekly interactions with your customers, averaging the lowest in the district for both Q3 and Q4.

- On 10/22/20, during your Q2 Quality Conversation, the expectation of a 'minimum of 3 engagements' per week was established for Q3.
    - In Q3, your activity fell short averaging 2.7 HCP engagement/week or 0.5 HCP engagements/day.
    - On 1/15/21 during your Q3 Quality Conversation, a discussion and expectation was set to strategically utilize the resources available to drive HCP interactions in Q4. Despite this direction, you averaged less than 1 HCP contact per day for Q4.

Takeda_0000401

- In Q4, you continued to fall short of NSBU customer engagement expectations:
  - January and February – expectations were 3-4 HCPs/day and 15-20/week; you averaged only 0.9 HCPs/day and 4.7 HCPs/week.
  - March – when able to re-engage in face-to-face interactions which you chose to do, you averaged 0.9 HCPs/day and 4.6 HCP/week. This also fell short of the expectations of 5.5-7 HCPs/day and 28-35 HCP/week.

- On 2/18/21, during a Qualitative Behaviors Conversation, a review took place of your Call Activity report showing daily and hourly activity levels. January data indicated inconsistent effort and engagement on a daily basis, as well as effort within each of the days. Following this discussion, your engagement improved in February, then regressed in March. This behavior indicates you have been unable to improve and sustain your job performance as expected.

### *Expectations and Alignment Discussion – Way Forward/Expectations*

On 2/4/21, an expectations and alignment discussion took place following the VFD. During this discussion and followed up via email, there were specific expectations set for a way forward to address your performance. These way forward steps included:

- Weekly expectations starting 2/8/21:
  - Every Friday email your manager your plan for the upcoming week - HCPs routed/Engage Appointments/Planned Phone Calls/Administrative duties.
    - Completed only 2 weeks - 2/12/21 and 2/19/21
  - Every Friday, schedule a 30-minute meeting on your managers calendar to debrief/recap the weeks' activities
    - Completed only 1 week – 2/12/21, with 1 meeting cancelled by your manager

- Outstanding 60-Day Concur Expenses:
  - You acknowledged lack of expenses submitted as required and was advised of two deadlines for expense submission, along with providing a breakdown of what expenses had been submitted to become compliant and up to date with expense submissions.
  - Batch 1 – submission due on 2/5/21. This deadline was met.
  - Batch 2 – submission due on 2/11/21 of all remaining outstanding expenses and deadline not met.
    - On 2/17/21, your manager became aware of outstanding expenses when a Concur email was forwarded from your RBD. Following an email from your manager, you did acknowledge submitting some additional expenses after the initial Batch 1 (2/5/21). However, you did not proactively communicate with your manager about the additional expense submission(s), nor did you advise your manager that you missed the 2/11/21 deadline for all outstanding expenses.

### *Administrative Responsibilities and Core Job Expectations*

There has been an ongoing pattern of behavior which includes a lack of timeliness with assignments related to core job expectations. These issues include:

- On 1/14/21 – missed a WebEx call and failed to proactively communicate with manager that would be unable to join.
- On 2/11/21 – missed the initial deadline for all outstanding 60-day Concur expenses and failed to communicate with manager; went unaddressed until manager addressed it during a conversation on 2/25/21.

Takeda_0000402

- Failed to follow through on Way Forward task from 2/4/21 VFD – which was to follow up with your manager by 2/17/21 to role play scenarios to demonstrate your practice techniques, follow up questions and the clinical information based upon what you learned.
- Failed to follow through on Way Forward task from 3/11/21 VFD – which was to follow-up on the 3/19/21 VFD to share examples of how you pulled together completed calls Learn/Share/Earn as well as role play a full call scenario where you can practice the -LSE from the ELSE model.
- On 3/31/21 – missed a LEADs training deadline for Drug Safety and Products Complaint Training and alerted it was overdue on 4/5/21.
- On 3/5/21 – received a Warning Letter for compliance violations for overdue expenses and was required to review the Takeda US Travel and Expense Policy and send an email confirmation to your manager that this review has been completed by 3/9/21. After a follow-up by your manager on 3/15/21, you forwarded the required email acknowledgement.
- In your Q2 Quality Conversation, proper call entry and documentation was an area of focus for correction and improvement. It also remain a compliance concern due to the accuracy and integrity of books and records as noted in the Code of Conduct. As discussed during your 2020 Performance Review on 4/21/21, the lack of attention to call entry has continued including:
  - In Q4, 15 instances of backdated calls.
  - In Q4, multiple instances where calls are not being entered shortly after taking place but are being entered hours later, and/or in batches.
  - Based on this review, you are not entering calls shortly thereafter as required by field expectations
- On 4/1/21 you received an email from Sample Accountability asking you to resubmit a new physical inventory by the end of that day after you discovered a discrepancy in your March month end inventory submission.
  - You failed to meet this deadline, receiving a follow up email from Sample Accountability on 4/16/21 once again asking you to submit a corrected physical inventory. This deadline you did meet.

The above-listed issues and incidents have been discussed with you previously as noted in the numerous coaching dates listed above. Despite this coaching, compliance and performance concerns remain. As a result, you are being placed on a 60-day Performance Improvement Plan. The following expectations must be demonstrated during the next 60 days and beyond:

***Expectations and Action Items:***

- You must provide your completed Q4 ROI tracker no later than 4/30/21.

- Develop a Q1 Business Plan to reflect your Q1 FPP and routing. This plan must incorporate who you are targeting, the reason for your targeting strategy, your goal for those targets along with any additional requirements your manager request. This business plan must be submitted by the 5/5/21 deadline given to the entire district.

- Update and maintain your ROI tracker for Q1 promotional spend with HCPs. You will be expected to keep this information up to date (data from most recent VitalSigns update) and share with your manager on all weekly touchpoints.

- All call activity must accurately reflect interactions with HCPs and calls must be entered into iEngage immediately following each interaction. Backdating or batching calls during the day or into the evening will not be allowed.

- Sign-in sheets for lunches must be secured from an office within one (1) business day of the meal for virtual engagements and immediately after an in-person lunches. Review all entries to ensure participants have completed all required sections of the sign-in sheet. Expenses must be filed every 2

weeks corresponding with payday and should be complete, accurate and compliant. Expenses beyond 60-days will no longer be approved.

- You must increase your HCP interactions in accordance with NSBU expectations (5.5-7/day and 28-35/week) while you continue to work a hybrid schedule. As NSBU adjusts interactions expectations with this hybrid model, you must demonstrate your ability to make these adjustments. A third fiscal quarter of averaging less than 1 HCP contact per day is unacceptable.

- Demonstrate the Takeda Selling Model and your ability to bring value to the HCPs you support during virtual and face to face field interactions as observed by your manager. Your manager must participate in one (1) Veeva Engage HCP meeting per week and receive a meeting notice and be informed as soon as this appointment is scheduled but not later than the day before the call. Your Regional Sales Director will also participate in one (1) virtual call during the PIP period. It will be your responsibility to reach out to your RBD and secure available dates and schedule a call with a prescriber, not office staff. Any changes to the hybrid schedule will be discussed weekly and adjusted accordingly.

5/26/21 Addendum:

- Due to changing dynamics in your footprint – Veeva Engage Meetings being less frequent as more offices shift to Face2Face – your manager must participate in two (2) additional in person field days prior to June 17, 2021. These in person field days must be centered around HCP interactions with High Decile Vyvanse and Trintellix customers, with emphasis being placed on the Trintellix Predictive Targets.

- Your Regional Sales Director must participate in one (1) virtual call prior to June 17, 2021.

- You must demonstrate the necessary progress with selling skills putting together a complete sales call using the ELSE selling model. This includes:
  - Strategic and thoughtful pre-call planning on each call to effectively identify the opportunities in each interaction as noted in your FCL's.
  - You must demonstrate you can share pertinent information with the HCP including:
    - Complete and thorough messaging which builds on the conversations you have had with your HCP's
    - Generate effective probing questions that respond to the needs of the HCP's
    - Sharing Clinical Data such as efficacy, tolerability, dosing etc.
    - Closing for action on a specific patient type in line with brand strategies

- The night prior to a VFD, you must send a pre-call plan to your manager (or RBD) using analytical insight from VitalSigns demonstrating your ability to leverage the data to build an effective pre-call plan based upon brand strategies.

- Every Friday, prior to the 3pm weekly touchpoint with your manager, email your plan for the upcoming week. This email must include: Your daily routing, your planned in-person and/or virtual appointments and/or promotional spends, administrative duties to be accomplished, planned phone calls and any other weekly duties you have. Your plan must also reflective of your Q1 FPP and routing and will be cross referenced against weekly call activity to ensure accuracy.

- You must be proactive with communications with your manager to eliminate any undue burden to provide constant direction and follow-up. Communicate status of projects and call activity in between regular 1:1 meetings as needed to update your manager.

- You are expected to be engaged throughout normal business hours, whether working in a Face-to-Face or Virtual Selling environment. Any time out of territory must be sent to your manager via email, noted in the Timeout System and in Veeva.

Takeda_0000404

- Professional and proper business attire is to be worn at all times during field days and interactions with offices. During virtual interactions with offices, your attire must also convey a professional image as if you were in the office.

- You need to demonstrate proficiency on all sales systems and related processes (i.e. SOT report, VitalSigns, SalesIQ FPP, call documentation within Veeva, Utilization of Veeva Engage, Concur, Compliance policies, etc.) and seek available resources and training to educate yourself if you do not understand. You are expected to execute all sales and marketing strategies, directions and initiatives for the products within your portfolio. You are expected to be in Compliance with all Takeda policies and procedures per the training you have been provided. Your lack of understanding or not knowing will not be an acceptable reason for not performing your job as expected.

- Complete all other job responsibilities per your job description and complete any other tasks, projects and goals assigned to you in a timely and accurate manner.

We will have weekly one-on-one meetings every Friday at 3:00 p.m. and may be subject to change based on business need. These meetings will be via Microsoft Teams. The expectation is that you schedule these with your manager. The purpose of these meetings will be to review your progress and provide you with performance and/or behavioral feedback. You will be responsible for driving the content of these meetings. Come prepared to discuss and review the week's objectives, outlining accomplishments, any problems and offering proposed solutions, as well as any required asks outlined above in the Expectations and Action Items section of this PIP.

Failure to meet these expectations or other expectations for your position during the next 60 days (calendar days) and ongoing thereafter, will result in the termination of employment. It is important to understand your Performance Improvement Plan is confidential and, with the exception of department leadership, your manager, and Human Resources/Employee Relations should not be communicated to your peers, vendors, consultants, customers or others.

Please note that while we hope your performance improves such that you are fully meeting all performance expectations for your position, nothing changes your status as an at-will employee, and there is no guarantee of continued employment during or after this 60-day period. If you disagree with any of the information contained within this document, you may submit a written statement explaining your position to Susan Potilechio, Employee Relations Partner – USBU. Any submitted responses will be reviewed and maintained as a part of your confidential personnel file.

As always, I am committed to working with you and to provide you with the support, tools and resources necessary for you to successfully complete this Performance Improvement Plan but ultimately, it will be your responsibility. Please feel free to contact me at any time.

Sincerely,


Matt Hand
District Business Manager - Interim




This is to confirm that I have received and have had the opportunity to discuss this Performance Improvement Plan.

_Jordan J. Davis_                                    _5/26/2021_
Jordan Davis                                         Date

Takeda_0000405

# Exhibit 2



# NSF - Primary Care Career Path Eligibility

## General Eligibility Criteria

**Tenure – cutoff September 15 of nomination year**

**Career Path Discussions/Calibration Sessions:**

- Strong competencies consistently demonstrated in career path eligibility year (9/16/20 – 9/15/21)
  **AND**
- Must be in top 50% of Cresset ranking in FY 2020

**Discipline:**

- **Counseling Plan/Performance Improvement Plan** – has not been on a plan anytime during the career path eligibility year (9/16/20 -9/15/21)
- **Warning Letter** – has not received a Warning Letter with an issue date in the last 6 months (3/15/21 - 9/15/21)

## Role Specific Criteria

**Sales Rep to Senior Sales Rep:**
- 1 year high performer* within last 2 years**
- 2-year minimum as a Sales Rep at Takeda

**Senior Sales Rep to Territory Manager:**
- 2 years high performer* within last 3 years as a Senior Sales Rep**
- 3-year minimum as a Senior Sales Rep at Takeda

**Territory Manager to Senior Territory Manager:**
- 2 years high performer* within last 3 years as a Territory Manager**
- 3-year minimum as a Territory Manager at Takeda

**District Business Manager to Senior District Business Manager:**
- 2 years high performer* within last 5 years as a District Business Manager**
- 5-year minimum as a District Manager in Pharmaceutical Sales

*Note:*
*\*Criteria for LTakeda high performer starting FY2018 is defined as top 50% Cresset and consistent demonstration of competencies at next level. For LShire, criteria for a high performer starting FY2019 is defined as top 50% Cresset or President's Club and consistent demonstration of competencies at next level.*

*\*\*LTakeda eligibility criteria prior to FY2018 is defined by performance rating of Exceeds Results and/or Outstanding Competencies and will be grandfathered and counted with 2019 eligibility criteria moving forward until lookback period no longer applies. LShire eligibility criteria prior to FY2019 is defined as a performance rating of CM or CE rating and will be grandfathered and counted with 2019 eligibility criteria moving forward until lookback period no longer applies.*

Revised FY2020

# Exhibit 3

 

| Date: | 8/20/21 |
|---|---|
| To: | Shannon Olson, Sr. Sales Representative |
| From: | Matt Hand, Interim District Business Manager |
| CC: | Greg Grouch, Regional Business Director, Irving Forestier, Employee Relations Partner, Staci Thompson, Human Resources Business Partner |
| RE: | Warning Letter, Unprofessional Behavior |

This memorandum serves as a formal warning issued for your violations of Takeda's Global Code of Conduct and the USBU COVID Guidance Protocol. As you are aware, and as the policies state, Takeda employees are required to treat each other and all of those with whom they come in contact within the performance of their job duties with respect and promoting the well-being of each employee, providing a safe and healthy working environment, and working conditions that enable our colleagues to thrive. In addition, USBU COVID Guidance requires employees participating in any activity that requires vaccination or testing to assume compliance and that the employee is vaccinated or has completed the proper testing when required with any violation of this guidance considered a violation of Takeda's Code of Conduct and subject to disciplinary measures.

- On July 8, 2021 you voluntarily shared with me your vaccination status. During that same conversation sustained on July 8, 2021, you asked and were told that you needed to be tested to engage in field activities.
- On July 16, 2021 you received training and attested to the USBU Summer 2021 Interim COVID-19 Guidance Protocol.
- On July 20, 2021, you met with me knowing that you had not been vaccinated nor tested. Later that evening, after our meeting, unsolicited, you forwarded me an email making me aware that you had just ordered your first PIXEL test.
- Based on the outlined timeline of events, when you met with me on July 20, 2021, you knew or should have known that your actions were in violation of Takeda Policy because four (4) days before, you received training in and attested to the COVID Guidance Protocol – thus resulting in a violation of Takeda's COVID Guidance Protocol and Code of Conduct.

Your behavior does not meet the expectations associated with your role as a Senior Sales Representative to model professional behavior and a spirit of trust and collaboration. It is unacceptable and will not be tolerated. As a result, you are receiving this Warning Letter which will become part of your personnel file. You are again reminded of the expectations which have been previously communicated to you in USBU COVID Guidance and Global Code of Conduct.

Takeda_0001054

As a Takeda employee, you are expected to demonstrate the highest level of integrity and professionalism. Therefore, if the Company observes or learns of similar behavior at any time, and/or determines that you have violated any Takeda policies or procedures, the Company will take further disciplinary action up to and including the termination of your employment.

You are urged and expected to take immediate action to rectify your behavior. However, as you are aware, Takeda prohibits employees from engaging in any form of retaliation including contacting anyone internally or externally who may have raised concerns about your behavior. Violators of this policy will be subject to immediate termination of employment. This letter is confidential and shall remain so without discussion with others on the team.

Please sign below acknowledging your understanding of the content of this document and return the signed document to me. If you disagree with any of the information contained within this document, you may submit a written statement explaining your position to the Employee Relations Partner for the USBU, Irving Forestier. Any submitted responses will be reviewed and maintained as a part of your confidential personnel.

Sincerely,


Matt Hand
Interim District Business Manager, Jacksonville
Neuroscience


Acknowledgment:

I have read and understand the contents of this warning letter.

Shannon Olson                                        8/27/2021
                                                      Date

Confidential – for internal use only

# Exhibit 4

August 27, 2021

The purpose and intent of this letter is to provide an accurate, truthful and transparent explanation behind the 8/20/2021 Warning Letter for "Unprofessional Behavior" I received.

I, Shannon Olson, Do 100% take responsibility and own the following actions:

- On July 8, 2021 you voluntarily shared with me your vaccination status. During that same conversation sustained on July 8, 2021, you asked and were told that you needed to be tested to engage in field activities.

- On July 16, 2021 you received training and attested to the USBU Summer 2021 Interim COVID-19 Guidance Protocol.

- On July 20, 2021, you met with me knowing that you had not been vaccinated nor tested. Later that evening, after our meeting, unsolicited, you forwarded me an email making me aware that you had just ordered your first PIXEL test.

- Based on the outlined timeline of events, when you met with me on July 20, 2021, you knew or should have known that your actions were in violation of Takeda Policy because four (4) days before, you received training in and attested to the COVID Guidance Protocol – thus resulting in a violation of Takeda's COVID Guidance Protocol and Code of Conduct

The above stated action, was isolated and unintentional.

On July 1, 2021, I returned to work at Takeda from a 12 week leave of absence. Prior to my leave of absence, I was 100% compliant with Takeda's COVID policy.

While planning to return to face to face interactions in the field, I became aware that I did not order a COVID test. I immediately ordered a test and emailed confirmation of that order to Matt. I have attached a copy of that email to this letter.

My failure to order, take and obtain results of a COVID test prior to meeting with Matt Hand on July 20, 2021, was an isolated, unintentional oversight and in no way was intended to undermine or circumvent Takeda's policy.

*Shannon Olson*   8/27/2021

Shannon Olson

Senior Sales Representative

Takeda_0001051

# Exhibit 5



# Olson, Shannon M

Sr Sales Rep

Manager: Greg Crouch
Evaluated By: Greg Crouch

# 2020 Year End Performance Review

Organization: Jacksonville, FL (Greg Crouch (Inherited))
Location: USA - MA - Lexington - Sales Virtual
04/01/2020 - 03/31/2021

## Overall Ratings and Comments

### Manager Overall Evaluation

Rating:  No Ratings - Not Rated

Comment:  <u>Roles/Impact:</u>
- District Trintellix Lead

**CORE COMPETENICES**

**Drive for Results/Strategic Approach**
- Proactively and consistently utilized available sales tools/reports to create a strategic plan to target key HCPs within the St. Pete territory.
  - Spearheaded footprints strategic approach, data analysis and messaging strategy.
- Took lead during Prescriber Maintenance period to clean-up HCP universe, helping guide partner through importance of database management and impact on ROI/goal attainment

**Lead Change**
- Leveraged promotion budget to set up virtual engagements with key HCPs. Lead district in Virtual Engagements for both Q3 and Q4.
  - For Jan and Feb, exceeded weekly strive goal of 15-20/wk, by averaging 4.3/day and 21.4/wk
- Successfully recruited 2 of the 3 attendees to the district's first Vyvanse – highlighting Shannon's ability to lead change and find ways to execute utilization of new resources and drive business results.
- In Q4, with additional emphasis/importance placed on using available resources Shannon led the district in mailings and emails. Sending over 100 more emails than the next closest on the team. Equally important was that Shannon sent led in DFTO and Trintellix Expert Exchange emails – two resources the organization, region and district placed even greater emphasis on.

**Collaboration/Develop Capabilities**
- As District Trintellix Lead, partnered/collaborated with other product leads in the region to spearhead a Trintellix Patient Descriptor discussion, geared specifically towards the evolving market landscape which was being impacted by COVID.
  - Shannon led the discussion around the middle aged female patient – helping share with the region effective ways to bring the patient to life considering how the marketplace has
- During field engagement training, Shannon was a resource to teammates and the district by sharing both clinical knowledge and industry knowing by providing clarity on studies as well as shared simplified competitor messaging.

<u>Opportunity/2021</u>
- Be at least in the "Top 50% of Cresset" – Strive to win Gold/Silver
- With focus continuing to be placed on driving Trintellix, continue to proactively look for opportunities to drive district discussions, as well as to proactively partner/collaborate with others across the district/region.
  - Ex: Constellation of Symptoms/Efficacy discussion

### Employee Overall Evaluation

Comment:  I feel and know I did the best job I could do in 2020/Q4 2021. My last time in the field was with Dr ▆▆▆▆ as we had a lunchtime Vyvanse Program. When given the green light to go live in field I did. I left it all out on the field. I have no regrets nor do I feel there was any more I could do than what I did. I met each assigned office where they were, I pivoted, I went above and beyond for each of my assigned

offices. I utilized every resource I could. I felt/feel such a sense of urgency to get patients our medications that I put patients, my offices, and my territory as a wholes needs above my own.

## Goals and Priorities

### Research Different non-sales areas of interest within Takeda (HR, Thrive, Consumer/Employee Engagement) with the goal to solidify career path

Ambassador Program, Mentorship Programs,

Due Date: 06/30/2021     Status: On Track     Completion Date:

Supports:

### Seek opportunities to contribute to building Takeda's Brand, while also building my own brand

Due Date:     Status: Not Started     Completion Date:

Supports:

### Territory Clean-Up/ Prescriber Maintenance

- Territory cleanup/ maintenance. Complete the Prescriber detail report maintenance
- I do feel and know going through prescriber detail report will result in positive cresset results
- Spend 1 hour each day hacking away at the report

Due Date: 03/31/2022     Status: Not Started     Completion Date:

Supports:

## Areas for Development

### Continue to Research Positions within Takeda that would fit me and allow advancement

Status: In Progress

Start Date: Mar 1, 2018     Completion Date: Feb 28, 2019

## Global Core Competencies / Leadership Behaviors

### Please provide an overall evaluation of your Leadership Behaviors.

| Manager Evaluation | Employee Evaluation |
|---|---|
| Response: | Response: **Business Acumen/Develop Cabilities:** <br><br> • Prescriber Maintenance <br> • Continued to evaluate/update routing on a quarterly basis based on strategy, |

- Consistently met/meet customers "where they were/are at"
- Quarterbacked all top accounts throughout pandemic, assessing needs and delivering
- Used and continue to critically think about each account and best business options to build lost business due to pandemic and the fact that my territory is extremely message and promotionally sensitive
- Level 2 thinking and activity with messaging, resourcing
- Goals exceeded reality by thinking outside the box and effectively utilizing all options available to move forward to meet patient and customers needs

## Leadership/Self Awareness

- Trintellix Lead for district
- Led district product training, messaging, conference calls,
- Passion so strong for my role and sense of urgency that we get our customers what they need to help patients during pandemic that during one conf call I shared my "why" thus resulting in my children learning how my brother passed
- Tried new things by joining various groups within Takeda (Faith @ work, Gender Parity Group)
- On a call with Ramona she stated if we had any ideas pertaining to reaching patients and customers to be bold and reach out. I was bold and courageous. I kept a continued pulse on perception during pandemic, found an unmet need and way to connect and shared my idea. I ended up being reported to HR and Global Compliance as having "secondary income" (investigation resulted in truth of no secondary income)
- Was invited to take part in 2 conf calls with Executive Leadership pertaining to current selling environment and current territory and what was actually our new reality (couple months into pandemic)
- Was open and receptive to feedback on being a leader with my territory partner, implemented plan but was not successful as goals were not met

## Managing Change/Engage Others/

Takeda_0000495

- 6/26 Engagement with customers began, successfully pivoted from face to face to phone to virtual to hybrid
- Completed all new trainings Takeda initiates
- Continuously exceeded district, region and nation in engagements
- From Quarantine, Virtual School, Isolation, Back to School, to now Tsunami of Mental Health- namely anxiety and depression, managed accounts and messaging accordingly

## Strategic Approach/Collaboration/Drive For Results

- Goals exceeded reality by thinking outside the box and effectively utilizing all options available to move forward to meet patient and customers needs
- Had an office champion in each office that I utilized to gain access to providers in new "virtual world" as a patient advocate while also conducting mental health checks on my office staff (Lucy-let was out, Dr Eckstein gave her Trint- she did not realize how bad she was until she was back to "herself"
- Dr Amin: new MA, hours and hours spent educating her on Trint and Vyv, assisted getting pts successfully enrolled in Help at Hand
- Virtual Speaker Programs: I had invited and pulled through 2 of the 3 attendees at one program

Takeda_0000496