UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANNON OLSON,

    Plaintiff,

v.   Case No. 8:23-cv-590-TPB-CPT

TAKEDA PHARMACEUTICALS
AMERICA, INC., et al.,

    Defendants.
_____/

## ORDER GRANTING "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT"

This matter is before the Court on "Defendant's Motion for Summary Judgment," filed on September 27, 2024. (Doc. 77). Plaintiff Shannon Olson did not file a response in opposition, and the time to do so has long expired.[1] After reviewing the motion, court file, and the record, the Court finds as follows:

## Background

For over twenty-three years, Plaintiff Shannon Olson, a Caucasian female, has worked as a pharmaceutical sales representative for Defendant Takeda Pharmaceuticals America, Inc., in the Jacksonville district's neuroscience division. During her career, it appears that Plaintiff was a star employee, receiving positive evaluations and awards. According to Plaintiff, she began to experience severe misconduct and discrimination when Defendant Jodi Gayle-Garcia became her manager and direct supervisor. Plaintiff's lengthy complaint details numerous

---

[1] Plaintiff's response was due on or before November 1, 2024. *See* (Docs. 78; 79).

grievances against her employer and supervisors that she believes demonstrate harassment, discrimination, and disparate treatment based on Plaintiff's race and disability.

On March 15, 2023, Plaintiff filed this lawsuit. In the operative third amended complaint, Plaintiff asserted five claims for relief: disparate treatment (race) under Title VII (Count I), religious discrimination under Title VII (Count II), religious discrimination under the Florida Civil Rights Act ("FCRA") (Count III), disability discrimination under the Americans with Disabilities Act ("ADA") (Count IV), and disability discrimination under the FCRA (Count V). (Doc. 56). The Court dismissed with prejudice Counts II and III pursuant to Plaintiff's stipulation. (Doc. 62).

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is only defeated by the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the

nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### *General Framework for Employment Discrimination Claims*

In the operative third amended complaint, Plaintiff asserts claims based on both racial and disability discrimination. Title VII prohibits an employer from discriminating against individuals with respect to compensation, terms, conditions, or privileges of employment because of their race. 42 U.S.C. § 2000e-2(a)(1). Prohibited discrimination includes taking tangible adverse employment actions, such as hiring, firing, and failing to promote. *See, e.g., Carter v. Cellco P'ship*, No. 8:15-cv-1033-T-17EAJ, 2016 WL 8981056, at *4 (M.D. Fla. Mar. 23, 2016). In a Title VII discrimination case, a plaintiff is not required to demonstrate a "significant" or "serious" adverse employment action. *Muldrow v. City of St. Louis*, 601 U.S. 346, 350, 353 (2024). But a plaintiff must establish the employer's actions "brought about some disadvantageous change in an employment term or condition." *Id*. at 354 (internal quotation omitted).

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job applications, procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). Similarly, the FCRA prohibits an employer from discriminating against an employee because of her disability. § 760.10, *F.S.* Because the FCRA is modeled on the ADA, FCRA disability discrimination claims are analyzed using the ADA framework. *Holly*

*v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) (citing *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1224 n.2 (11th Cir. 2005)).

A plaintiff can prove discrimination through either direct or circumstantial evidence. Plaintiff does not assert or present any direct evidence of discrimination in this case. The Court must therefore consider whether Plaintiff "has put forward enough [circumstantial] evidence for a reasonable jury to conclude that illegal discrimination occurred." *McCreight v. AuburnBank*, 117 F.4th 1322, 1334 (11th Cir. 2024). Courts considering circumstantial evidence may consider whether a plaintiff can survive summary judgment using the *McDonnell Douglas* framework or the convincing mosaic approach, although both approaches are ultimately "the ordinary summary judgment standard." *See id.* at 1335.

The *McDonnell Douglas* framework requires a plaintiff to establish a prima facie case of discrimination. *Id.* (citing *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc)). After this burden is satisfied, "the employer must articulate a legitimate, nondiscriminatory reason for its adverse employment action," and if so, the burden again shifts for the plaintiff to "show that the employer's reason is pretext for unlawful discrimination." *Id.* To establish a prima facie case of disparate treatment, Plaintiff must show that "(1)[s]he is a member of a protected class; (2) [s]he was subjected to an adverse employment action; (3) [her] employer treated similarly situated employees who were not members of the plaintiff's class more favorably; and (4) [s]he was qualified for the job or benefit at issue." *Cooper v. Jefferson Cty. Coroner & Med. Examiner Office*, 861 F. App'x 753, 756 (11th Cir. 2021).

As an alternative to the *McDonnell Douglas* approach, the Eleventh Circuit allows a plaintiff to avoid summary judgment by presenting a "convincing mosaic of circumstantial evidence that would allow the jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation and footnote omitted). A "convincing mosaic" may be shown by evidence that demonstrates "(1) suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (internal quotation omitted). The convincing mosaic approach "is a metaphor, not a legal test and not a framework." *Id.* (citing *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023)). This approach is – in its entirety – the ordinary summary judgment standard, but it is a "helpful reminder that *McDonnell Douglas* is not the only game in town—a particularly useful point for employees with significant evidence of illegal discrimination who lack the comparator evidence often required to set out a case under *McDonnell Douglas*." *Id.* (citations omitted).

### *Adverse Employment Action(s)*

In its motion, Defendant argues that Plaintiff cannot establish any of her discrimination claims because the conduct and actions complained of in the third amended complaint do not constitute adverse employment actions. Plaintiff has failed to respond and identify any record evidence in opposition.

Plaintiff's claims require an adverse employment action. *See Lewis*, 918 F.3d at 1220-21 (explaining that adverse employment action is required to make out a prima facie case of racial discrimination); *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (*per curiam*) (same); *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) ("If establishing discrimination by disparate treatment, a plaintiff must show […] that [she] was subject to an adverse employment action."). To establish an adverse employment action in a Title VII discrimination case, the plaintiff must establish the employer's actions "brought about some disadvantageous change in an employment term or condition." *Muldrow*, 601 U.S. at 350-353. In other words, the plaintiff must "show some harm respecting an identifiable term or condition of employment." *Id.* at 354-55. The plaintiff, however, is not required to demonstrate a "significant" or "serious" or "substantial" adverse action. *Id.* at 354-56. Not every unpleasantry or experienced slight associated with the workplace will constitute an "adverse employment action" though – a plaintiff must show some "disadvantageous" act or practice that leaves a person worse off because of her protected trait. *See id.* at 354.

In her third amended complaint, Plaintiff asserts several adverse employment actions: the deprivation of the opportunity to participate in conference calls; Defendant's questioning and investigation into Plaintiff's outside work; and Defendant's suggestion to inquire as to a colleague's mental state following the death of George Floyd. For the reasons discussed below, none of these constitute an adverse employment action.

Participation in Conference Calls

Plaintiff claims that she was deprived of the opportunity to participate in the conference calls. However, Plaintiff admitted during her deposition that she received calendar invites to and presented during the calls at issue even if she expressed that she wished she had more time to prepare for the calls. Plaintiff has not pointed to any evidence that would show any other individuals were informed of the calls in a different manner. Plaintiff also testified that she no knowledge of the calls having any impact on her employment. Therefore, there is no record evidence of any harm to Plaintiff with respect to an identifiable term or condition of her employment related to the conference calls. Defendant is entitled to summary judgment on this claim.

Outside Work

In 2015, while employed by Defendant, Plaintiff applied for a patent through the United States Patent and Trade Office. Plaintiff claims that she did not make any money from the patent, and that the patent did not generate any additional job or employment but Defendant nonetheless investigated her. Plaintiff takes issue with Defendant's questioning of her outside work, claiming that she was treated differently than Jordan Davis, a co-worker.

Plaintiff was ultimately approved for outside work without consequences, and the entire process took only three hours of her time. The fact that Defendant asked Plaintiff questions and requested information about outside employment did not constitute harm to Plaintiff with respect to the terms and conditions of her employment. In addition, even if Defendant's "investigation" could constitute an adverse employment action, Defendant has presented a legitimate, nondiscriminatory,

and non-pretextual reason for its communications and requests for information concerning Plaintiff's outside work, and Plaintiff has failed to present any evidence that a jury could rely on to find that this reason was pretextual. Defendant is entitled to summary judgment on this claim.

George Floyd

In her motion, Plaintiff complains of another purported adverse action – that Defendant asked her to reach out to Jordan Davis to see how he was coping with the death of George Floyd. She does not take issue with consoling her co-workers or Davis – in the operative complaint, she specifies that she only raises this instance in light of "Takeda's abject silence following the tragic death of Plaintiff's own sister, who had just died the year prior. . ."

Once again, Plaintiff does not show or point to any evidence that this request or her response to the request harmed her with respect to the terms and conditions of her employment. In her deposition, Plaintiff herself testified that she did not appear to believe the request was improper or even recall if she had any discussion with Davis. She also did not recall whether anyone had reached out to her following her sister's death. This purported adverse action did not harm Plaintiff with respect to the terms and conditions of her employment and is simply a "trivial slight" that is not actionable under Title VII or the ADA. Defendant is entitled to summary judgment on this claim.

Job Duties

As another adverse action, Plaintiff identifies Defendant's decision to impose Davis's job duties on Plaintiff. Specifically, Plaintiff claims that Defendant told Plaintiff she needed to take more of a leadership role with Davis if she wanted to

achieve a promotion, and that she informed Defendant she had already tried to assist Davis to no avail. Confusingly, Plaintiff appears to allege that she was the one who informed Defendant that she had been performing Davis's job duties – not that Defendant had asked her to complete his job duties.

In any event, nothing in these allegations rises to the level of an adverse employment action. Job duties of senior sales representatives (like Plaintiff) include training and mentoring new sales representatives (like Davis). In her senior role, Plaintiff was responsible for the entirety of her territory, including assisting her counterpart as needed to ensure that tasks were completed. Plaintiff has failed to demonstrate how any tasks she was asked to perform were outside of her normal job duties. *See Lukie v. MetLife Group, Inc.*, No. 22-10967, 2024 WL 4471109, at *5 (11th Cir. Oct. 11, 2024) (holding that the plaintiff failed to demonstrate that complained of work assignments constituted adverse employment actions because she presented no evidence the tasks required of her were outside the terms and conditions of her employment). Plaintiff is fundamentally complaining about doing her job – not adverse employment actions. Defendant is entitled to summary judgment on this claim.

*No Viable Comparator*

To establish a Title VII racial discrimination claim using the *McDonnell Douglas* framework, a plaintiff must prove, among other things, that she was treated less favorably than a similarly situated individual outside her protected class. *See Lewis*, 918 F.3d at 1224. "[A] comparator must be 'similarly situated in all material respects,' meaning that the plaintiff and the comparator must be 'sufficiently similar,

in an objective sense' and 'cannot reasonably be distinguished.'" *Lukie*, 2024 WL 4471109, at *4 (quoting *Lewis*, 918 F.3d at 1218, 1228). The court must make this type of evaluation on a case-by-case basis. *See id.* (citing *Lewis*, 918 F.3d at 1227-28). Although minor differences in job functions will not be dispositive, "a similarly-situated comparator will ordinarily: have engaged in the same basic conduct as the plaintiff; been subject to the same employment policy; had the same supervisor; and share the plaintiff's employment or disciplinary history." *Id.* (citing *Lewis*, 918 F.3d at 1227-28).

Plaintiff attempts to identify Jordan Davis as a viable comparator. But Davis is not a viable comparator due to his and Plaintiff's wildly different employment histories and job duties – Plaintiff worked as a Field Senior Sales Representative and was employed by Takeda for twenty-three years, while Davis was a Sales Representative and new hire. In addition, Plaintiff has not and cannot point to any evidence of Davis being treated more favorably than her.[2] For instance, considering Plaintiff's outside employment claim, Davis is not a viable comparator because he sought pre-approval for his outside work when Plaintiff did not.

Plaintiff ultimately admitted when deposed that she could not say that Davis was treated more favorably than her in any way. This is not surprising given the reality that Davis was given continuous performance criticism and coaching, placed on a performance improvement plan, and was ultimately terminated for his job performance issues while Plaintiff remains employed with Defendant. To the extent

---

[2] Plaintiff further admitted in her deposition that she has no evidence of a similarly situated non-white individual being treated more favorably than Plaintiff. (Doc. 77-1 at 292:8-12).

that any of Plaintiff's discrimination claims rely on comparison to Jordan Davis, Defendant is entitled to summary judgment.

***Disability Claims***

Counts IV and V of the third amended complaint appear to assert claims for an alleged failure to accommodate, disparate treatment, failure to promote, retaliation, and hostile work environment based on Plaintiff's disabilities. Many of Plaintiff's disability claims center around short-term disability leave that she took in April 2021.

<u>Failure to Accommodate</u>

In this claim, Plaintiff appears to assert that Defendant did not accommodate her short-term disability request. However, Plaintiff admits that she took her full short-term disability leave and was ultimately paid all short-term disability benefits. Although she was initially determined to be ineligible for benefits, Plaintiff appealed the determination and provided additional information, which resulted in benefits being awarded. Because an interactive process occurred that resulted in Plaintiff being reasonably accommodated, she cannot sustain a failure to accommodate claim. *See, e.g., Hogancmap v. Volusia*, No. 6:18-cv-600-Orl-37GJK, 2019 WL 11288567, at *7 (M.D. Fla. Apr. 1, 2019). Defendant is therefore entitled to summary judgment on this claim.

<u>Disparate Treatment</u>

In Count IV, Plaintiff appears to assert an ADA disparate treatment claim, claiming that Defendant treated Plaintiff differently on the basis of her disabilities – PTSD and depression – by harassing her, threatening her, refusing to compensate her while she was on short term disability leave, forcing her to work while she was on

short term disability leave, publicizing her disability, and threatening to terminate her because of her disabilities, among other things.

It is not clear whether any these complaints could constitute adverse employment actions. But the bigger problem for Plaintiff is that her claims lack record factual support. For instance, although she claims that Defendant did not compensate her during her short-term disability leave, Plaintiff admitted in her deposition that Defendant compensated her with short-term disability benefits.[3] She did not testify as to any work that was assigned to her during her leave. She admits that no one said anything to her that was discriminatory on the basis of her disability, so any contention that she was harassed, ridiculed, or threatened on the basis of her leave or disability cannot be proven. Plaintiff also testified that she is unaware of Defendant disclosing her disability to anyone without a business need to know of it, so her assertion that Defendant publicized her disability is without merit.

In addition, an employee can only be discriminated against when the decisionmaker has actual knowledge of the disability. *Cordoba v Dillard's Inc.*, 419 F.3d 1169, 1185 (11th Cir. 2005). Plaintiff points to or presents no evidence that any

---

[3] To the extent Plaintiff's claim is based on not being provided short-term disability benefits from the initial ineligibility determination until the time the determination was reversed, Defendant has presented a legitimate, nondiscriminatory, and nonretaliatory reason for its conduct. It is Defendant's policy that if it is determined the employee is ineligible for benefits, short term disability benefits will not continue unless and until the employee successfully appeals the determination. Defendant cased the benefits at issue because it received an ineligibility determination from Lincoln, and it recommenced benefits (with retroactive pay) after Lincoln changed its determination. Plaintiff has not presented any record evidence to show that this legitimate, nondiscriminatory reason is pretextual.

decisionmaker, when viewing any alleged act at issue, had knowledge of any particular disability that Plaintiff may have had.

For these reasons, Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim in Count IV.

Failure to Promote

To establish a prima facie failure-to-promote claim, Plaintiff must show that (1) she is a member of a protected group; (2) she was qualified for and applied for the promotion; (3) she was rejected in spite of her qualifications; and (4) the person who was selected for the promotion was outside the protected class. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). Defendant may then articulate a legitimate, nondiscriminatory reason for the promotion decision, and if it does, Plaintiff must show that Defendant's reasons were pretextual. *See id.*

Plaintiff's failure to promote claim is based on her desire to move to a territory manager role in 2021.[4] Defendant argues that Plaintiff was not qualified for the territory manager role in 2021 because she had received a warning letter with an issue date in the last six months for conduct that Plaintiff admits occurred, which made Plaintiff ineligible for the promotion. Defendant presents a second legitimate, nondiscriminatory reason for not promoting Plaintiff to territory manager – Defendant indicates that Plaintiff was not believed to have consistently demonstrated strong competencies as a potential territory manager. In addition, in the context of her disability discrimination claim, Plaintiff does not and cannot identify a nondisabled individual chosen for a territory manager role.

---

[4] Any other promotion is outside the scope of the EEOC charge.

By failing to respond, Plaintiff has failed to create any issue of fact or otherwise rebut these reasons as pretextual. Consequently, Defendant is entitled to summary judgment on this claim.

Retaliation

To establish a prima facie case of retaliation, Plaintiff must show (1) she engaged in protected activity, (2) she was subjected to an adverse action, and (3) a causal link between the protected activity and the adverse action. *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004). Plaintiff ultimately bears the burden of showing that retaliation was a but-for cause of an adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). The required adverse action, "unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 64 (2006). However, the action must be "materially adverse," that is, it must cause "significant harm" such that a reasonable employee would be dissuaded from engaging in the protected activity. *See White*, 548 U.S. at 68; *Muldrow*, 601 U.S. at 357 (quoting and citing *White*).

Plaintiff's retaliation claim is based on a protected activity of taking short-term disability leave in April 2021. Plaintiff relies largely upon the same allegations as those in her disparate treatment claim, and for the same reasons the record fails to show an adverse action for discrimination purposes, it fails to show a "materially adverse action" that would support a retaliation claim. None of the alleged actions caused significant harm to Plaintiff or would have dissuaded a reasonable employee from pursuing or engaging in protected activity. To the extent that any actions did

occur, there is no record evidence to show causation between Plaintiff's request for short-term disability leave and any specific adverse action. Additionally, as discussed above, Defendant has presented legitimate and nonretaliatory reasons for its decisions and actions related to Plaintiff's short-term disability leave, and Plaintiff has failed to rebut any of these reasons. Consequently, Defendant is entitled to summary judgment on this claim.

Hostile Work Environment Claim

To establish a hostile work environment claim, a plaintiff must show: "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability." *Miller v. Kentworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Defendant argues that Plaintiff has no evidence of harassment at all let alone harassment sufficiently severe or pervasive enough to sustain a hostile work environment claim. Plaintiff does not and cannot identify any comments that were discriminatory on the basis of her disability. Nor can she identify any conduct that was discriminatory apart from the handling of her short-term disability claim. Moreover, as the Court previously discussed, Defendant has presented a legitimate, nondiscriminatory reasons for its conduct, and Plaintiff has failed to rebut that reason or show it was pretextual. Although she has had the opportunity to do so, Plaintiff has

failed to point to any evidence that could establish a viable hostile work environment claim. Consequently, Defendant is entitled to summary judgment on this claim.

*Convincing Mosaic*

The Court reiterates that it has thoroughly reviewed the record and that the record reveals no circumstantial evidence forming a "convincing mosaic" from which a jury might infer discrimination. *See Lukie*, 2024 WL 4471109, at *8; *Lewis*, 934 F.3d at 1185. There is no evidence of suspicious events or statements or other information from which discriminatory intent might be inferred, no evidence of systematically better treatment of similarly situated employees, and no evidence that Defendant's proffered reasons for its actions were pretextual.

## Conclusion

Plaintiff has failed to and cannot establish any adverse employment actions, identify any viable comparators, or otherwise show that Defendant discriminated against her in any way. She does not point to *any* evidence of discrimination, let alone a convincing mosaic of evidence. Most, if not all, of Plaintiff's complaints amount to the sort of petty slights that are simply not actionable. Even as to any possible adverse actions, Plaintiff has not shown that Defendant's proffered reasons for the actions were false, or that the real reason for its conduct was discrimination. Based on the undisputed facts, and because no reasonable jury could conclude otherwise, Defendant is entitled to summary judgment on each of Plaintiff's claims.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendant's Motion for Summary Judgment" (Doc. 77) is **GRANTED**.

2. The Clerk is directed to enter summary judgment in favor of Defendant Takeda Pharmaceuticals America, Inc., and against Plaintiff Shannon Olson, on Counts I, IV, and V of the third amended complaint.

3. Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>29th</u> day of January, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE