# EXHIBIT A

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SHANNON OLSON,

      Plaintiff,

  v.

TAKEDA PHARMACEUTICALS
AMERICA, INC.,

      Defendant.

Case No: 8:23-CV-00590-TPB-CPT

## DECLARATION OF ANDREW M. MCKINLEY

I, Andrew M. McKinley, declare as follows:

1.

I am over the age of 18, and I am of competent mind to give this Declaration. The facts set out in this Declaration are based on my personal knowledge.

2.

I am counsel for Defendant Takeda Pharmaceuticals America, Inc. in connection with this action.

3.

Attached as Exhibit 1 is a true and correct copy of Takeda's position statement submitted to the Equal Employment Opportunity Commission ("EEOC") on February 21, 2022, as produced by the EEOC to Takeda's counsel on July 11, 2023, in response to a Freedom of Information Act ("FOIA") request concerning Shannon Olson's EEOC Charge No. 523-2022-00202.

4.

Attached as Exhibit 2 is a true and correct copy of an email chain between Plaintiff Shannon Olson and Pedro Hernandez of the EEOC in connection with Shannon Olson's EEOC Charge No. 523-2022-00202. This email chain includes Hernandez's April 26, 2022 email to Olson indicating that he was attaching Takeda's position statement for her convenience (after previously releasing it to her for review on February 22, 2022), as well as Olson's May 13, 2022 email request for an extension of the deadline to provide a rebuttal to the position statement. The email chain was produced by the EEOC to Takeda's counsel on July 11, 2023, in response to a FOIA request.

5.

Attached as Exhibit 3 is a true and accurate copy of the Activity Log produced by the EEOC to Takeda's counsel on July 11, 2023, in response to a FOIA request concerning Shannon Olson's EEOC Charge No. 523-2022-00202.


I declare under penalty of perjury that the foregoing is true and correct. Executed on April 14, 2025.


_Andrew McKinley_
Andrew McKinley

# EXHIBIT 1

 **Seyfarth**

**Seyfarth Shaw LLP**

1075 Peachtree Street, N.E.

Suite 2500

Atlanta, GA  30309-3958

**T** (404) 885-1500

**F** (404) 892-7056

jcalvert@seyfarth.com

T (404) 704-9626

www.seyfarth.com

February 21, 2022

**VIA EEOC PORTAL AND E-MAIL**

Pedro Hernandez
U.S. Equal Employment Opportunity Commission
Tampa Field Office
501 East Polk Street, Room 1000
Tampa, FL 33602
Pedro.Hernandez@eeoc.gov

**Re:  *Shannon M. Olson v. Takeda Pharmaceuticals NA*[1]**
**EEOC Charge No. 523-2022-00202**

Dear Mr. Hernandez:

This letter and the enclosed documents set forth the position statement of Respondent Takeda Pharmaceuticals USA, Inc. ("Takeda" or the "Company") in response to the Charge filed by Shannon Olson ("Charging Party").[2]

### NATURE OF THE CHARGE

Charging Party, a current Takeda employee, alleges that Takeda discriminated against her on the basis of her religion (not identified in the Charge), disability (not identified in the Charge), sex, age, and race, and retaliated against her when it denied her request for accommodation. Charging Party's claims are wholly without merit. Takeda carefully and respectfully considered Charging Party's request for a religious accommodation and subsequent

---

[1] Respondent's correct legal name is Takeda Pharmaceuticals USA, Inc.

[2] This position statement is submitted to assist the Commission in investigating the above-referenced charge so that the charge may be resolved as expeditiously as possible. This position statement and accompanying documents are confidential and should not be disclosed to individuals or entities outside the Commission without Takeda's prior written consent, except as required to the Charging Party or Charging Party's legal representative, or in response to a valid Freedom of Information Act request. Inclusion of information in this position statement does not constitute a waiver of any objection or privilege Takeda may have in response to future discovery or information requests, or to the introduction of evidence in this or any subsequent proceeding; nor does it constitute a waiver of any objection as to timeliness of the complaint or any other legal argument Takeda may assert in the future. Furthermore, this position statement, although believed to be true and correct in all respects, does not constitute an affidavit or admission, and is not intended to be used as evidence in any court or other proceedings. Takeda retains its right to present new, revised, or additional facts or arguments or to respond to any new issues or evidence that may arise.

79935749v.1



request for a disability accommodation (which has been granted). Charging Party's religious accommodation request was denied because engaging in in-person interactions, while unvaccinated, created an undue hardship. Thereafter, Charging Party requested a disability accommodation and requested remote work as part of that request. Takeda approved this and allowed Charging Party to continue working out of her home. Charging Party is currently being accommodated with remote work through at least May 16, 2022, and Takeda will continue to assess and consider future accommodations for Charging Party. Finally, Charging Party's allegations relating to age, sex, race, and retaliation are either untimely or substantively deficient. For all of these reasons, Charging Party's Charge should be dismissed in its entirety.

## FACTUAL BACKGROUND

**I.    Takeda's Business and Policies Against Discrimination.**

Takeda is a global biopharmaceutical leader committed to bringing "Better Health and a Brighter Future" to patients by translating science into highly-innovative medicines. The Company is committed to improving the quality of life for patients and to working with partners in health care in approximately 80 countries and regions.

Takeda is also committed to providing equal employment opportunities for its employees and maintaining a work environment free from any kind of discrimination, harassment and retaliation. To this end, the Company maintains an Equal Employment Opportunity/Non-Discrimination/Affirmative Action Policy ("EEO Policy") that prohibits all forms of discrimination, including on the basis of race, color, religion, sex, sexual orientation, gender identity, gender expression, national origin, age, disability, citizenship status, genetic information or characteristics, marital status, status as a Vietnam era, special disabled, or other protected veteran, and any other category protected under city, state or federal law. ***See* Exhibit A** (EEO Policy). The Company also maintains a policy prohibiting harassment and all forms of unprofessional and disrespectful conduct. ***See* Exhibit B** (Prohibition Against Harassment & Unprofessional/Disrespectful Conduct). Takeda further prohibits retaliation against any employee or individual for the good-faith reporting of discrimination or harassment. ***See* Exhibits A and B.**

Takeda is committed to providing reasonable accommodations for an employee's or prospective employee's sincerely held religious beliefs or practices, unless doing so would cause an undue hardship on the Company's business. In determining undue hardship, Takeda considers factors including business necessity, the safety and health of its employees, customers, and other third parties, financial costs and expenses, and resulting personnel issues. ***See* Exhibit C** (Religious Accommodation Policy).

Further, Takeda strictly prohibits discrimination against any employee based on the employee's disability status and is committed to providing reasonable accommodations and leaves of absence to individuals with disabilities in accordance with the ADA and applicable state and local laws. ***See* Exhibit D** (Employment and Accommodation of Persons with Disabilities). Takeda is also committed to engaging in the interactive process to help disabled employees who need reasonable accommodations. *Id.*



## II.    Takeda's COVID-19 Vaccination Policy.

As a biopharmaceutical company, Takeda is committed first and foremost to the health and safety of its patients, employees and customers, which include healthcare institutions and facilities. That priority has become increasingly important given the unprecedented challenges presented by the ongoing COVID-19 pandemic. Over the course of the pandemic, Takeda implemented various mitigation procedures for its workforce, including remote work where appropriate, and/or requiring masking, testing, maintaining social distance, and temperature checks. The vaccines that have now been developed and approved for use by the FDA are highly effective at preventing severe disease and death from COVID-19. *See, e.g., Delta Variant: What We Know About the Science*, Centers for Disease Control and Prevention (Aug. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html.[3]  At this point, the facts are clear: vaccination is the most effective way to reduce the spread of COVID-19 and protect Takeda's field employees, customers, and patients from contracting COVID-19 and from serious illness if infected with COVID-19.

To minimize the risk of transmission of the COVID-19 virus and maintain a safe and healthy workplace to safely serve its patients and customers, Takeda implemented a COVID-19 Vaccination Policy, pursuant to which vaccination is required for specific roles. **See Exhibit E** (COVID-19 Vaccination Policy). All field employees[4] were required to get vaccinated and submit proof of vaccination to Takeda by November 1, 2021. *See id.* In-person engagement with customers has always been and remains a core requirement and essential function of the field employee role at Takeda, and in such roles in the biopharmaceutical industry generally. In other words, these employees are hired specifically to work in the field, meeting face-to-face with healthcare professionals. Indeed, field roles were never intended to be remote positions and customers expect to meet in-person with field employees. In order to achieve sales goals and most effectively market Takeda's products to health care professionals, field employees understand and agree that a significant part of their job involves travel to in-person meetings. **See Exhibit F** (Job Description).

In addition, as the pandemic has progressed, Takeda has increasingly and consistently heard from customers and their respective healthcare institutions across the country that they now require or expect proof of vaccination before entering their healthcare facilities. To best

---

[3] *See also Omicron Variant: What You Need to Know*, Centers for Disease Control and Prevention (Dec. 20, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html  ("Current vaccines are expected to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant….With other variants, like Delta, vaccines have remained effective at preventing severe illness, hospitalizations, and death. The recent emergence of Omicron further emphasizes the importance of vaccination and boosters.").

[4] Employees in field positions work in or visit clinics, hospitals, medical practices or healthcare facilities and are required to interact in-person with customers in their designated workplaces. Medically vulnerable patients and other individuals are typically present in these customers' workplaces. In addition, some employees in field positions meet with patients, many of whom may have specific vulnerabilities and risks with respect to COVID-19.



serve the needs of Takeda's customers and in line with its customer engagement approach, Takeda decided to make vaccination a requirement of the job for field employees.

Takeda considers requests for exemption from this policy due to sincerely held religious beliefs or qualifying medical conditions, and provides reasonable accommodations, consistent with applicable law, absent undue hardship to the business and/or a direct safety threat to employees, customers, or others' health and safety.

Takeda's policy was developed in response to the pandemic, CDC, EEOC, and OSHA guidance, and scientific data. It is intended to help safeguard the health and well-being of Takeda's employees, customers and patients. Takeda will continue to revise its policies and procedures to most effectively protect its workforce and community against the ever-evolving threat of the pandemic, variations in the virus, and in light of advances in science and medicine.[5]

### III.    Charging Party's Request for Religious Accommodation.

Takeda has employed Charging Party for over twenty years. In her current role, and at all times relevant to her Charge, Charging Party is a Senior Sales Representative. As a Senior Sales Representative, Charging Party is responsible for utilizing "effective selling skills and product knowledge to influence targeted health care professionals to prescribe Takeda promoted products." **Exhibit F.** To execute these duties, she is expected to develop strong working relationships and meet regularly with physicians and healthcare organizations within her geographic responsibility who treat patients. *See id.* It is well-established and experience has shown that regular, in-person meetings with health care providers is essential to successful performance in this sales role.

On September 22, 2021, Charging Party submitted a request for accommodation to Takeda, requesting a religious exemption pursuant to Takeda's COVID-19 Vaccination Policy and requesting that she be permitted an accommodation of "Weekly Covid Testing, Masks, Social Distancing." *See* **Exhibit G** (Religious Accommodation Request Form). In her request, Charging Party stated that her request was based on her "own moral and spiritual conscience and deeply held religious belief to live God's word" and that the Bible teaches that the "body is a temple." *Id.* Charging Party therefore objected to the vaccine based on her beliefs that "prohibit the injection of foreign substances into [her]body as this would violate God's directive to keep the body/temple holy and free from impurities." *Id.* Further, Charging Party stated that her religion forbids her from receiving "vaccinations that use fetal tissue cells." *Id.*

Takeda asked Charging Party to provide additional information to learn more about how her religious views directly conflicted with the requirement that she be vaccinated against COVID-19. Charging Party voluntarily participated in a discussion with Employee Relations Christine Mealey ("Mealey") on September 28, 2021. During the interview, Charging Party stated that she had been a member of her church since 2013, but did not know her church's

---

[5] Before vaccinations against COVID-19 were available, like many biopharmaceutical companies, Takeda permitted its field employees to work remotely despite the fact that in-person meetings are an essential function of the job. However, now that vaccines are readily available, Takeda implemented its COVID-19 Vaccination Policy requiring field employees to be vaccinated unless a religious or medical exemption is approved.



stance on the COVID-19 vaccine. She likewise informed Mealey that the religious leaders of her church had not stated that she could not be vaccinated.

Mealey also conferred with Greg Couch ("Couch"), Regional Business Director, who conferred with Charging Party's manager and interim District Business Manager, Matt Hand ("Hand"), about the approximate amount of face-to-face interaction required for Charging Party's position. Hand relayed that between August-September 2021, Charging Party's job consisted of face-to-face meetings approximately 77% of the time, and that for October-December 2021, it was planned for 85% of all sales calls to be executed in person. Further, Hand reported that Charging Party was the only sales representative in her geographic area and thus there was an increased need for more in-person activity.

Based on Charging Party's interview and the information provided by Hand, Takeda determined that accommodating Charging Party's religious beliefs by exempting her from the vaccination mandate and allowing her to continue to perform her position, in which she had direct, in-person contact with individuals in hospitals, clinics, and doctors' offices (where patients who are medically vulnerable and who may or may not be vaccinated are present), would create an undue hardship for Takeda due to increased safety and liability risks. *See* **Exhibit H** (October 13, 2021 Denial of Request for Religious Accommodation). Charging Party did not request to work remotely as part of her request, but Takeda further noted that allowing Charging Party to work remotely when most healthcare professionals in her area were allowing face-to-face meetings would result in a territory in which Takeda's commercial efforts would not be maximized and might require personnel changes to enable such face-to-face interactions, which also would cause an undue hardship for Takeda. *Id.*

Accordingly, Takeda provided Charging Party with the opportunity to comply with its COVID-19 Vaccination Policy by becoming either fully or partially vaccinated by November 1, 2021.[6]

## IV.    Charging Party's Request for Disability Accommodation.

After Charging Party's Religious Accommodation Request was denied, on October 15, 2021, Charging Party submitted a Request for Accommodation Based on Disability. **Exhibit I.** Charging Party did not identify her disability on her request form but sought to be accommodated through "Weekly Covid Testing, Masks, Social Distancing." On October 22, 2021, Charging Party submitted her healthcare provider's response to Takeda's request for information relating to Charging Party's disability accommodation request. **Exhibit J.**

Employee Relations Partner, Heidi Miller, engaged Charging Party regarding her request and sought additional information from Charging Party on October 27, 2021. Charging Party expressed discomfort responding to the questions Miller posed to her. Miller therefore suggested that Takeda's occupational health nurse, Kristen Zablocki, speak directly to Charging

---

[6] Charging Party was informed that if she became partially vaccinated by November 1, 2021 (*i.e.*, she received the first of a two-shot series), she would remain employed with Takeda and could work with her manager to determine how to engage virtually after November 1 until such time as she became fully vaccinated and able to re-engage face-to-face in the field.

79935749v.1



stance on the COVID-19 vaccine. She likewise informed Mealey that the religious leaders of her church had not stated that she could not be vaccinated.

Mealey also conferred with Greg Couch ("Couch"), Regional Business Director, who conferred with Charging Party's manager and interim District Business Manager, Matt Hand ("Hand"), about the approximate amount of face-to-face interaction required for Charging Party's position. Hand relayed that between August-September 2021, Charging Party's job consisted of face-to-face meetings approximately 77% of the time, and that for October-December 2021, it was planned for 85% of all sales calls to be executed in person. Further, Hand reported that Charging Party was the only sales representative in her geographic area and thus there was an increased need for more in-person activity.

Based on Charging Party's interview and the information provided by Hand, Takeda determined that accommodating Charging Party's religious beliefs by exempting her from the vaccination mandate and allowing her to continue to perform her position, in which she had direct, in-person contact with individuals in hospitals, clinics, and doctors' offices (where patients who are medically vulnerable and who may or may not be vaccinated are present), would create an undue hardship for Takeda due to increased safety and liability risks. *See* **Exhibit H** (October 13, 2021 Denial of Request for Religious Accommodation). Charging Party did not request to work remotely as part of her request, but Takeda further noted that allowing Charging Party to work remotely when most healthcare professionals in her area were allowing face-to-face meetings would result in a territory in which Takeda's commercial efforts would not be maximized and might require personnel changes to enable such face-to-face interactions, which also would cause an undue hardship for Takeda. *Id.*

Accordingly, Takeda provided Charging Party with the opportunity to comply with its COVID-19 Vaccination Policy by becoming either fully or partially vaccinated by November 1, 2021.[6]

## IV.    Charging Party's Request for Disability Accommodation.

After Charging Party's Religious Accommodation Request was denied, on October 15, 2021, Charging Party submitted a Request for Accommodation Based on Disability. **Exhibit I.** Charging Party did not identify her disability on her request form but sought to be accommodated through "Weekly Covid Testing, Masks, Social Distancing." On October 22, 2021, Charging Party submitted her healthcare provider's response to Takeda's request for information relating to Charging Party's disability accommodation request. **Exhibit J.**

Employee Relations Partner, Heidi Miller, engaged Charging Party regarding her request and sought additional information from Charging Party on October 27, 2021. Charging Party expressed discomfort responding to the questions Miller posed to her. Miller therefore suggested that Takeda's occupational health nurse, Kristen Zablocki, speak directly to Charging

---

[6] Charging Party was informed that if she became partially vaccinated by November 1, 2021 (*i.e.*, she received the first of a two-shot series), she would remain employed with Takeda and could work with her manager to determine how to engage virtually after November 1 until such time as she became fully vaccinated and able to re-engage face-to-face in the field.



Party's healthcare provider to obtain more information about her request. Charging Party agreed with this approach.

Thereafter, Zablocki interacted with Charging Party's healthcare provider in late October and early November, wherein the provider disclosed that Charging Party has an autoimmune disease. The healthcare provider reported her decision to postpone recommendation of the COVID-19 vaccine for Charging Party out of extreme caution given the unknown aspects of Charging Party's health versus the vaccine. The provider stated she would be willing to reevaluate her decision in six months. The provider further stated that during the six months, she would like to see data to support the safety of the COVID-19 vaccine in patients with autoimmune diseases and weakened immune responses before being in a position to recommend that Charging Party receive the vaccine.

On November 11, Takeda initially denied Charging Party's request for undue hardship given the in-person requirements of Charging Party's sales' role.[7] *See* **Exhibit K**, pp. 8-9 of 9. Thereafter, on November 12, 2021, Charging Party requested remote work as an accommodation. *Id.*, p. 6 of 9. Takeda evaluated Charging's new accommodation request for remote work and on November 16 notified Charging Party that Takeda was approving her request and granting a temporary three-month exemption from Takeda's vaccine mandate (through mid-February 2022). *Id.*, pp. 2-6 of 9. Since then, Charging Party's vaccine mandate exemption/accommodation has been extended through at least May 16, 2022. *See* **Exhibit L**. Charging Party continues to work remotely out of her home and does not conduct in-person meetings.

## V.      Charging Party's Charge of Sex, Age, and Race Discrimination

Charging Party alleges in her Charge that she has suffered sex, age, and race discrimination on the belief that a younger, male, African American sales representative, Jordan Davis, was treated more favorably than her in 2020 and early 2021.[8] Specifically, Charging Party alleges that Davis was permitted to work a second job without undergoing the same scrutiny that Charging Party faced regarding outside employment. Charging Party likewise alleges that Davis was underperforming and that Charging Party was required to share some of

---

[7] Takeda does not waive any argument that Charging Party is not disabled under the ADA and not a qualified individual under the ADA.

[8] Charging Party includes complaints regarding her July 20, 2021 performance review and an August 20, 2021 warning letter she received for violation of company policy regarding COVID-19 testing. It is unclear what claims Charging Party seeks to support with these facts. However, to the extent Charging Party submits them to support her claims of race, sex, and age discrimination on the belief that Davis was treated more favorably than her, they do not. Davis was terminated on July 6, 2021. Charging Party proceeds, however, to describe her discussion with the HR department regarding these complaints and complains that the HR department "did nothing." However, the complaints Charging Party describes are not actionable. It is standard Takeda practice for a manager to complete a performance review while an employee is out on leave (referencing performance for the time they worked during the fiscal year), and have the review discussed with the employee once they return to work. Finally, Charging Party received a written warning because she attended an in-person meeting with her manager, but did not get tested for COVID-19 prior to the meeting (despite being aware of the requirements for testing prior to in-person meetings). Accordingly, Charging Party violated Takeda's Code of Conduct and subsequently received a letter relating to the same.



her "engagements" with Davis in 2020 so he might increase his sales numbers. Finally, Charging Party alleges that in February 2021 Takeda "continued to place demands on [her] that were not placed" on Davis.

Charging Party's allegations are without merit. First, Davis was a sales representative (*see* **Exhibit M** (offer letter)), whereas Charging Party is a <u>senior</u> sales representative. While both in sales roles, Charging Party and Davis were not similarly situated employees. Charging Party's role comes with additional responsibilities on top of the sales representative role, including at least:

- Assist District Manager as needed with facilitating district meetings while modeling appropriate behavior in trying circumstances, proactively communicate strategies and model business techniques that maximize sales opportunities across the district. Share developmental experiences and encourage others to do the same.

- Assist District Manager to address district needs and provide training/mentoring of new sales representatives.

**Exhibit F.**

Second, to the extent Charging Party was treated differently than Davis, such differing treatment was based on legitimate, non-discriminatory business-related reasons. By way of background, Charging Party submitted a proposal relating to her outside business activities to Takeda marketing personnel on October 8, 2020. Takeda personnel were alarmed because Charging Party had not previously disclosed any outside business activity pursuant to Company policy. Because of this, Takeda questioned Charging Party regarding her outside business activities and sent her forms to complete on October 14, 2020. Thereafter, Takeda requested additional information from Charging Party to better understand her business, which Charging Party provided. Ultimately, Takeda approved Charging Party's outside business activity and Charging Party signed an approval agreement relating to the same on November 17, 2020. **Exhibit N.**

Davis, on the other hand, had submitted proper paperwork for his outside employment as a basketball coach and subsequently received approval for the same on September 25, 2020, well before Charging Party initially approached Takeda about her business. **Exhibit O.** Any extra questioning Charging Party may have received relating to her outside employment was a direct result of her failure to comply with Company policy regarding reporting her outside business activity. In any event, Takeda approved Charging Party's outside business activities, so Davis was not treated more favorably than her.

Finally, Davis was under a performance improvement plan in February 2021 and was terminated on July 6, 2021, whereas Charging Party was not under a performance improvement plan and is still employed.

LEGAL ARGUMENT

As noted, Takeda is committed to providing equal employment opportunities for its employees and maintaining a work environment free from any kind of discrimination, harassment and retaliation. Further, Takeda respects the religious beliefs and practices of all of its employees, as well as works to lawfully accommodate employee disabilities. Takeda



therefore undertakes a careful and individual review of each request for exemption from its COVID-19 Vaccination Policy. Here, Charging Party's religious and disability discrimination claims are without merit. Similarly, Charging Party's age, race, sex, and retaliation claims are without merit. Accordingly, this Charge should be dismissed in its entirety.

## I.    Charging Party's Religious Discrimination Claim Fails as a Matter of Law.

Takeda's COVID-19 Vaccination Policy is consistent with federal and state laws and guidance. The U.S. Supreme Court has long recognized the legitimacy of mandatory vaccination rules. "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944) (internal citations omitted). The EEOC itself, along with OSHA – the two agencies with jurisdiction over employer vaccination requirements – have both authorized mandatory vaccination programs like Takeda's. *See, e.g.*, WHAT YOU SHOULD KNOW ABOUT COVID-19 AND THE ADA, THE REHABILITATION ACT, AND OTHER EEO LAWS, available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ("COVID-19 Vaccinations: EEO Overview" (updated 10/28/21)), confirming federal equal employment statutes do not prevent an employer from requiring a COVID-19 vaccination for all employees who physically enter the workplace, subject to the reasonable accommodation provisions of the ADA and Title VII.

### A.    Charging Party Cannot Establish a *Prima Facie* Case of Religious Discrimination Based on a Failure to Accommodate.

Title VII's prohibition against employment discrimination based on religion includes a right for job applicants and employees to request a reasonable accommodation from an employer requirement that conflicts with their sincerely held religious beliefs, practices, or observances. However, if an employer cannot reasonably accommodate an employee's religious beliefs, practices, or observances without undue hardship on its operations, the employer is not required to grant the accommodation. *See* COVID-19 VACCINATIONS: EEO OVERVIEW, at § L.

To establish a *prima facie* case of religious discrimination based on a failure to accommodate, Charging Party must show that (1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement. If Charging Party is able to establish a *prima facie* case, the burden shifts to the employer to show that it could not reasonably accommodate Charging Party's religious belief or practice without undue hardship.

### B.    Charging Party Has Not Been Disciplined For Failure to Comply

Charging Party has not complied with Takeda's vaccine mandate. However, she has not been disciplined for this failure. As described more fully below, Takeda has accommodated Charging Party's ADA-based vaccine exemption request. Accordingly, she has not suffered any discipline and cannot demonstrate a *prima facie* case for religious discrimination.

79935749v.1



**C.      Charging Party's Preferred Accommodation Would Create an Undue Hardship.**

Even assuming Charging Party could establish a *prima facie* case (and she cannot), her claim still fails as Charging Party's preferred accommodation – allowing Charging Party to work unvaccinated and continue to have in-person meetings with customers – would create an undue hardship for Takeda.

It is well-established that any accommodation that imposes more than a *de minimis* burden on the employer is an undue hardship under Title VII.[9] In fact, in its Technical Assistance, the EEOC advised that costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business – including the risk of the spread of COVID-19 to other employees or to the public. The EEOC reiterated that courts have found undue hardship based on a religious accommodation request where the religious accommodation would impair workplace safety. *See* COVID-19 Vaccinations: EEO Overview, at § L.3. The EEOC further recognized that, in assessing undue hardship, common and relevant considerations during the COVID-19 pandemic include, for example, whether the requesting employee works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public (especially medically vulnerable individuals). *Id.*

Charging Party's sales position typically requires her to be in the field. That is, her essential job functions involve direct contact with individuals in physician offices, clinics, and other healthcare facilities. Because of the nature of these healthcare facilities, field employees will also be in contact not only with the customer, but also with patients, who may be contagious and/or particularly vulnerable to COVID-19. Charging Party's manager confirmed that Charging Party's job consists of face-to-face meetings over 75% of the time even with COVID-19 present. In addition, because many customers in Charging Party's territory are requiring face-to-face meetings, the inability to have in-person meetings affects Takeda's business. Thus, Takeda is not obligated to either exempt Charging Party from working in-person or allow Charging Party to perform her job while she remains unvaccinated.

Moreover, reliance on alternative accommodations such as masking, social distancing, and/or a testing regime would impose responsibilities on Takeda that far exceed a *de minimis* burden. The difficulty in enforcing correct and constant mitigation efforts by field employees, and the mixed and inferior effectiveness of those efforts at reducing transmission of the virus, makes them an insufficient substitute for vaccination and creates safety risks to field employees and Takeda's customers and patients. This is especially so where Takeda cannot control or enforce mitigation efforts by customers (and patients) with whom field employees are in direct contact, putting unvaccinated field employees at a constant risk of exposure to COVID-19 and customers (and patients) at constant risk of transmission by the field employee. Allowing field

---

[9] The EEOC's Technical Assistance Questions and Answers defines "undue hardship" under Title VII as an accommodation that would impose "more than a minimal cost or burden on the employer." *See* WHAT YOU SHOULD KNOW ABOUT COVID-19 AND THE ADA, THE REHABILITATION ACT, AND OTHER EEO LAWS at § K.12, available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ("This is an easier standard for employers to meet than the ADA's undue hardship standard.").



employees to go unvaccinated would pose a direct threat to the health and safety of others and to the unvaccinated employee, and these safety risks in turn create additional liability risks to Takeda, the combination of which amount to substantially more than a *de minimis* burden or cost. *See, e.g., E.E.O.C. v. Oak-Rite Mfg. Corp.*, No. 99-cv-1962-DFH, 2001 WL 1168156 at *10 (S.D. Ind. Aug. 27, 2001) (Undue hardship exists if the proposed accommodation would "either cause or increase safety risks or the risk of legal liability for the employer."); *see also Robinson v. Children's Hosp. Bos.*, No. CV 14-10263-DJC, 2016 WL 1337255 at *9 (D. Mass. Apr. 5, 2016) (granting employer's motion for summary judgment and holding termination of health care worker who refused mandatory vaccine, holding that allowing worker to continue working while unvaccinated imposed an undue burden).

For all of these reasons, Charging Party's religious discrimination claim fails and should be dismissed.

## II. Charging Party's Disability Discrimination Claim Fails as a Matter of Law.

Similarly, under the ADA, an employer may require an individual with a disability to meet a qualification standard applied to all employees, such as a safety-related standard requiring a COVID-19 vaccination, if the standard is job-related and consistent with business necessity. If a particular employees cannot meet such a safety-related qualification standard because of a disability, the employer may not require compliance for that employee unless it can demonstrate that the individual would pose a "direct threat" to the health or safety of the employee or others in the workplace. An employee with a disability who does not get vaccinated for COVID-19 because of a disability must let the employer know that he/she needs an exemption from the requirement, known as a reasonable accommodation. *See* COVID-19 VACCINATIONS: EEO OVERVIEW at §§ K.5-K.6.

To establish a *prima facie* case of disability discrimination based on a failure to accommodate, Charging Party must show that (1) she was disabled within the meaning of the ADA; (2) she was a qualified individual; and (3) Takeda, despite knowing of Charging Party's disability, did not reasonably accommodate it. Even assuming Charging Party could prove she is disabled under the ADA and a qualified individual (and she cannot), her claim fails because Takeda granted a reasonable accommodation to Charging Party by allowing her to work remotely (and remain exempt from its COVID-19 Vaccination Policy).[10] Takeda further extended Charging Party's reasonable accommodation for three months, up through May 16, 2022, and will continue to assess and consider future accommodations. Thus, at all times, Takeda engaged in the interactive process with Charging Party and complied with its obligations under the ADA.

For all of these reasons, Charging Party's disability discrimination claim fails and should be dismissed.

---

[10] Since Charging Party's accommodation request was granted, her disability discrimination claim is now moot.



### III.    Charging Party's Retaliation Claim Fails as a Matter of Law

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must prove (1) she was engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) a causal link existed between the protected activity and the adverse employment action. *See, e.g., Furcron v. Mail Ctrs. Plus, LLC,* 843 F.3d 1295, 1310 (11th Cir. 2016) (citation omitted).

Charging Party alleges that she has been retaliated against "for requesting an accommodation." She does not specify if she is referring to her request for religious accommodation or disability accommodation. Regardless, Charging Party has not alleged or suffered any adverse employment action (*see* further discussion below in Section IV.B.)

Charging Party is currently employed with Takeda and has received a disability accommodation through Takeda's approval of her for remote work request. Charging Party's retaliation claim therefore fails as a matter of law.

Even if Charging Party could show an adverse employment action, Charging Party has not alleged any facts linking her request for an accommodation to such unnamed adverse employment action. For this additional reason, Charging Party's retaliation claim fails as a matter of law.

### IV.    Charging Party's Race, Sex, and Age Discrimination Claims Fail as a Matter of Law.[11]

#### A.    Charging Party's Claims are Untimely.

Before filing a private civil action under Title VII, Charging Party must satisfy certain statutory prerequisites. Individuals in Florida have 300 days to file a charge of discrimination with the EEOC. *See* https://www.eeoc.gov/field-office/tampa/timeliness; 42 U.S.C. § 2000e–5(e)(1). Accordingly, only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 101 (2002); *E.E.O.C. v. Joe's Stone Crabs, Inc.,* 296 F.3d 1265, 1271 (11th Cir. 2002). Charging Party's complaints of race, sex, and age discrimination are untimely.

As explained in detail above, Charging Party's complaints about her own and Davis' outside business activity stem from activity in 2020. Charging Party's complaint about Davis receiving some of her engagements is from 2020 as well. Charging Party did not file her complaint until December 22, 2021, well after the 300-day deadline. Finally, Charging Party alleges without any specificity that Davis continued to underperform in February 2021 and that demands were placed on her that were not placed on Davis, but does not otherwise tie her

---

[11] Charging Party's Charge includes a generic reference to the creation of a "hostile work environment" but otherwise asserts disparate treatment discrimination. Charging Party does not include allegations of harassment based on her race, sex, or age, let alone harassment that was so severe or pervasive as to alter the terms of her employment and create a discriminatorily abusive working environment. To the extent Charging Party seeks to amend her Charge or otherwise make a claim of hostile work environment, Takeda denies such claim and reserves all rights to supplement this position statement as necessary to respond to such claim.



allegations to any specific date, instead alleging generically that he was treated more favorably than her. For this additional reason, Charging Party's complaints are untimely and insufficient.

### B.    Charging Party's Claims Fail as a Matter of Law.

In order to establish a discriminatory workplace treatment claim, Charging Party must show that (i) she is a member of a protected class, (ii) Takeda took an adverse employment action against her, (iii) she was performing at a level that met Takeda's expectations at the time that Takeda took such an action, and (iv) Takeda treated similarly situated employees outside of her protected class differently. *See Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 (11th Cir. 2006); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). Here, Charging Party's disparate treatment claim fails because (a) the Company did not take any adverse employment action against her, and (b) Charging Party cannot point to any similarly situated employees who were treated more favorably than her.

First, Charging Party has not been subjected to any adverse employment action. Charging Party's disparate treatment claims fail because none of her complained of behavior rises to the level of an actionable adverse employment action. Adverse employment actions are limited to "an ultimate employment decision, such as discharge or failure to hire" and other conduct with "a serious and material change in the terms, conditions, or privileges of employment." *See Minnifield v. City of Birmingham Dep't of Police*, 791 Fed. App'x 86, 90 (11th Cir. 2019). Importantly, adverse employment actions do not include workplace criticisms, formal warnings, and additional workplace tasks -- the very actions forming the basis of Charging Party's claims. *See Redd v. United Parcel Serv., Inc.*, 615 Fed. App'x 598, 603–04 (11th Cir. 2015) (employee's performance improvement plan, even where it contained "corrective steps and goals" and required employee to perform "additional work and paper work and… work more hours in order to satisfy the [plan]," did not show "a serious and material change to the terms and conditions of [employee's] employment" such that court properly dismissed discrimination claim based on the plan."). As a result, Charging Party's claims are doomed. *Apodaca v. Sec'y of Dep't of Homeland Sec.*, 161 Fed. App'x 897, 900–01 (11th Cir. 2006) (employee's "performance evaluations" and increased job responsibilities did not impact employee's "job in a real and demonstrable way" such that employee "fail[ed] to establish a prima case of discrimination.").

Second, Charging Party cannot demonstrate that Davis was similarly situated to her or that he was treated more favorably than her. Charging Party is a Senior Sales Representative, whereas Davis was a Sales Representative. Charging Party had additional duties on top of those required of Davis. *See, e.g., Payne v. Goodyear Tire & Rubber Co.*, 760 Fed. App'x 803, 808 (11th Cir. 2019) (dismissing former employee's disparate treatment claim based on race in part because employee "could not identify a single similarly-situated comparator" with "similar unacceptable ratings in evaluations" who was treated more favorably).

Further, to the extent Charging Party was treated differently than Davis, such treatment was based on legitimate, non-discriminatory business-related reasons. For example, Charging Party was subjected to questioning regarding her outside employment because she never submitted proper paperwork to have it approved, whereas Davis had submitted proper paperwork and went through the proper channels to have his outside employment approved. Even Charging Party admits in her Charge that Davis held his outside position "with management's knowledge." (Regardless, Charging Party's outside business activities were



approved.) Additionally, Davis was under a performance improvement plan in 2021 and was terminated on July 6, 2021, whereas Charging Party was not under a performance improvement plan and is still employed. Davis was not treated more favorably than Charging Party.

For all of these reasons, Charging Party's race, sex, and age discrimination claims fail as a matter of law and should be dismissed.

### CONCLUSION

As demonstrated above, Charging Party's claims are without merit. Accordingly, the Company respectfully requests the Commission dismiss the Charge in its entirety.

Please note that, in this position statement, the Company has sought comprehensively to address the allegations contained in the Charge. However, to the extent the Company's position statement does not specifically respond to any particular allegation in the Charge, the Company hereby expressly denies such allegation.

Please contact me if you have any questions, require additional information, or if Charging Party raises any new allegations or presents additional evidence to which the Company has not had the opportunity to respond.

Very truly yours,

SEYFARTH SHAW LLP

/s/ Jenny Calvert

Jenny Calvert

Attachments

79935749v.1

# EXHIBIT A



US HR & Compliance Policies & Procedures

**EEO POLICY/NON-DISCRIMINATION/AFFIRMATIVE ACTION**

It is the policy of Takeda to provide equal employment opportunities to all employees and applicants for employment without regard to race, color, religion, sex, sexual orientation, gender identity, gender expression, national origin, age, disability, citizenship status, genetic information or characteristics, marital status, status as a Vietnam era, special disabled, or other protected veteran in accordance with applicable federal and state laws, and any other characteristic protected by law (collectively "protected categories").

In addition, Takeda strictly prohibits discrimination.  Discrimination is defined as treating a person or group differently based on a protected category in any aspect of employment. This includes decisions with respect to recruiting/hiring, compensation, assignments, transfers, promotions, discipline, terminations, training programs, benefits, or any other term and condition of employment.

***Violations of this policy will result in disciplinary action up to and including termination of employment. This is true whether or not the behavior was intended or is perceived to be discriminatory.***

**Affirmative Action**

Takeda has established written affirmative action plans (AAPs) prepared in conformity with Executive Order 11246, the Rehabilitation Act of 1973, and the Vietnam Era Veteran's Readjustment Assistance Act of 1974, and the implementing regulations of the Office of Federal Contract Compliance Programs (OFCCP).  These AAPs are designed to provide guidance to management with respect to Takeda's commitment to full implementation of its EEO/Affirmative Action Policy.  Takeda's official EEO policy statement, signed by the appropriate business leader, can be found on the MyTakeda portal here and on bulletin boards in common areas of your respective facility.

**Confidential:** The contents of this Manual are confidential and must not be distributed outside of Takeda

# EXHIBIT B



**PROHIBITION AGAINST HARASSMENT & UNPROFESSIONAL/DISRESPECTFUL CONDUCT**

Harassment is a type of discrimination defined as unwelcome conduct based on any protected category where: 1) enduring the offensive conduct becomes a condition of continued employment; or 2) the conduct is severe or pervasive, it creates a work environment that a reasonable person would consider intimidating, hostile, or abusive.

Takeda prohibits not only unlawful discrimination and harassment, but all forms of unprofessional and discourteous behavior.  Indeed, Takeda prides itself as a professional and congenial place to work. To that end, Takeda employees are required to treat each other and all of those with whom they come in contact in the performance of their job duties with courtesy, consideration and professionalism always. Insulting, disrespectful, derogatory or otherwise inappropriate remarks, jokes or other comments are violations of this policy and will not be tolerated. Employees must exercise good judgment to avoid engaging in conduct that may be perceived by others as disrespectful or otherwise inappropriate. All employees are responsible for promptly reporting any conduct of which they are aware that may violate this policy, in accordance with the reporting procedures outlined below.

While the below list is not exhaustive, it provides examples of harassment and other behaviors that violate this policy:

- Verbal: sexual innuendoes, racial or sexual epithets, insulting or derogatory slurs, inappropriate or insensitive jokes, sexual propositions, threats, suggestive or insulting sounds;

- Visual/Non-Verbal: insulting or derogatory statements, posters, cartoons, graffiti or drawings, suggestive objects or pictures, graphic commentaries, leering, obscene gestures;

- Physical: unwanted physical contact including touching, interference with any individual's normal work movement, or assault; and/or

- Retaliation: making or threatening reprisals because of an individual's negative response to harassment, report of harassment, or participation in a harassment investigation.

This policy applies to the actions of all Takeda employees regardless of title. It also applies to clients, vendors, contractors, visitors and others who encounter Takeda employees performing job duties.

Takeda recognizes that sometimes it can be difficult to know what behavior rises to the level of harassment. Comments, jokes or personal advances that an employee may perceive as innocent or funny may be offensive to a co-worker. Even innocent intentions do not excuse actions that are unwanted and that are reasonably perceived as threatening or offensive. Therefore, employees are expected always to act professionally, treating others with respect, and avoiding conduct that could be perceived by others as inappropriate.

**Confidential:** The contents of this Manual are confidential and must not be distributed outside of Takeda



**Sexual Harassment**

Sexual harassment is a specific type of unlawful workplace harassment that is prohibited by this policy irrespective of any or all parties' gender.  As it relates to sexual harassment specifically, Takeda prohibits:

- Unwelcome sexual advances
- Requests for sexual favors
- All other verbal or physical conduct of a sexual or otherwise offensive nature where:
  - Submission to such conduct is made either explicitly or implicitly a term or condition of employment;
  - Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; and or
  - Such conduct has the purpose or effect of unreasonably creating an intimidating, hostile or offensive working environment.

**Complaint Reporting and Investigation Procedures**

It is the responsibility of each member of management to create an atmosphere free of discrimination and harassment, sexual or otherwise.  In addition, it is the responsibility of each employee to respect the rights of co-workers, contractors, consultants, temporary workers, clients and customers or other visitors to our facilities.

If, through an employee's own observation or otherwise, he/she believes that he/she or any other individual is being or has been subjected to workplace discrimination, harassment or other behaviors in violation of Takeda policy by a fellow employee or third party, the employee must report it immediately to either a manager or to human resources.  If an employee prefers to report the behavior to a third party outside of Takeda, he/she may report it via the Ethics Line electronically at www.Takeda.ethicspoint.com or telephonically by calling 888-TAKEDA-0 (888-825-3320) Do not allow an inappropriate situation to continue by not reporting it, regardless of who is creating that situation.

No Takeda employee is exempt from this policy. Failure to report a violation of this policy may result in disciplinary action, up to and including termination of employment.

Takeda will take prompt investigative action and implement appropriate corrective and preventative measures in response to inappropriate behavior that comes to its attention. Takeda will endeavor to maintain the confidentiality of any complaint and investigation to the extent it is feasible. However, Takeda retains the right to inform persons it deems to have a need to know and to utilize information obtained during the investigation for legitimate business purposes.

As soon as practical after the investigation concludes, Takeda will determine whether this policy has been violated. An employee who engages in objectionable or other conduct in violation of this policy will be subject to disciplinary action up to and including termination of employment.

**Confidential:** The contents of this Manual are confidential and must not be distributed outside of Takeda



US HR & Compliance Policies & Procedures

**Non-Retaliation**

Takeda wants employees to report potential violations of this policy without fear of retribution. Any retaliation against any employee or individual for the good-faith reporting of discrimination or harassment, or for participating in any investigation, will not be tolerated and should be reported immediately using the reporting procedure described above. Any employee who engages in any form of retaliation because of a complaint made or participation in an investigation under this policy will be subject to appropriate disciplinary action up to and including termination of employment.

**Your Responsibilities**
- ✓ Consider your actions. Are you doing or saying things that are or could be considered a violation of this policy? If so, cease the behavior immediately.
- ✓ If you are a witness to or have been subjected to behavior that you believe violates this policy, firmly and promptly notify the offender that his/her behavior is inappropriate and unwelcome, and politely request that the behavior immediately cease. Takeda recognizes that it may be difficult to initiate such a confrontation. If informal, direct communication is either ineffective or overly difficult, then report the incident immediately in accordance with the procedure outlined in this policy.
- ✓ Learn what harassment is and recognize its seriousness.
- ✓ Recognize and support Takeda's commitment to create and maintain an environment free of discrimination, harassment and other unprofessional and inappropriate conduct.
- ✓ Report all violations of this policy, whether directed at you or at another individual, in accordance with the procedure outlined in this policy. Do not retaliate against individuals who report violations of this policy or who participate in an investigation into alleged violations. Such retaliation is also a violation of this policy and will result in disciplinary action up to and including termination of employment. Report retaliation in accordance with the procedures outlined in this policy.

**Confidential:** The contents of this Manual are confidential and must not be distributed outside of Takeda

# EXHIBIT C



US HR & Compliance Policies & Procedures

**RELIGIOUS ACCOMMODATION**

Takeda respects the religious beliefs and practices of all employees and applicants.  An employee whose religious beliefs or practices conflicts with his/her job, work schedule, or with Takeda's policy or practice on dress and appearance, or with other aspects of employment and who seeks a religious accommodation must submit a written request for the accommodation to his/her manager and the Employee Resource Center for review and approval. Similarly, applicants should direct any accommodation requests to their assigned Takeda recruiter for review.

Takeda will evaluate the request, considering whether a work conflict exists due to a sincerely held religious belief or practice and whether an accommodation that is reasonable and would not create an undue hardship on Takeda's business exists. All accommodations requests will be kept as confidential as possible, and will be evaluated by an employee's manager and the Employee Resource Center on a case-by-case and ongoing basis, in accordance with applicable federal, state and local laws.

Time off for religious observances that are not scheduled as legal or Company holidays may be taken only if approved by the Employee Resources Center and the employee's manager after the employee gives both his/her manager and the Employee Resources Center (erc@takeda.com) at least two weeks' advance written notice.

At the employee's option only, unused vacation or a "Your Choice" holiday, if available, may be applied for an employee to be paid for an approved religious holiday absence. Otherwise, that time off will be unpaid.

**Confidential:** The contents of this Manual are confidential and must not be distributed outside of Takeda

# EXHIBIT D



US HR & Compliance Policies & Procedures

**EMPLOYMENT AND ACCOMMODATION OF PERSONS WITH DISABILITIES**

Takeda provides equal employment opportunities for qualified persons with disabilities, as defined by and in compliance with the Americans with Disabilities Act, the Rehabilitation Act and all other applicable federal, state and local laws. Takeda will attempt to make reasonable accommodations to employees and applicants with a qualified disability to enable them to apply for and to perform the essential functions of the jobs for which they are otherwise qualified.

An applicant who believes he/she may require an accommodation to perform the essential functions of a job must direct his/her accommodation request to the assigned Takeda recruiter. Employees requiring an accommodation should contact the Employee Resource Center for review and approval. Managers should not engage directly with an employee to discuss an accommodation request. Takeda will engage in a timely, interactive process with any applicant or employee to determine if there are effective, reasonable accommodations available, which would not result in an undue hardship to Takeda.

As permitted by law, Takeda may request specific medical documentation from an applicant or employee to substantiate that he/she is an otherwise qualified individual with a disability, as well as the need for an accommodation. All accommodations requests and any supporting documentation will be kept as confidential as possible, and will be evaluated on a case-by-case and an ongoing basis, in accordance with applicable federal, state and local laws.

When planning offsite meetings, business related social functions, and/or other business-related events, managers should avoid locations where barriers to accessibility exist.  Such barriers could include things such as:

- Lack of accessible/available parking, hotel shuttles, and public transportation;
- Lack of accessible entrances, interior doorways (i.e., adequate width, ramps, automatic door openers, etc.), corridors, aisles, etc.;
- Lack of accessible bathrooms, elevators, meeting rooms;
- Limited dining facilities and catering (including the ability to provide for dietary restrictions);
- Lack of quiet and private space for people who may require specific accommodations;
- Inability for qualified employees to use assistance animals.

**Confidential:** The contents of this Manual are confidential and must not be distributed outside of Takeda

# EXHIBIT E

| | |
|---|---|
| **From:** | USBU Communications <SMB.USBUCommunications@Takeda.com> |
| **Sent:** | Friday, September 10, 2021 12:33 PM |
| **Cc:** | USBU Communications |
| **Subject:** | COVID-19 Update: Important USBU Vaccination and Testing Requirements |

**To: All USBU Employees and Contractors**



September 10, 2021

**Dear Colleagues,**

As you saw in today's <u>announcement [s2.bl-1.com]</u> from the U.S. Crisis Management Committee (US CMC), office-based and lab-based employees must be vaccinated to interact in-person with other employees, contractors, customers and patients, whether at a Takeda site or off-site. This impacts many of our USBU office-based employees and contractors.

Similarly, across the country, we are increasingly and consistently hearing from customers, and their respective healthcare institutions, that they now require proof of vaccination before entering their healthcare facilities. Requests like this will likely continue to increase as the virus progresses, in an effort to help reduce the risk of infection and transmission.

As the COVID-19 landscape continues to ebb and flow, we revisit our ways of working according to what we learn, while always remaining grounded in our Takeda values of patient-trust-reputation-business and our guiding principles (1) to protect the health and well-being of employees, patients and customers, (2) to mitigate virus spread, and (3) to follow our customers' preferences and requirements. With this in mind, **Takeda is implementing the following requirements.**



**Vaccination is required for all field employees. What does this mean for you?**
- If you are a field employee in the U.S. who calls on customers or patients as part of your role, you must be fully vaccinated* by November 1, 2021.
- Unvaccinated field employees are encouraged to schedule vaccination immediately, noting the recommended timeline [s2.bl-1.com] for COVID-19 vaccines that require 2 shots.
  - Pfizer-BioNTech COVID-19 vaccine: 2nd shot 3 weeks (or 21 days) after first
  - Moderna COVID-19 vaccine: 2nd shot 4 weeks (or 28 days) after first
- If you are unable to get vaccinated due to medical or religious reasons, please complete the medical [s2.bl-1.com] or religious [s2.bl-1.com] accommodation forms as soon as possible.
- A process for documenting proof of vaccination will be shared no later than mid-October.

1

- Failing to show proof of vaccination or an approved HR accommodation by November 1st, will result in separation from the company.

*Full vaccination means ≥ 2 weeks after receiving the second dose in a 2-dose series, or ≥ 2 weeks after receiving a single-dose vaccine.*

Vaccination provides the most effective layer of protection against COVID-19 and its variants, yet it is possible that even fully vaccinated individuals can become infected and transmit the virus, particularly in geographies with high transmission rates. Face masks and testing provide important added layers of protection. The more layers of protection that we utilize, the greater our defense. Therefore, we've added back the layer of protection provided by testing.

 **COVID-19 testing required for business travel, off-site meetings, congresses and speaker programs\*\***

- Any USBU employee (customer-facing or office-based) who travels by plane or long-distance train (e.g. Acela) to meet with employees, customers, patients or other colleagues is required to have a negative COVID-19 PCR test result within 7 days prior to boarding the flight or train.
- Any USBU employee attending off-site Takeda meetings, congresses, and speaker programs is required to have a negative COVID-19 PCR test result within 7 days prior to attending the meeting.
- Office-based employees, please use Color Genomics COVID-19 testing. The on-site testing FAQ can be found here [s2.bl-1.com] and at-home testing FAQ can be found here [s2.bl-1.com]. Below are helpful links.
    - Color Genomics at-home testing link for Cambridge-based employees: https://www.color.com/takeda-cambridgesquares [s2.bl-1.com]
    - Color Genomics at-home testing link for Lexington-based employees: https://www.color.com/takeda-lexingtonrnd [s2.bl-1.com]
- Field-based employees please use LabCorp COVID-19 testing.
    - Click here [s2.bl-1.com] for the LabCorp at-home testing login and registration.

*\*\* Employees have 2 weeks from the date of this announcement to comply with this testing requirement.*

All other previously communicated guidance remains unchanged and in effect until further notice. For reference, click here [s2.bl-1.com] for a summary infographic of current guidance. Answers to frequently asked questions will be available on the USBU COVID-19 microsite [s2.bl-1.com] shortly.

Please join me, Ramona Sequeira and members of the ELT on **Tuesday, September 14th** for a **Fireside Chat and Q&A with USBU and US-based GPLS colleagues.** We'll talk about our new hybrid working approach and how we are continuing to adapt to the dynamic environment. A calendar invite with details will follow.

Thank you for your continued compliance and patience.

Steve Schaefer
SVP, Business Unit Lead, NSBU, and Chief Operating Officer, USBU
On behalf of the USBU COVID-19 Response Team

2

# EXHIBIT F



## Job Description / Role Profile

| Job/Position: | **Sr Sales Rep** | Job Code: | 50002593 |
|---|---|---|---|
| BU/Organization: | US Business Unit/ Neuroscience | Department: | Field Sales |
| Location: | | | |
| Global Reporting Level (CEO=1): | | Line Manager's Job/Position Title: | District Business Manager |

### OBJECTIVES/PURPOSE: *(3-4 bullets)*

The Takeda senior sales representative is responsible for selling the Takeda's family of products. This will be achieved through clinical discussions with targeted health professionals to maximize sales growth and increase product volume within a specific geography.

### SCOPE:

| | | |
|---|---|---|
| **Financial:** | Est. annual revenue range of accountability*: | _____Oku Yen |
| | Est. annual budget of responsibility: | _____Oku Yen |

**Leadership/People:**     No. of direct reports: _____     No. of indirect reports: _____

**Geographic Scope:**     Global:_____          Regional:__X__

Countries      United States of America _____

_____

*\*if applicable*

### ACCOUNTABILITIES: *(Describe the primary duties and responsibilities of the job. Include only the essential functions of the job. Approximately 5 – 10 bulleted task statements should be identified).*

- Utilizes effective selling skills and product knowledge to influence targeted health care professionals to prescribe Takeda promoted products. Execute brand strategies to ensure a consistent company sales and marketing message.

- Pre-call plan to meet health care professionals' (HCP) needs. Leverage data and customer knowledge to build discussions around HCP's and patients' needs. Deliver accurate and timely follow-up discussions with HCP's and office staff. Foster ongoing trust with HCPs. Use the Takeda Selling Model, to influence the HCP decision making process.

- Analyze territory information to optimize routing and achieve sales results. Monitor local market conditions for changes that impact business.

- Utilizes sales tools, resources and supporting analysis to plan activity. Develop and execute plans to maximize selling resources.

- Report and monitor sample and literature use, and maintain accurate records.

- Distribute product samples in accordance with approved sampling guidelines and marketing literature to physicians and other healthcare providers (HCP's).



## Job Description / Role Profile

- Actively monitors local market conditions for changes that impact business and takes action based on identified needs. Proactively execute plans to maximize selling resources. Models business techniques to peers that maximize sales opportunities across the district.

- Provide feedback to District Managers on market place trends, challenges, programs, response to promotion, and product access. Collaborate with DM to establish goals and implement plans to enhance current skill sets and sales results.

- Assist District Manager as needed with facilitating district meetings while modeling appropriate behavior in trying circumstances, proactively communicate strategies and model business techniques that maximize sales opportunities across the district. Share developmental experiences and encourage others to do the same.

- Assist District Manager to address district needs and and provide training/mentoring of new sales representatives.

- Collobrate with partners on routing and resource utilization to drive overall footprint performance.

- Attend all company-sponsored sales and medical meetings as directed by company management.

- Actively pursue continuous learning and professional development on efficient sales, communication & product knowledge training.

- Perform all Company business in accordance with all regulations, Company policy and procedures. Demonstrate high ethical and professional standards at all times.

- Additional duties may be assigned.

**CORE ELEMENTS RELATED TO THIS ROLE:** *(Describe what is critical and/or what differentiates this role).*

**DIMENSIONS AND ASPECTS:**

**Technical/Functional (Line) Expertise** *(Breadth and depth of knowledge, application and complexity of technical knowledge)*

**Leadership** *(Vision, strategy and business alignment, people management, communication, influencing others, managing change)*

**Decision-making and Autonomy** *(The capacity and authority to make organizational decisions, autonomy in decision-making, complexity of decisions, impact of decisions, problem-soliving)*

**Interaction** *(The span and nature of one's engagement with others when performing one's job, internal and external relationships)*



## Job Description / Role Profile

**Innovation** *(The required level of scientific knowledge, knowledge sharing, innovation and risk taking)*

**Complexity** *(Products managed, mix of businesses, internal and/or external business environment, cultural considerations)*

### EDUCATION, BEHAVIOURAL COMPETENCIES AND SKILLS: *(List the essential and desirable education and competency requirements to perform the primary responsibilities of the job.  Any minimum requirements should be noted.)*

**Required:**

- Bachelor's degree
- *Career Path Criteria:*
  - Two years minimum pharma sales, 1 year minimum Takeda sales
  - One "Exceeds Expectations" within most recent two years at Takeda
  - See  additional *Career Path* criteria

### ADDITIONAL INFORMATION: *(Add any information legally required for your country here*

TRAVEL REQUIREMENTS:

- Ability to drive to or fly to various meetings/client sites.
- Limited overnight travel may be required.
- Ability to attend sales meetings at off-site locations.

| Date: | Completed by: |
|---|---|
| | |

*For HR use only:*

| Legacy Organization: | |
|---|---|
| Legacy Level/Role: | |

Job Description/ Role Profile

# EXHIBIT G



## Religious Accommodation Request Form

Please return the completed form, along with supporting documentation, to US.ReligiousAccomm@takeda.com within 2 weeks.

### To be completed by employee

Name: Shannon Olson    Position: Senior Sales Representative

Date of request: September 22, 2021

Business/Function: NSBU/ Sales

Immediate supervisor: Greg Crouch

Describe fully the requested accommodation (e.g., scheduling changes, uniform accommodation, vaccination exemption, etc.):

Vaccination Exemption

Frequency and duration of the accommodation requested: Specifically for this COVID 19 Vaccine Mandate- Indefinately

Describe religious belief or practice that necessitates this request for accommodation:

Please refer to attached statement

Please provide documentation from your spiritual leader confirming your religious belief or practice including your membership in any such religion which necessitates the need for a reasonable accommodation.

Please provide alternative accommodations that might address your needs:

1. Weekly Covid Testing
2. Masks
3. Social Distancing

I have read and understand Takeda's policy on religious accommodation. My religious beliefs and practices which prompted this request for a religious accommodation are sincerely held. I understand that the accommodation requested above may not be granted but that Takeda will attempt to provide a reasonable accommodation that does not create an undue hardship on business operations. I understand that Takeda may need to obtain supporting documentation regarding my religious practice and beliefs to further evaluate my request for a religious accommodation and I agree to fully cooperate with any such requests. If there is a change in the need for this accommodation you agree to notify your Employee Relations or Human Resources Partner immediately.

Employee signature: _Shannon Olson_    Date: September 22, 2021

Upon final determination the employee will receive a letter approving or denying the accommodation request.

September 22, 2021

To Whom It May Concern:

Title VII of the Civil Rights Act protects employees and job applicants from employment discrimination based on race, color, religion, sex and national origin.

I am a Christian. According to the Bible, a Christian is somebody who has faith in God. Daily, I lean on my faith. Matthew 21:22 tells us, "And whatever you ask in prayer, you will receive, if you have faith." As a Christian, I pray and have faith in God. By listening and hearing him, he will lead me in the direction he wants me to go. Prayer and Gods guidance has kept me faithful to Takeda even when tempted by others and companies to leave. "Then you will call on me and come and pray to me, and I will listen to you" Jeremiah 29.

In 22 years, Takeda has never forced me to choose between my First Amendment Right to freedom of my religious beliefs and my employment with the organization. On September 10, 2021 Takeda has directed me to get vaccinated with a COVID-19 vaccine, or suffer adverse employment action, up to and including termination.

I cannot receive a COVID-19 vaccine because to do so would violate my sincerely held religious beliefs.

I hereby present my religious exemption from Takeda's mandated COVID19 vaccination(s). This request is based on my own moral and spiritual conscience and deeply help religious belief to live God's word.

The Old and New Testaments, references to keeping the body blemish- free so that we may have abundant life. The Bible teaches that we shall keep the blood pure and keep the seed from being mixed. In the Bible, blood is the life force of the human. Human blood is to be kept pure under all circumstances and free from contaminants like animal parts and blood (Genesis 9:4; Leviticus 17:10, 17:11, 17:14, Deuteronomy 12:23). "Do you know that your body is a temple of the Holy Spirit, who is in you, who you have received from God? You are not your own. That God is in you. That he is our healer." (1Corinthians 6:19)

All vaccines are made with foreign proteins (viruses and bacteria), and some vaccines are made with genetically engineered viral and bacterial materials. Some are made with toxic chemicals, and many vaccines are produced in animal tissues. All are injected into the bloodstream by vaccination.

I believe that we are created in God's image and will be protected from harm if we follow his word. When genetic materials from bacteria, viruses, yeast, animals, birds, and other humans are injected during vaccination, the blood gets contaminated, and genetic changes can occur. God warned not to do this. And God warned not to mix the blood of man with the blood of animals. To do so would violate these teachings of the Bible.

II Corinthians 7:1 "Let us purify ourselves from everything that contaminates body and spirit, perfecting holiness out of the reverence for God." My objection is based on my deeply held religious beliefs that prohibit the injection of foreign substances into my body as this would violate God's directive to keep the body/temple holy and free from impurities. I believe that I cannot willfully go against the law of God, and I fully put my trust in Him for my health.

Psalms 139:13-14 state, "For you created my inmost being, you knit me together in my mother's womb. I praise you because I am fearfully and wonderfully made; wonderful are your works; my soul knows it very well." My mother's deeply held religious beliefs that All life is sacred and Thou shalt not kill, prevented an abortion directive from her physician when ill and pregnant with me. My mother's beliefs prevented my death and stopped me from being killed, which she was told to do from her medical doctor.

I too believe all life is sacred and my personal religious beliefs hold abortion to be against the will of God. "Thou shalt not kill" scripture tells us in Exodus 20:13. All the COVID-19 vaccine products currently available in the U.S. under the FDAs EUA were produced using aborted fetal cell lines, tested using aborted fetal cell lines, or both. My religion forbids me to receive vaccinations that use fetal tissue cells, or cell lines; or that may alter my RNA, which governs the blueprint of the body that God gave me. As a Christian, I believe it is immoral for any institution to base, in whole or in part, an individual's access to employment (new or continuous) on receiving a medication derived from an abortion.

My personal religious beliefs include my obedience to God's law, and I believe that we are responsible before God for the life and safety of ourselves, created by God. We are made in the image and likeness of God (Genesis 1:26). Christians have a duty to honor and care for the body God has given us as a temple of the Holy Spirit (Romans 12:1, 1 Corinthians 3:16, 1 Corinthians 6:20, 1 Corinthians 10:31). Therefore, to force or coerce a person to administer a substance into their body against their will is a violation of their personhood and against my religious belief. I am willing to continue to properly follow and comply with Takeda policy regarding weekly Covid testing, wearing a mask or social distancing.

Acts 5:29 "We ought to obey God rather than men." As such and under Title VII, I am requesting a religious exemption from Takeda's COVID-19 vaccine policy based on my personal religious beliefs as it would violate my sincerely held spiritual beliefs. I further ask that no adverse employment action be taken against me on account of my religious beliefs.

Thank you,

Shannon Olson

Senior Sales Representative

Neuroscience Business Unit

Takeda Pharmaceuticals

## Island Chapel Member   Inbox

**Dr. Will McRaney** <wmcraney@theislandchapel.org>          9:07 PM (14 minutes ago)

to me, SCoffey@theislandchapel.org

To Whom It May Concern,

This is to acknowledge that Shannon Olson is and has been a Member of The Island Chapel since October 2013.

Will McRaney, PhD
Senior Pastor
The Island Chapel



# EXHIBIT H

| | |
|---|---|
| **From:** | Mealey, Christine |
| **Sent:** | Wednesday, October 13, 2021 3:21 PM |
| **To:** | Olson, Shannon |
| **Cc:** | Crouch, Greg |
| **Subject:** | Religious Accommodation Response - Shannon Olson |

Dear Shannon,

Thank you for submitting your request for religious exemption from the COVID-19 vaccination requirement.

Upon review of the information you provided, Takeda cannot accommodate any conflict between your asserted religious beliefs and the COVID-19 vaccination requirement.  Because your essential job functions require in-person attendance and involve direct contact with co-workers and patients who may be contagious and/or particularly vulnerable to COVID-19, your unvaccinated status creates elevated health and safety risks and presents an undue hardship for the company.  Furthermore, allowing you to work remotely when most health care providers in your area are allowing face-to-face meetings will create a territory in which our commercial efforts are not maximized and may require personnel changes in order to enable the face-to-face interactions that, over time, have been shown to lead to the highest level of commercial success. This, too, presents an undue hardship for Takeda under applicable law.  Therefore, your request for religious exemption from the COVID-19 vaccination requirement is denied.

As previously communicated, any U.S. field-based employees who do not report that they are fully vaccinated via the VaxDMS system by November 1, 2021 or who do not receive an approved exemption may be terminated. Since your request for accommodation has been denied, you will have the opportunity to comply with the policy by becoming partially vaccinated and recording this as directed in the VaxDMS system prior to November 1, 2021.  In such a case, your manager will work with you to determine how to engage virtually after November 1, until you become fully vaccinated and are able to re-engage face-to-face in the field.

Thank you for your understanding as we work together to stay safe during the pandemic.  We understand that becoming vaccinated is an important personal decision.  If you have any questions, please let me know.

Kind Regards,


*Christine Mealey*
Employee Relations Partner – GMSGQ
**Takeda Pharmaceutical Company Limited**
christine.mealey@takeda.com

1

# EXHIBIT I

## EMPLOYEE REQUEST FOR ACCOMMODATION BASED ON DISABILITY

*Please complete this form and return it via email at US.Occ.Health.ADA@takeda.com Please do not submit this form to your manager. Please note this form will not be placed in your personnel file but will be kept in a separate and secure confidential file. Contents of this request are confidential and will not be shared except as needed to consider any reasonable accommodation request.*

**ALL QUESTIONS TO BE COMPLETED BY EMPLOYEE/APPLICANT ONLY:**

Date: October 15, 2021

Name: Shannon Olson

Employee ID#: 50010355

Please explain which aspects of your employment responsibilities/duties are impacted by your condition.

What specific accommodation are you requesting (e.g., time off, additional equipment, etc.)? (Please submit Form B, completed by your medical provider, in support of your response to this question)

Weekly Covid Testing, Masks, Social Distancing

What other accommodations may be responsive to your request?

How long do you anticipate the need for an accommodation? If requesting time off, please provide an estimated return to work date.

I understand that my request for accommodation must be supported by medical documentation. I agree to provide that information as requested per the deadline required. I agree to fully cooperate with Human Resources in responding to my request. I understand I may not be provided with the specific accommodation that I have requested; however, I understand that good faith efforts will be made to consider my request.

**Employee Signature:** *Shannon Olson* **Date:** October 15, 2021

Please note, the Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title 11 from requesting or requiring genetic Information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services

Form A

**HEALTH CARE PROVIDERS INFORMATION**
**CONFIDENTIAL RECORDS STATEMENT**
AUTHORIZATION TO RELEASE MEDICAL RECORDS

**INSTRUCTIONS FOR EMPLOYEE:** Complete health care provider information and sign authorization release below. Make additional copies of this form for each of your health care providers, if you have more than one provider.

Sign and date all forms and return to:
US.Occ.Health.ADA@takeda.com

## HEALTH CARE PROVIDER INFORMATION

Attending Health Care Provider's Name: Stephanie Anderson

Address: 7855 38th Ave N Ste 200

City: St Petersburg        State: FL        Zip: 33710

Phone Number: ( 727)  480-0387        Fax Number: (   )

## AUTHORIZATION TO RELEASE MEDICAL RECORDS

I have requested an accommodation from Takeda, my employer, under The Americans with Disabilities Act (ADA) of 1990.

**I hereby authorize the ADA Coordinator for Takeda and Takeda's Occupational Health Lead**
**to communicate directly with the health care provider who completes this form, in order to obtain clarification of issues relating to the functional limitations for which I am seeking an accommodation.**

**A note about the Genetic Information Nondiscrimination Act of 2008 (GINA):**
**The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic information," as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.**

**This authorization will automatically end within one year from the date the employee signs this form.**

August 20, 2018 SC        1

US.Occ.Health.ADA@takeda.com

Employee's Signature: _____  Date: October 15, 2021

CONFIDENTIALITY NOTICE:  Medical-related information shall be kept confidential and maintained separate from other personnel records.  However, supervisors and managers may be advised of information necessary to the determinations they are required to make in connection with a request for an accommodation.  First aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment or if any specific procedures are needed in the case of fire or other evacuations.  Government officials investigating compliance with the ADA may also be provided relevant information as requested.

# EXHIBIT J



## REQUEST FOR MEDICAL STATUS EVALUATION
## UNDER THE ADA AMENDMENTS ACT (the "ADAAA")

Employee Requesting Accommodation:

Position/Title: Senior Sales Representative    Department:  NSBU/ Sales

Work Location:  St Petersburg, FL            Work Phone number:   727-641-1676

Immediate Supervisor:    Greg Crouch

The information below is treated confidentially, is not maintained in the employee's main personnel file, and will be used only by authorized individuals with a direct need to know and/or evaluate the information.  Please return this form, once completed, to: US.Occ.Health.ADA@takeda.com.

**Supervisors and managers may be advised of information necessary to make the determinations they are required to make in connection with a request for an accommodation.**

### INSTRUCTIONS FOR EMPLOYEE

**Please provide this form to your healthcare provider along with your attached job description and your signed authorization form.  Takeda will consider your request for accommodation upon receipt of your completed Medical Status Evaluation Form.  If you have any questions, please do not hesitate to call Occ Health or Employee Relations.  Thank you.**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

### THIS SECTION TO BE COMPLETED BY HEALTH CARE PROVIDER:

Health Care Provider:  Stephanie Anderson

Office Address:  7855 38th Ave N Ste 200 St Petersburg FL 33710

Office Phone Number:  727-480-0387

1.  Based on the job description, can the employee perform the essential functions of the position without an accommodation?

☐ **Yes**          ☐ **No**

*If no,* what essential job function(s) is the employee having trouble performing because of the impairment(s) (attach additional sheets of paper, if necessary)?
See Attachment

2.  Can the employee perform the essential functions of his/her position without being a direct threat to his or her own health and safety and/or the health and safety of others in the workplace?

☐ **Yes**          ☐ **No**



3.  *If no,* please explain the basis for your response; including objective medical or other factual evidence (attach additional sheets of paper, if necessary)?

_____

_____

**Questions to help determine effective accommodation options.**

4.  *Is there a reasonable accommodation* that would enable the employee to perform the essential functions of the job as described in the attached job description? (Please note that the employer retains the discretion to determine whether an accommodation is reasonable.)

    ☒ Yes          ☐ No

| Accommodation Being Requested: |
|---|
| Weekly Covid Testing, Masks, Social Distancing |
| |
| |

5.  How long do you estimate the accommodation(s) will be needed?  Please comment on the estimated duration of the recommended accommodation and the frequency of accommodation if it entails time away from the employee's job:

_____

_____

6.  If your proposed accommodation is a leave of absence, when will the employee be able to return to work?
    Shannon is able to work, I just do not want Shannon to receive any of the current vaccinations

| Reason for Accommodation (functional limitation(s) for which you seek an accommodation): |
|---|
| |
| See Attached Sheet |
| |
| |

7.  Please provide any further information you feel would be useful to the Company in evaluating the employee's situation but do not identify the employee's specific medical condition and do not provide the details of your diagnosis of the employee.

_____

_____

_____

_____

**SIGNATURE OF HEALTHCARE PROVIDER          DATE** 10/22/2021
(Please do not use signature stamp or designee signature)



**GULF COAST FAMILY WELLNESS**

Primary Care with a Personalized Touch

Response to Takeda's Request for Medical Status Evaluation Under the ADA Amendments Act (the "ADAAA") for Shannon Olson

1. Based on the job description, can Shannon perform the essential functions of the position without an accommodation?
   a. I cannot provide a yes or no answer as, I do not know how the current vaccines will interact with Shannon. There is not enough information for me to make that decision.

2. Can Shannon perform the essential functions of her position without being a direct threat to his or her own health and/or the safety of others in the workplace?
   a. I cannot provide a yes or no answer as, I do not know how the current vaccines will interact with Shannon. There is not enough information for me to make that decision.

3. If no, please explain the basis for your response, including objective medical or other factual evidence.
   a. Shannon Olson is not to receive any of the current COVID-19 vaccines. I am requesting Shannon Olson receive a medical exemption. As her medical provider, I state this for numerous reasons. Shannon has underlying autoimmune disease. When activated is detrimental to her health. She is also genetically predisposed to numerous other autoimmune diseases. As a child, she suffered with chronic ear infections. She was treated with antibiotics and had reactions including anaphylaxis reaction to amoxicillin.

4. Please provide any further information you feel would be useful to the Company in evaluating the employee's situation but do not identify the employees medical condition and do not provide the details of your diagnosis of the employee.

   a. As previously stated, as Shannon Olson's medical provider, at this time I do not want nor recommend Shannon Olson receive any of the current COVID-19 vaccines.

Stephanie Anderson, APRN
727-410-0387

# EXHIBIT K

1



**From:** Miller, Heidi
**Sent:** Monday, November 22, 2021 3:43 PM
**To:** Olson, Shannon <shannon.olson@takeda.com>
**Cc:** Thompson, Staci <staci.thompson@takeda.com>
**Subject:** RE: Accommodation Request Update
**Sensitivity:** Confidential

3 months from the November 16 date

[takeda.com]

[takeda.com]

1

*Heidi Miller*
Employee Relations Partner, People Advisory Group (PAG)
Corporate Functions, Vaccines, Oncology
**Takeda Pharmaceutical Company Limited**

████████████████

heidi.miller@takeda.com
www.takeda.com [takeda.com]

 [takeda.info]

---

**From:** Olson, Shannon <shannon.olson@takeda.com>
**Sent:** Monday, November 22, 2021 11:25 AM
**To:** Miller, Heidi <heidi.miller@takeda.com>
**Cc:** Thompson, Staci <staci.thompson@takeda.com>
**Subject:** RE: Accommodation Request Update
**Sensitivity:** Confidential

Thank you Heidi.  What is the end date?

Best Always,


Shannon Olson
Senior Sales Representative
Neuroscience Business Unit
Takeda Pharmaceuticals
727-641-1676



---

**From:** Miller, Heidi <heidi.miller@takeda.com>
**Sent:** Monday, November 22, 2021 11:14 AM
**To:** Olson, Shannon <shannon.olson@takeda.com>
**Cc:** Thompson, Staci <staci.thompson@takeda.com>
**Subject:** RE: Accommodation Request Update
**Sensitivity:** Confidential

Shannon –

2

November 16 is the date we will begin the 3 month period.  Hope this helps

Heidi


 [takeda.com]

**Better Health, Brighter Future** [takeda.com]

*Heidi Miller*
Employee Relations Partner, People Advisory Group (PAG)
Corporate Functions, Vaccines, Oncology
**Takeda Pharmaceutical Company Limited**

█████████████

heidi.miller@takeda.com
www.takeda.com [takeda.com]

[takeda.info]

---

**From:** Miller, Heidi <heidi.miller@takeda.com>
**Sent:** Friday, November 19, 2021 1:05 PM
**To:** Olson, Shannon <shannon.olson@takeda.com>
**Cc:** Thompson, Staci <staci.thompson@takeda.com>
**Subject:** Re: Accommodation Request Update
**Sensitivity:** Confidential

Shannon -
I will check on that date for you and get back to you on Monday
Have a nice weekend
Heidi

Sent from my iPhone


> On Nov 19, 2021, at 12:12 PM, Olson, Shannon <shannon.olson@takeda.com> wrote:
>
>
> Hi Heidi,
>
> I hope this email finds you and your family well.  Thank you for your email, as you can imagine, it has provided an enormous amount of mental and emotional relief for me and my family.  I am grateful and thankful for the temporary 3 month approved accommodation.
>
> My main question pertain to the start and end date(s) for the 3 months.  November 11 and Nov 12 I received denial emails.  November 16, I was informed of the denial change.  Am I correct to the 3

3

months begin on November 16 since that is when I was informed of the change? What is the end
date?  I appreciate your help and time spent.  Have a great weekend


Best Always,


Shannon Olson
Senior Sales Representative
Neuroscience Business Unit
Takeda Pharmaceuticals
727-641-1676
<image003.jpg>

---

**From:** Miller, Heidi <heidi.miller@takeda.com>
**Sent:** Friday, November 19, 2021 12:42 AM
**To:** Olson, Shannon <shannon.olson@takeda.com>
**Cc:** Hand, Matt <matt.hand@takeda.com>; Miller, Heidi <heidi.miller@takeda.com>
**Subject:** RE: Accommodation Request Update
**Sensitivity:** Confidential

Shannon,

Thank you for your email.

As we discussed, upon review of the information you provided, Takeda has temporary approved your
accommodation request relevant to the COVID-19 vaccination requirement.  You should continue to
perform your role virtually and  may not come to a Takeda site or interact face-to-face with colleagues
or anyone else on behalf of Takeda.

This accommodation will be reviewed in 3 months to determine whether the accommodation continues
to be reasonable and necessary.  As you are aware, the landscape for in-person interaction continues to
evolve as the course of the virus and all of the related laws, regulations, guidelines, recommendations,
etc. continue to evolve.  Please note that with or without approved accommodation employees are
expected to meet all expectations associated their position.  All other aspects of your position remain
unchanged, and you are expected to adhere to acceptable standards of performance as set forth by
Takeda and the department or If there is any change to your vaccination status, please note it in
the VaxDMS system.

Thank you for your understanding as we work together to stay safe during the pandemic.  We
understand that becoming vaccinated is an important personal decision.  If you have any questions,
please let me know.
Heidi


<image005.png> [takeda.com]

<image006.jpg> [takeda.com]

*Heidi Miller*
Employee Relations Partner, People Advisory Group (PAG)
Corporate Functions, Vaccines, Oncology

4

**Takeda Pharmaceutical Company Limited**

███████████████████

heidi.miller@takeda.com
www.takeda.com [takeda.com]


<image002.png> [takeda.info]


**From:** Olson, Shannon <shannon.olson@takeda.com>
**Sent:** Wednesday, November 17, 2021 6:46 PM
**To:** Miller, Heidi <heidi.miller@takeda.com>
**Subject:** Re: Accommodation Request Update
**Sensitivity:** Confidential

Hi Heidi

I hope this email finds you, your kids and mom well.

With regards to our conversation yesterday, do I need to do anything with the Vax system? Is there anything that else that I need to do or provide? I just want to make sure I am not missing an actionable item or anything that would jeopardize the 90 day extension granted.  Please let me know - thank you

Warmest Regards

Shannon Olson
Senior Sales Representative
Neuroscience Business Unit
Takeda pharmaceuticals
727-641-1676


On Nov 12, 2021, at 1:17 PM, Olson, Shannon <shannon.olson@takeda.com> wrote:


Hi Heidi

Ramona mentioned that there are remote positions available for those who are unvaccinated.  I have been a loyal employee for 22 years. I am a single mother to 3 and my paycheck is what supports myself and my children.  I am open and willing to change positions- what are those positions that Ramona mentioned?

Best Always,


Shannon Olson
Senior Sales Representative
Neuroscience Business Unit

5

Takeda Pharmaceuticals
727-641-1676
<image003.jpg>

---

**From:** Miller, Heidi <heidi.miller@takeda.com>
**Sent:** Thursday, November 11, 2021 11:59 AM
**To:** Olson, Shannon <shannon.olson@takeda.com>
**Cc:** Miller, Heidi <heidi.miller@takeda.com>
**Subject:** RE: Accommodation Request Update
**Importance:** High
**Sensitivity:** Confidential

*Hi Shannon,*

*Thank you for your e-mail. We understand that you may be unhappy and frustrated that your request for accommodation was denied. While Takeda will not discuss the specific details of an employee's accommodation request once a decision has been communicated, we hope to provide a bit of context that may be helpful to you.*

*From the point in which you submitted your accommodation request through to the date on which your decision was tendered, we engaged in a thorough, detailed and individualized interactive process with you in accordance with and guided by the statutory requirements of the Americans with Disabilities Act. Please know that this process was diligently performed in good faith, with the highest degree of objectivity and professionalism. During our assessment and as outlined in the correspondence sent to you on November 10, 2021, we concluded that your unvaccinated status would present an undue hardship for the company.*

*The unprecedented COVID-19 pandemic has impacted and, in some respects, disrupted the workplace in ways that most of us never even imagined. It has forced companies to make hard decisions about what it will require of their employees in order to protect the health and safety of the workforce and all of the people with whom employees come into contact in the course of performing their jobs. Takeda's leadership fully recognizes the difficult situation that the denial of an accommodation request creates for an employee. Please know that Takeda values you, and fully supports your right of absolute control over your medical decisions.*

Thank you,

Heidi

<image005.png> [takeda.com]

<image006.jpg> [takeda.com]

*Heidi Miller*
Employee Relations Partner, People Advisory Group (PAG)
Corporate Functions, Vaccines, Oncology
**Takeda Pharmaceutical Company Limited**
██████████████████
heidi.miller@takeda.com
www.takeda.com [takeda.com]

6

<image009.png> [takeda.info]

**From:** Olson, Shannon <shannon.olson@takeda.com>
**Sent:** Thursday, November 11, 2021 7:12 AM
**To:** Miller, Heidi <heidi.miller@takeda.com>
**Cc:** Olson, Shannon <shannon.olson@takeda.com>
**Subject:** Re: Accommodation Request Update
**Sensitivity:** Confidential

Hi Heidi

Why was my medical accommodation denied? What specifically was denied?

Warmest Regards

Shannon Olson
Senior Sales Representative
Neuroscience Business Unit
Takeda pharmaceuticals
727-641-1676

On Nov 10, 2021, at 10:16 PM, Miller, Heidi <heidi.miller@takeda.com> wrote:

Dear Shannon,

Thank you for submitting your request for disability-related exemption from the COVID-19 vaccination requirement.

Upon review of the information you provided, Takeda cannot approve your request. Because your essential job functions require in-person attendance and involve direct contact with co-workers and patients who may be contagious and/or particularly vulnerable to COVID-19, your unvaccinated status creates elevated health and safety risks and presents an undue hardship for the company. Furthermore, allowing you to work remotely when most health care providers in your area are allowing face-to-face meetings will create a territory in which our commercial efforts are not maximized and may require personnel changes in order to enable the face-to-face interactions that, over time, have been shown to lead to the highest level of commercial success. This, too,

7

presents an undue hardship for Takeda under applicable law.

As previously communicated, any U.S. field-based employees who do not report that they are fully vaccinated via the VaxDMS system by November 1, 2021 or who do not receive an approved exemption may be terminated.

However, you will have the opportunity to comply with the policy by becoming either fully or partially vaccinated (i.e., receiving the first of a two-shot series) and recording this as directed in the VaxDMS system prior to November 18, 2021. In such a case, if you are partially vaccinated by November 18, your manager will work with you to determine how to engage virtually after November 1, until you become fully vaccinated and are able to re-engage face-to-face in the field.

Thank you for your understanding as we work together to stay safe during the pandemic. We understand that becoming vaccinated is an important personal decision. If you have any questions, please let me know.

Kind Regards,

Heidi

<image005.png> [takeda.com]

<image006.jpg> [takeda.com]

*Heidi Miller*
Employee Relations Partner, People Advisory Group (PAG)
Corporate Functions, Vaccines, Oncology
**Takeda Pharmaceutical Company Limited**

██████████████

heidi.miller@takeda.com
www.takeda.com [takeda.com]

<image010.png> [takeda.info]

The content of this email and of any files transmitted may contain confidential, proprietary or legally privileged information and is intended solely for the use of the person/s or entity/ies to whom it is addressed. If you have received this email in error you have no permission whatsoever to use, copy, disclose or forward all or any of its contents. Please immediately notify the sender and thereafter delete this email and any attachments.

8

# EXHIBIT L

| | |
|---|---|
| **From:** | McDaniel, Salena <salena.mcdaniel@takeda.com> |
| **Sent:** | Monday, January 24, 2022 1:01 PM |
| **To:** | McDaniel, Salena |
| **Subject:** | Reasonable Accommodation – Extension (May 16, 2022) |

Hello,

We are pleased to inform you that your reasonable accommodation in the form of remote working and exemption from the US field requirement of vaccination against Novel Coronavirus Disease (COVID-19) has been extended for an additional 3 months, through May 16, 2022. If anything has changed regarding your situation or vaccination status, please contact Irving Forestier (Employee Relations Partner). On or around May 16, your accommodation will be reviewed again to ensure that it is still necessary and reasonable, and does not impose an undue hardship on Takeda.

As a reminder, you are not permitted to engage face-to-face with anyone on behalf of Takeda. Your manager will continue to work with you to determine how you may engage virtually. All other aspects of your position remain unchanged, and you are expected to adhere to acceptable standards of performance as set forth by Takeda and the department.

If you have any questions, please let your manager know or contact Irving directly. Otherwise, we will contact you to review your request on/after May 16, 2022.

All the best,
*Salena*

**Salena McDaniel**
Employee Relations Specialist
US People Advisory Group (PAG), USBU Human Resources

**Takeda Pharmaceuticals U.S.A., Inc.**

USA

salena.mcdaniel@takeda.com

1

# EXHIBIT M







July 18, 2019

Jordan Davis

███████████

Re: Offer of Employment

Dear Jordan,

Congratulations! We are pleased to offer you the position of Sales Representative for the Saint Petersburg, FL Territory (USA - T0319) in the Tampa District with Takeda Pharma America. Your start date will be August 19, 2019, and you will report to Jodi Gayle-Garcia, Regional Director - Neuroscience - Tampa, FL.

We look forward to you joining our unique team of dedicated professionals working with respect and integrity to improve people's lives - patients, community members and other employees. Takeda's focus on innovation has led to our tremendous growth, while the spirit of our employees compels us to lead responsibly.

As discussed, your Biweekly compensation will be $███████. This pay rate annualizes to $███████ less any applicable payroll taxes, withholdings, and deductions.

As a Sales Representative, Takeda requires that you reside within the boundaries of your assigned territory, Saint Petersburg, FL. Any desired move to a residence outside of your assigned territorial boundaries will require approval from Sales Management prior to any move being initiated.  Failure to abide by Takeda's policies regarding territory residence, including but not limited to the aforementioned item, could lead to the rescinding of an offer as well as disciplinary action up to and including termination.

You are eligible to participate in the Sales Incentive Compensation program. Additional details will be forthcoming regarding this incentive program.

Completion of a drug-screen is not required as part of this offer.

Please note that the Company may require testing of an employee's or applicant's breath and/or urine samples for alcohol and drugs if certain "for cause" circumstances occur, to the extent permissible by applicable law. In these cases, offers of employment and continued employment may be conditioned

1



upon negative results. By signing this offer, you acknowledge understanding of that condition and consent to such testing.

You will also be provided use of a Company-owned or Company-leased vehicle, subject to the terms and conditions of applicable policies, including but not limited to, the Company's Fleet Policy.

You have also represented to us that you are not bound by any non-competition or other agreement that would or could be violated by, or that would or could in any way interfere with, restrict, or prohibit your duties for, or employment with, Takeda. To the extent you discover an agreement or obligations contrary to this understanding, you agree that you will disclose these obligations to Takeda immediately, for Takeda's independent evaluation.

You will be eligible to participate in all applicable health and welfare benefit plans effective on the date you begin employment. You will also be eligible to enroll for participation in the Company Savings & Retirement Plan 401(k) as soon as administratively feasible following your start date.

You may be eligible to participate in Takeda's various bonus programs and/or receive a merit pay increase during the Company's annual performance management cycle. If you are eligible for either, those payouts and/or increases may be prorated based on your start date. Please consult Takeda's bonus plan documents for more specific information about your eligibility. The above compensation and benefits are governed by the terms and conditions set forth in applicable Company policies and plan documents, which may be changed or amended from time to time or discontinued altogether. In the event of a conflict between those terms and conditions and the contents of this letter, the terms and conditions of the plan documents and/or policies shall prevail.

Takeda is a global pharmaceutical leader that values integrity and ethical behavior. As such, you are required to undergo a background check in connection with this offer. To the extent permissible under applicable law, this offer and any continued employment is contingent upon your successful passage of that background check. In addition, this offer of employment and any subsequent continued employment are also contingent upon your ability to prove your identity and eligibility to work in the United States within time frames established by Takeda in its sole discretion in accordance with applicable law. Please note that Takeda participates in the E-Verify Program and that your eligibility to work will also be checked against information contained within that system.

Takeda requires that you agree to and sign the attached/enclosed Restrictive Covenant and Intellectual Property Rights Agreement as a condition of employment. Without limitation by example, Takeda is extending this offer to you on the condition that you not use or disclose to Takeda any confidential information of anyone that you previously worked for, and with the understanding that your employment with Takeda will not violate or be restricted by any noncompetition or other agreement with anyone else. If this is not true, or if you have any questions regarding your obligations to any other company, please inform us immediately.

The information and conditions set forth in this letter do not constitute a contract of employment and do not promise or create any right to continued employment under any specific terms or for any specific period of time. Your employment with Takeda will be "at-will" at all times. This means that either you or Takeda may end your employment at any time for any or no reason. This letter confirms our mutual understanding regarding all matters set forth herein and supersedes any prior discussions, writings, or

2



understandings.

You are scheduled to attend a new employee orientation on August 19, 2019, at 8:15 a.m.

In the coming days, you will receive an email from Takeda@MyWorkday.com with instructions on how to provide information to complete your hiring process. On that Web-site, you will find documents and Company information to review prior to your start date, a few required tasks that will help us get you started as a new employee, and detailed information on your benefits options. If you have any questions regarding your benefits, please contact the Takeda Employee Resource Center at (224) 554-6800 or toll-free at (877) 872-3700.

Jordan, Takeda is pleased to extend this offer to you and we look forward to you joining the Takeda team to help improve the lives of patients by bringing important medicines to market. We're confident you'll agree that Takeda offers a promising future in which you will be supported both professionally and beyond work, in which you will do important work, and in which you will be valued for your contributions.

By providing your electronic signature to this document, you are confirming that you have read, understand and agree to the above terms and conditions.

As previously mentioned, this offer is contingent upon your acknowledgement of Takeda's Restrictive Covenant and Intellectual Property Rights Agreement. Please locate the link to the document delivered with this offer and carefully read and confirm, by way of printing the final signature page and providing your wet signature. Return your completed signature confirmation page to us via scanned copy to the email address provided on the document. Your offer is contingent upon receipt of both your electronic signature, here, and your physical signature on the aforementioned signature page.

If you encounter problems viewing this page or document, or you disagree with any of the content, do not electronically or physically sign, but contact Talent Acquisition immediately.

Sincerely,

Mike Demirjian
Global Head, Talent Acquisition
Takeda Pharmaceuticals

# EXHIBIT N

## APPROVAL AGREEMENT: OUTSIDE EMPLOYMENT/ACTIVITIES

This Agreement applies to **Fit Life Activewear/ Online apparel site, Inc.** ("Takeda"), and its past, present, and future divisions, subsidiaries, parents, affiliates, joint ventures, and other related entities, and the respective predecessors, successors, and assigns of each of the foregoing entities (collectively "Takeda" or "Company") and the Employee specified below.  In consideration for Takeda's approval of Employee's request for outside employment/activities, which are specifically **owning Fit Life trademark and selling of activewear through a 3rd party website** and the mutual promises and covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee agrees by signing below to the following:

1. Employee will not engage in any outside employment/activities that are incompatible with Employee's official Takeda responsibilities. Specifically, Employee agrees that any approved outside employment/activities will not:

   a. bring disfavor or disrespect upon Employee and/or Takeda;
   b. impede or adversely affect Employee's performance and proper discharge of Employee's Takeda duties;
   c. make use of any Takeda resources and/or equipment;
   d. occur during time Employee is being paid in any way by Takeda or is conducting Takeda work; and/or
   e. conflict with any Takeda policies, procedures, and/or guidelines, including but not limited to Takeda's Global Code of Conduct.

2. Employee agrees not to participate in any activities that are relevant to and/or in conflict with Takeda's business including but not limited to activities related to actual or potential transactions with third parties.

3. Employee shall not perform outside employment/activities while receiving paid sick leave or disability benefits from Takeda.  If Employee becomes injured, disabled, or ill as a result of any such activities, Employee understands and agrees that he/she shall not be given paid sick leave or disability benefits from Takeda.

4. Employee shall not violate any Takeda policies, procedures or other signed agreements between Employee and Takeda regarding the direct or indirect disclosure of any Takeda confidential or proprietary information when performing non-Takeda related activities. Employee acknowledges that he/she has reviewed Takeda's policies around confidential and/or proprietary information, has been given an opportunity to ask questions about those policies if necessary, understands them, and will fully comply with them when performing outside employment or activities.

5. Employee will not verbally agree to and/or sign any written terms and/or conditions related to Employee's outside employment/activities with a third-party unless expressly authorized by Takeda's Legal Department and Employee's manager.

6. Employee will immediately notify his/her manager and Human Resources Representative if the information contained in Employee's Request Form changes in any way after approval including but not limited to changes in length arrangement, specific duties, financial implications, potential reputational risks, etc.

7. Post approval, Employee agrees to fully cooperate in periodic reviews of his/her outside employment/activities at any time upon request. Employee agrees that this approval only includes the outside employment/activities specified above; it is not a blanket approval.  All activities must be authorized separately and well in advance.

8. Employee understands that approval of Employee's request may be revoked at any time at the sole discretion of Takeda.  Employee also agrees that he/she will immediately modify, limit or

otherwise terminate his/her outside employment/activities upon request.

9.  Employee understands that any failure to abide by the conditions within this agreement including but not limited to timely disclosing changes to his/her outside employment/activities arrangements, avoiding any activities which create an actual or potential conflict of interest arising from such employment, undertaking any actions that violate Takeda policies and/or procedures, and/or disobeying the instructions contained within this agreement are grounds for both immediate revocation of this approval and/or disciplinary action, up to and including termination of employment.

10. Employee acknowledges that his/her employment remains at-will and nothing in this agreement creates or evidences a contract for employment.  Additionally, all other agreements between Employee and Takeda, including but not limited to the Confidentiality, Intellectual Property and Noncompetition Agreement ("Agreement"), remain in full force and effect.

_____
Employee Printed Name and Signature

_____
Date

CC:    Employee Personnel File
       Employee Manager

# EXHIBIT O

**APPROVAL AGREEMENT: OUTSIDE EMPLOYMENT/ACTIVITIES**

This Agreement applies to Takeda Pharmaceuticals America, Inc. ("Takeda"), and its past, present, and future divisions, subsidiaries, parents, affiliates, joint ventures, and other related entities, and the respective predecessors, successors, and assigns of each of the foregoing entities (collectively "Takeda" or "Company") and the Employee specified below. In consideration for Takeda's approval of Employee's request for outside employment/activities, which are specifically coaching the varsity basketball team at Gaither High School (10/15 hours during the week and after 5pm) and the mutual promises and covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee agrees by signing below to the following:

1. Employee will not engage in any outside employment/activities that are incompatible with Employee's official Takeda responsibilities. Specifically, Employee agrees that any approved outside employment/activities will not:

    a. bring disfavor or disrespect upon Employee and/or Takeda;
    b. impede or adversely affect Employee's performance and proper discharge of Employee's Takeda duties;
    c. make use of any Takeda resources and/or equipment;
    d. occur during time Employee is being paid in any way by Takeda or is conducting Takeda work; and/or
    e. conflict with any Takeda policies, procedures, and/or guidelines, including but not limited to Takeda's Global Code of Conduct.

2. Employee agrees not to participate in any activities that are relevant to and/or in conflict with Takeda's business including but not limited to activities related to actual or potential transactions with third parties.

3. Employee shall not perform outside employment/activities while receiving paid sick leave or disability benefits from Takeda. If Employee becomes injured, disabled, or ill as a result of any such activities, Employee understands and agrees that he/she shall not be given paid sick leave or disability benefits from Takeda.

4. Employee shall not violate any Takeda policies, procedures or other signed agreements between Employee and Takeda regarding the direct or indirect disclosure of any Takeda confidential or proprietary information when performing non-Takeda related activities. Employee acknowledges that he/she has reviewed Takeda's policies around confidential and/or proprietary information, has been given an opportunity to ask questions about those policies if necessary, understands them, and will fully comply with them when performing outside employment or activities.

5. Employee will not verbally agree to and/or sign any written terms and/or conditions related to Employee's outside employment/activities with a third-party unless expressly authorized by Takeda's Legal Department and Employee's manager.

6. Employee will immediately notify his/her manager and Human Resources Representative if the information contained in Employee's Request Form changes in any way after approval including but not limited to changes in length arrangement, specific duties, financial implications, potential reputational risks, etc.

7. Post approval, Employee agrees to fully cooperate in periodic reviews of his/her outside employment/activities at any time upon request. Employee agrees that this approval only includes the outside employment/activities specified above; it is not a blanket approval. All activities must be authorized separately and well in advance.

8. Employee understands that approval of Employee's request may be revoked at any time at the sole discretion of Takeda. Employee also agrees that he/she will immediately modify, limit or

otherwise terminate his/her outside employment/activities upon request.

9. Employee understands that any failure to abide by the conditions within this agreement including but not limited to timely disclosing changes to his/her outside employment/activities arrangements, avoiding any activities which create an actual or potential conflict of interest arising from such employment, undertaking any actions that violate Takeda policies and/or procedures, and/or disobeying the instructions contained within this agreement are grounds for both immediate revocation of this approval and/or disciplinary action, up to and including termination of employment.

10. Employee acknowledges that his/her employment remains at-will and nothing in this agreement creates or evidences a contract for employment. Additionally, all other agreements between Employee and Takeda, including but not limited to the Confidentiality, Intellectual Property and Noncompetition Agreement ("Agreement"), remain in full force and effect.


Jordan Davis    *Jordan Davis*                    9/25/20
_____          _____
Employee Printed Name and Signature              Date


CC:    Employee Personnel File
       Employee Manager

# EXHIBIT 2

| | |
|---|---|
| **From:** | PEDRO HERNANDEZ |
| **To:** | "Shannon Olson" |
| **Subject:** | RE: Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202 |
| **Date:** | Monday, August 15, 2022 4:23:00 PM |
| **Attachments:** | image003.jpg |
| | image012.jpg |
| | image013.jpg |
| | image004.jpg |
| | image005.jpg |
| | image006.jpg |
| | image007.jpg |
| | image008.jpg |
| | image009.jpg |
| | image010.jpg |

Ms. Olson,

The file is up for review the week of August 29, 2022, I'll contact you after the review and speak with you regarding our analysis.

Respectfully,



**Press control key and click link for portal:** http://www.eeoc.gov/employees/charge_status.cfm

**Warning:** All information contained in this email message is privileged and confidential for use ONLY by the Equal Employment Opportunity Commission (EEOC) and the intended recipient(s). If you are not an intended recipient, you are hereby notified hat any use or dissemina ion of this communication is strictly prohibited. If you have received his communication in error, please delete all copies of the message and its attachments and notify he sender immediately. Your receipt of this message is not intended to waive any applicable privilege. Emails sent or received by he EEOC will be retained according to EEOC's record reten ion policy.

---

**From:** Shannon Olson <shannonolson3@gmail.com>
**Sent:** Monday, August 15, 2022 12:22 PM
**To:** PEDRO HERNANDEZ <PEDRO.HERNANDEZ@EEOC.GOV>
**Subject:** Re: Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202

Hi Mr Hernandez
I hope this message finds you well. I wondered if you could provide me with an update on my case. Thank you

Warmest Regards
Shannon Olson

On Aug 12, 2022, at 9:37 AM, Shannon Olson <shannonolson3@gmail.com> wrote:

Hello Mr Hernandez
I hope this email finds you well. I wondered if you could provide an update to my case. Thank you

Warmest Regards
Shannon Olson

On May 13, 2022, at 2:52 PM, Shannon Olson <shannonolson3@gmail.com> wrote:

Thank you!

Warmest Regards
Shannon Olson

On May 13, 2022, at 1:02 PM, PEDRO HERNANDEZ <PEDRO.HERNANDEZ@eeoc.gov> wrote:

Ms. Olson ,

The file has been update to reflect May 31, 2022, as the new due date for your response.

Respectfully,



image011.jpg

**Press control key and click link for portal:**
http://www.eeoc.gov/employees/charge_status.cfm

**Warning:** All information contained in this email message is privileged and confidential for use ONLY by the Equal Employment Opportunity Commission (EEOC) and the intended recipient(s). If you are not an intended recipient, you are hereby notified that any use or dissemination of this communica ion is stric ly prohibited. If you have received this communica ion in error, please delete all copies of the message and its attachments and notify  he sender immediately. Your receipt of this message is not intended to waive any applicable privilege. Emails sent or received by the EEOC will be retained according to EEOC's record reten ion policy.

**From:** Shannon Olson <shannonolson3@gmail.com>
**Sent:** Friday, May 13, 2022 8:38 AM
**To:** PEDRO HERNANDEZ <PEDRO.HERNANDEZ@EEOC.GOV>
**Subject:** Re: Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202

> **CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Good Morning Mr. Hernandez,

I am writing to request an extension on the deadline for my rebuttal to Takeda.

I sincerely regret the delay. I appreciate and thank you for your consideration.

Warmest Regards
Shannon Olson

On Apr 26, 2022, at 3:00 PM, PEDRO HERNANDEZ <PEDRO.HERNANDEZ@eeoc.gov> wrote:

Ms. Olson,

The response from Takeda Pharmaceuticals was released to you for your review and rebuttal on February 22, 2022. I've attached their response to this email for your convenience, Please respond with your rebuttal by May 16, 2021.

Respectfully,



image003.jpg

### Press control key and click link for portal:
http://www.eeoc.gov/employees/charge_status.cfm

**Warning:** All information contained in this email message is privileged and confidential for use ONLY by he Equal Employment Opportunity Commission (EEOC) and the intended recipient(s). If you are not an intended recipient, you are hereby notified hat any use or dissemination of this communica ion is strictly prohibited. If you have received this communication in error, please delete all copies of the message and its attachments and notify the sender immediately. Your receipt of this message is not intended to waive any applicable privilege. Emails sent or received by the EEOC will be retained according to EEOC's record retention policy.

**From:** Shannon Olson <shannonolson3@gmail.com>
**Sent:** Tuesday, April 26, 2022 7:50 AM
**To:** PEDRO HERNANDEZ <PEDRO.HERNANDEZ@EEOC.GOV>
**Subject:** Re: Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202

> **CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Hello and Good Morning Mr Hernandez,

I hope this email finds you and your family well.  I wondered if you could

provide me with an update on my case?

Thank you for your time
Shannon Olson

On Thu, Dec 30, 2021 at 9:57 AM PEDRO HERNANDEZ <PEDRO.HERNANDEZ@eeoc.gov> wrote:

> Ms. Olson,
>
> Good morning Ms. Olson,
>
> The documents were received and made part of your file. The file is being processed to notify Takeda Pharmaceuticals of your allegations of discrimination and offer them the opportunity to conduct an investigation and provide an answer to the allegations. As you know the EEOC is a neutral agency and we try to collect information/evidence to conduct an impartial analysis of the laws we are tasked to enforce.
>
> Charging Parties:
> The status of any EEOC charge of discrimination may be obtained by either party by interacting on the Public Portal located at this link: US EEOC
>
> If you are experiencing system or log in issues with the EEOC Digital Charge System or Online Portal, please contact our Digital Support Desk with questions or concerns at digitalsupport@eeoc.gov or call the Help Desk at 1-800-569-7118.
>
> Respectfully,

image004.jpg



**Warning:** All information contained in this email message is privileged and confidential for use ONLY by the Equal Employment Opportunity Commission (EEOC) and he intended recipient(s). If you are not an intended recipient, you are hereby notified hat any use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all copies of the message and its attachments and notify he sender immediately. Your receipt of this message is not intended to waive any applicable privilege. Emails sent or received by the EEOC will be retained according to EEOC's record retention policy.

**From:** Shannon Olson <shannonolson3@gmail.com>
**Sent:** Wednesday, December 29, 2021 5:17 PM
**To:** PEDRO HERNANDEZ <PEDRO.HERNANDEZ@EEOC.GOV>

**Subject:** Re: Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202

Hi Mr Hernandez
I hope you and your family had a wonderful Christmas celebration!! I am emailing to confirm you received my signed papers. What is the next step? Thank you

Warmest Regards
Shannon Olson

> On Dec 22, 2021, at 5:46 PM, Shannon Olson <shannonolson3@gmail.com> wrote:
>
> Hi Mr Hernandez
>
> Attached are the signed charges. Please let me know if you need any additional information from me to proceed. Have a Blessed Evening.
>
> On Wed, Dec 15, 2021 at 7:18 AM PEDRO HERNANDEZ <PEDRO.HERNANDEZ@eeoc.gov> wrote:
>
>> Ms. Olson,
>>
>> Please find attached the charge of discrimination for your review and signature. Please respond by 1/3/2022.
>>
>> Respectfully,

image005.jpg



**Warning:** All information contained in his email message is privileged and confidential for use ONLY by the Equal Employment Opportunity Commission (EEOC) and the intended recipient(s). If you are not an intended recipient, you are hereby notified that any use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all copies of he message and its attachments and notify the sender immediately. Your receipt of this message is not intended to waive any applicable privilege. Emails sent or received by he EEOC will be retained according to EEOC's record retention policy.

**Subject:** Re: Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202

Hi Mr Hernandez
I hope you and your family had a wonderful Christmas celebration!! I am emailing to confirm you received my signed papers. What is the next step? Thank you

Warmest Regards
Shannon Olson

On Dec 22, 2021, at 5:46 PM, Shannon Olson <shannonolson3@gmail.com> wrote:

Hi Mr Hernandez

Attached are the signed charges. Please let me know if you need any additional information from me to proceed. Have a Blessed Evening.

On Wed, Dec 15, 2021 at 7:18 AM PEDRO HERNANDEZ <PEDRO.HERNANDEZ@eeoc.gov> wrote:

Ms. Olson,

Please find attached the charge of discrimination for your review and signature. Please respond by 1/3/2022.

Respectfully,



image005.jpg

**Warning:** All information contained in his email message is privileged and confidential for use ONLY by the Equal Employment Opportunity Commission (EEOC) and the intended recipient(s). If you are not an intended recipient, you are hereby notified that any use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all copies of he message and its attachments and notify the sender immediately. Your receipt of this message is not intended to waive any applicable privilege. Emails sent or received by he EEOC will be retained according to EEOC's record retention policy.









image010.jpg

# EXHIBIT 3

Activity Log
523-2022-00202

| Date | Event | Name |
|------|-------|------|
| 6/30/2023 12:43 | FOIA Request 510-2023-010932 received. | Foia User |
| 3/21/2023 19:19 | Charging Party accessed closed charge. | Publicportal User |
| 3/21/2023 19:18 | Charging Party accessed closed charge. | Publicportal User |
| 3/14/2023 15:07 | The Charging Party has Downloaded Document. Type: Correspondence To/From Charging Party & FileName:2021-12-22 1747 Email from Shannon Olson re Shannon Olson v. Takeda Pharmaceuticals 523-202....msg | Publicportal User |
| 3/14/2023 15:06 | The Charging Party has Downloaded Document. Type: Correspondence To/From Charging Party & FileName:CP Information from CP 2.msg | Publicportal User |
| 3/14/2023 15:06 | The Charging Party has Downloaded Document. Type: Correspondence To/From Charging Party & FileName:CP Information from CP 1.msg | Publicportal User |
| 2/2/2023 17:21 | The Charging Party has Downloaded Document. Type: Closure Notice/NRTS & FileName:2022-12-15 Closure Notice-NRTS 523-2022-00202.pdf | Publicportal User |
| 2/2/2023 17:21 | The Charging Party has Downloaded Document. Type: Closure Notice/NRTS & FileName:2022-12-15 Closure Notice-NRTS 523-2022-00202.pdf | Publicportal User |
| 12/23/2022 0:08 | Downloaded Document. Type: Closure Notice/NRTS & FileName:2022-12-15 Closure Notice-NRTS 523-2022-00202.pdf | Respondentportal User |
| 12/23/2022 0:07 | EEOC has completed the investigation of this charge. Please review the Notice of Right to Sue for details. | Respondentportal User |
| 12/23/2022 0:07 | Respondent logged in | Respondentportal User |
| 12/23/2022 0:07 | Respondent logged in | Respondentportal User |
| 12/22/2022 10:36 | The Charging Party has Downloaded Document. Type: Closure Notice/NRTS & FileName:2022-12-15 Closure Notice-NRTS 523-2022-00202.pdf | Publicportal User |
| 12/21/2022 14:52 | The Charging Party has Downloaded Document. Type: Closure Notice/NRTS & FileName:2022-12-15 Closure Notice-NRTS 523-2022-00202.pdf | Publicportal User |
| 12/15/2022 15:34 | The Charging Party has Downloaded Document. Type: Closure Notice/NRTS & FileName:2022-12-15 Closure Notice-NRTS 523-2022-00202.pdf | Publicportal User |
| 12/15/2022 15:20 | Case status changed from Investigation to Charge Closed. | OMAYRA RODRIGUEZ |
| 12/15/2022 15:20 | Case moved to CLOSED stage. | OMAYRA RODRIGUEZ |
| 12/15/2022 15:20 | (b) (5) ██████████████ ██. | OMAYRA RODRIGUEZ |
| 12/15/2022 15:20 | Closure Supervisor review approved. | OMAYRA RODRIGUEZ |
| 12/15/2022 15:19 | Uploaded Document. Type: Investigative MemorandumÂ & FileName:2022-12-15 Form 291 523-2022-00202.pdf | OMAYRA RODRIGUEZ |

1

Activity Log
523-2022-00202

| | | |
|---|---|---|
| 12/15/2022 15:19 | Emailed Nadine Szymborski at nszymborski@seyfarth.com that a new document is available to download. | Arcapp User |
| 12/15/2022 15:19 | Emailed Ellen McLaughlin at emclaughlin@seyfarth.com that a new document is available to download. | Arcapp User |
| 12/15/2022 15:19 | Emailed TAKEDA PHARMACEUTICALS NA at christine.mealey@takeda.com that a new document is available to download. | Arcapp User |
| 12/15/2022 15:19 | Emailed Ms. Shannon M. Olson at (b) (6), (b) (7)(C) that a new document is available to download. | Arcapp User |
| 12/15/2022 15:19 | Closure Notice/NRTS (2022-12-15 Closure Notice-NRTS 523-2022-00202.pdf) released | OMAYRA RODRIGUEZ |
| 12/15/2022 15:19 | Uploaded Document. Type: Closure Notice/NRTS & FileName:2022-12-15 Closure Notice-NRTS 523-2022-00202.pdf | OMAYRA RODRIGUEZ |
| 12/7/2022 13:47 | Contact with Charging Party record added | PEDRO HERNANDEZ |
| 12/2/2022 9:14 | Assigned to OMAYRA RODRIGUEZ for Supervisor Closure review with comments: See 291. Although & there is class implication on the body of the charge & the analysis of the evidence could not corroborate that a class of employees was discriminated by R. | PEDRO HERNANDEZ |
| 12/2/2022 9:14 | Supporting Details for recommended charge closure added: See 291 | PEDRO HERNANDEZ |
| 12/2/2022 9:14 | (b) (5) | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | | PEDRO HERNANDEZ |

Activity Log
523-2022-00202

| | | |
|---|---|---|
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 9:12 | ███████████████████████████ | PEDRO HERNANDEZ |
| 12/2/2022 8:55 | Respondent naicsCode added as 446110 | PEDRO HERNANDEZ |
| 12/2/2022 7:07 | Uploaded Document. Type: CP Pre-determination/Determination Interview Notes & FileName:2022-11-28 PDI INTERVIEW.pdf | PEDRO HERNANDEZ |
| 12/2/2022 7:06 | Uploaded Document. Type: Intake Interview Notes & FileName:2021-10-26 INTAKE INTERVIEW.pdf | PEDRO HERNANDEZ |
| 11/29/2022 18:05 | Generated Document. Type: Closure Notice/NRTS & FileName:523-2022-00202_Closure Notice/NRTS.docx | PEDRO HERNANDEZ |

Activity Log
523-2022-00202

| 11/28/2022 13:31 | Contact with Charging Party record added | PEDRO HERNANDEZ |
|---|---|---|
| 11/25/2022 17:13 | Downloaded Document. Type: Charge of Discrimination & FileName:Charge of Discrimination.pdf | PEDRO HERNANDEZ |
| 11/15/2022 15:20 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 11/15/2022 15:20 | Respondent logged in | Respondentportal User |
| 10/25/2022 16:45 | Contact with Charging Party record added | PEDRO HERNANDEZ |
| 10/10/2022 11:54 | The Charging Party has Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |
| 9/30/2022 15:25 | The Charging Party has Downloaded Document. Type: Rebuttal to Position Statement & FileName:2022-06-01 CP Rebuttal.pdf | Publicportal User |
| 9/30/2022 15:24 | The Charging Party has Downloaded Document. Type: Correspondence To/From Charging Party & FileName:CP Information from CP 1.msg | Publicportal User |
| 9/15/2022 12:20 | The Charging Party has Downloaded Document. Type: Correspondence with Charging Party & FileName:2022-08-15 CP Email Status.msg | Publicportal User |
| 9/15/2022 12:19 | The Charging Party has Downloaded Document. Type: Correspondence with Charging Party & FileName:2022-08-15 CP Email Status.msg | Publicportal User |
| 8/30/2022 11:15 | The Charging Party has Downloaded Document. Type: Correspondence with Charging Party & FileName:2022-06-01 CP Rebuttal.msg | Publicportal User |
| 8/30/2022 11:15 | The Charging Party has Downloaded Document. Type: Correspondence with Charging Party & FileName:2022-08-15 CP Email Status.msg | Publicportal User |
| 8/29/2022 12:57 | The Charging Party has Downloaded Document. Type: Correspondence with Charging Party & FileName:2022-08-15 CP Email Status.msg | Publicportal User |
| 8/27/2022 13:49 | The Charging Party has Downloaded Document. Type: Correspondence with Charging Party & FileName:2022-06-01 CP Rebuttal.msg | Publicportal User |
| 8/27/2022 13:47 | The Charging Party has Downloaded Document. Type: Correspondence with Charging Party & FileName:2022-08-15 CP Email Status.msg | Publicportal User |
| 8/27/2022 13:46 | The Charging Party has Downloaded Document. Type: Correspondence with Charging Party & FileName:2022-08-15 CP Email Status.msg | Publicportal User |
| 8/19/2022 20:49 | The Charging Party has Downloaded Document. Type: Rebuttal to Position Statement & FileName:2022-06-01 CP Rebuttal.pdf | Publicportal User |

4

Activity Log
523-2022-00202

| | | |
|---|---|---|
| 8/19/2022 20:48 | The Charging Party has Downloaded Document. Type: Rebuttal to Position Statement & FileName:2022-06-01 CP Rebuttal.pdf | Publicportal User |
| 8/19/2022 20:48 | The Charging Party has Downloaded Document. Type: Correspondence with Charging Party & FileName:2022-08-15 CP Email Status.msg | Publicportal User |
| 8/15/2022 16:25 | Uploaded Document. Type: Correspondence with Charging Party & FileName:2022-08-15 CP Email Status.msg | PEDRO HERNANDEZ |
| 8/15/2022 16:20 | Charge assignee Pedro Hernandez (Investigator) viewed charge details. | PEDRO HERNANDEZ |
| 8/4/2022 13:35 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 8/4/2022 13:35 | Respondent logged in | Respondentportal User |
| 7/23/2022 15:06 | The Charging Party has Downloaded Document. Type: Rebuttal to Position Statement & FileName:2022-06-01 CP Rebuttal.pdf | Publicportal User |
| 6/20/2022 11:18 | The Charging Party has Downloaded Document. Type: Rebuttal to Position Statement & FileName:2022-06-01 CP Rebuttal.pdf | Publicportal User |
| 6/20/2022 9:31 | Uploaded Document. Type: Notice of Dual-Filed Charge & FileName:523-2022-00202_NoticeOfDualFiledCharge.pdf | Casey Snipes |
| 6/20/2022 9:30 | Generated Document. Type: Notice of Dual-Filing & Acknowledgement of Charge & FileName:523-2022-00202_NoticeOfDualFiledCharge.pdf | Casey Snipes |
| 6/20/2022 9:30 | Dual filing notification acknowledged | Casey Snipes |
| 6/20/2022 9:30 | Identified Deferral Office Intent as Defer Investigation | Casey Snipes |
| 6/16/2022 16:35 | Downloaded Document. Type: Rebuttal to Position Statement & FileName:2022-06-01 CP Rebuttal.pdf | PEDRO HERNANDEZ |
| 6/2/2022 11:43 | The Charging Party has Downloaded Document. Type: Rebuttal to Position Statement & FileName:2022-06-01 CP Rebuttal.pdf | Publicportal User |
| 6/2/2022 11:43 | The Charging Party has Downloaded Document. Type: Correspondence with Charging Party & FileName:2022-06-01 CP Rebuttal.msg | Publicportal User |
| 6/1/2022 16:09 | Uploaded Document. Type: Rebuttal to Position Statement & FileName:2022-06-01 CP Rebuttal.pdf | PEDRO HERNANDEZ |
| 6/1/2022 16:08 | Uploaded Document. Type: Correspondence with Charging Party & FileName:2022-06-01 CP Rebuttal.msg | PEDRO HERNANDEZ |
| 5/25/2022 15:16 | The Charging Party has Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |

5

Activity Log
523-2022-00202

| | | |
|---|---|---|
| 5/23/2022 8:46 | The Charging Party has Downloaded Document. Type: Charge of Discrimination & FileName:Charge of Discrimination.pdf | Publicportal User |
| 5/23/2022 8:45 | The Charging Party has Downloaded Document. Type: Correspondence To/From Charging Party & FileName:2021-11-15 1345 Email from Shannon Olson re Shannon Olson v. Takeda Pharmaceuticals NA - 52....msg | Publicportal User |
| 4/27/2022 12:03 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 4/27/2022 12:02 | Respondent logged in | Respondentportal User |
| 4/25/2022 13:08 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 4/25/2022 13:08 | Respondent logged in | Respondentportal User |
| 4/25/2022 12:55 | Deleted Respondent Legal Representative. | Respondentportal User |
| 4/25/2022 12:55 | Added Respondent Legal Representative. | Respondentportal User |
| 4/25/2022 12:41 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 4/25/2022 12:41 | Respondent logged in | Respondentportal User |
| 4/10/2022 18:47 | Added Respondent Legal Representative. | Respondentportal User |
| 4/10/2022 18:46 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 4/10/2022 18:46 | Respondent logged in | Respondentportal User |
| 3/31/2022 19:16 | Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |
| 3/29/2022 16:38 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 3/29/2022 16:38 | Respondent logged in | Respondentportal User |
| 3/23/2022 23:46 | Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |
| 3/23/2022 23:45 | Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |
| 3/23/2022 23:44 | Charging Party Chose to receive the Position Statement | (b) (6), (b) (7)(C) |
| 3/23/2022 23:44 | Used when email sent to PP CP to confirm they requested Position Statement | (b) (6), (b) (7)(C) |
| 3/23/2022 23:44 | Position Statement requested for Charging Party on 03/23/2022 23:44:24 | (b) (6), (b) (7)(C) |

6

Activity Log
523-2022-00202

| | | |
|---|---|---|
| 3/17/2022 15:28 | Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Respondentportal User |
| 3/17/2022 15:26 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 3/17/2022 15:26 | Respondent logged in | Respondentportal User |
| 3/17/2022 15:23 | Uploaded Document. Type: Correspondence with Respondent Attorney & FileName:EEOC ADR Transfer Letter # 523-2022-00202.msg | ELSA RAMANAND |
| 3/17/2022 15:21 | Generated Document. Type: EEOC TFO ADR Transfer Template Letter & FileName:523-2022-00202_EEOC TFO ADR Transfer Template Letter.docx | ELSA RAMANAND |
| 3/10/2022 10:58 | Pedro Hernandez designated as the primary assignee | OMAYRA RODRIGUEZ |
| 3/10/2022 10:58 | OMAYRA RODRIGUEZ removed as the primary assignee | OMAYRA RODRIGUEZ |
| 3/9/2022 20:35 | OMAYRA RODRIGUEZ designated as the primary assignee | ELSA RAMANAND |
| 3/9/2022 19:01 | Case status changed from Charge has been referred to enforcement to Investigation. | DAVID HAMILTON |
| 3/9/2022 19:01 | Concluded Mediation unsuccessfully. Reason:Not Held - Other - Respondent declined | DAVID HAMILTON |
| 3/9/2022 19:01 | Unassigned ADR Representative DAVID HAMILTON (Mediator) | DAVID HAMILTON |
| 3/9/2022 19:01 | Case status changed from Charge is eligible for ADR to Charge has been referred to enforcement. | DAVID HAMILTON |
| 2/28/2022 12:12 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 2/28/2022 12:12 | Respondent logged in | Respondentportal User |
| 2/25/2022 22:04 | Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |
| 2/24/2022 12:12 | Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |
| 2/23/2022 17:19 | Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |
| 2/23/2022 17:14 | Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |
| 2/22/2022 18:11 | Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |

Activity Log
523-2022-00202

| | | |
|---|---|---|
| 2/22/2022 18:08 | Downloaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Publicportal User |
| 2/22/2022 13:50 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 2/22/2022 13:50 | Respondent logged in | Respondentportal User |
| 2/22/2022 13:50 | No Action is required from you at this time. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 2/22/2022 13:50 | Respondent logged in | Respondentportal User |
| 2/22/2022 13:22 | Emailed Jenny Calvert at jcalvert@seyfarth.com that a new document is available to download. | Arcapp User |
| 2/22/2022 13:22 | Emailed TAKEDA PHARMACEUTICALS NA at christine.mealey@takeda.com that a new document is available to download. | Arcapp User |
| 2/22/2022 13:22 | Emailed Ms. Shannon M. Olson at (b) (6), (b) (7)(C) that a new document is available to download. | Arcapp User |
| 2/22/2022 13:22 | Position Statement (Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF) released | PEDRO HERNANDEZ |
| 2/22/2022 13:22 | Position Statement released to Charging Party on 02/22/2022 13:22:46 | PEDRO HERNANDEZ |
| 2/21/2022 17:43 | Downloaded Document. Type: Correspondence with Respondent Attorney & FileName:4501-01-01 0000 Email from re S. Olson v. Takeda - EOA and Extension Request - EEOC Charge....msg | Respondentportal User |
| 2/21/2022 17:32 | Uploaded Document. Type: Position Statement & FileName:Takeda Position Statement with Exhibits Charge No. 523-2022-00202.PDF | Respondentportal User |
| 2/21/2022 17:32 | Emailed Ms. Shannon M. Olson at (b) (6), (b) (7)(C) that a new document is available to download. | Arcapp User |
| 2/21/2022 17:32 | Position Statement received from Respondent on 02/21/2022 17:32:04 | Respondentportal User |
| 2/21/2022 17:18 | Respondent mediation reply: Declined | Respondentportal User |

8

Activity Log

523-2022-00202

| | | |
|---|---|---|
| 2/21/2022 17:13 | Please select a response to the Mediation Offer on this page by January 21 & 2022. If you choose ?No? & please provide a statement of your position on the issues covered in the charge & with any supporting documentation by February 05 & 2022.For guidance on how to best prepare your Position Statement & please review Effective Position Statements & as EEOC has revised its procedures related to the content and release of position statements & effective January 1 & 2016. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 2/21/2022 17:13 | Respondent logged in | Respondentportal User |
| 2/16/2022 18:16 | GENERAL note added. Type:ADR and Non-Disclosable:Yes. | DAVID HAMILTON |
| 2/15/2022 9:28 | Please select a response to the Mediation Offer on this page by January 21 & 2022. If you choose ?No? & please provide a statement of your position on the issues covered in the charge & with any supporting documentation by February 05 & 2022.For guidance on how to best prepare your Position Statement & please review Effective Position Statements & as EEOC has revised its procedures related to the content and release of position statements & effective January 1 & 2016. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 2/15/2022 9:28 | Respondent logged in | Respondentportal User |
| 2/14/2022 11:50 | Please select a response to the Mediation Offer on this page by January 21 & 2022. If you choose ?No? & please provide a statement of your position on the issues covered in the charge & with any supporting documentation by February 05 & 2022.For guidance on how to best prepare your Position Statement & please review Effective Position Statements & as EEOC has revised its procedures related to the content and release of position statements & effective January 1 & 2016. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 2/14/2022 11:50 | Respondent logged in | Respondentportal User |
| 2/10/2022 13:39 | GENERAL note added. Type:ADR and Non-Disclosable:No. | DAVID HAMILTON |
| 2/10/2022 13:38 | General note deleted. Type:adr. | DAVID HAMILTON |
| 2/10/2022 13:38 | General note added. Type:adr and Non-Disclosable:Yes. | DAVID HAMILTON |

9

Activity Log
523-2022-00202

| | | | |
|---|---|---|---|
| 2/9/2022 8:34 | Assigned ADR Representative DAVID HAMILTON (Mediator) | ELSA RAMANAND |
| 2/9/2022 8:34 | Unassigned ADR Representative DAVID HAMILTON (Mediator) | ELSA RAMANAND |
| 2/9/2022 8:34 | GENERAL note added. Type:CP  and Non-Disclosable:Yes. | ELSA RAMANAND |
| 2/7/2022 12:12 | Assigned ADR Representative DAVID HAMILTON (Mediator) | ELSA RAMANAND |
| 2/7/2022 12:12 | Unassigned ADR Representative Elsa Ramanand (Program Assistant) | ELSA RAMANAND |
| 2/7/2022 8:15 | Assigned ADR Representative Elsa Ramanand (Program Assistant) | MARVIN FRAZIER |
| 2/7/2022 8:15 | Unassigned ADR Representative Marvin Frazier (ADR Coordinator) | MARVIN FRAZIER |
| 2/7/2022 8:15 | GENERAL note added. Type:ADR and Non-Disclosable:Yes. | MARVIN FRAZIER |
| 2/7/2022 8:09 | Downloaded Document. Type: Charge of Discrimination & FileName:Charge of Discrimination.pdf | MARVIN FRAZIER |
| 2/3/2022 11:22 | Please select a response to the Mediation Offer on this page by January 21 & 2022. If you choose ?No? & please provide a statement of your position on the issues covered in the charge & with any supporting documentation by February 05 & 2022.For guidance on how to best prepare your Position Statement & please review Effective Position Statements & as EEOC has revised its procedures related to the content and release of position statements & effective January 1 & 2016. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 2/3/2022 11:22 | Respondent logged in | Respondentportal User |
| 1/31/2022 17:45 | Downloaded Document. Type: Correspondence with Respondent Attorney & FileName:4501-01-01 0000 Email from  re S. Olson v. Takeda - EOA and Extension Request - EEOC Charge....msg | Respondentportal User |

Activity Log
523-2022-00202

| | | |
|---|---|---|
| 1/31/2022 17:45 | Please select a response to the Mediation Offer on this page by January 21 & 2022. If you choose ?No? & please provide a statement of your position on the issues covered in the charge & with any supporting documentation by February 05 & 2022.For guidance on how to best prepare your Position Statement & please review Effective Position Statements & as EEOC has revised its procedures related to the content and release of position statements & effective January 1 & 2016. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 1/31/2022 17:45 | Respondent logged in | Respondentportal User |
| 1/20/2022 16:38 | Unassigned Pedro Hernandez (Investigator) | OMAYRA RODRIGUEZ |
| 1/20/2022 16:38 | Assigned ADR Representative Marvin Frazier (ADR Coordinator) | OMAYRA RODRIGUEZ |
| 1/20/2022 16:38 | Case status changed from Charge filed to Charge is eligible for ADR. | OMAYRA RODRIGUEZ |
| 1/20/2022 16:37 | (b) (5) ███████████████████ | OMAYRA RODRIGUEZ |
| 1/20/2022 16:37 | ███████████████████ ███████████ | OMAYRA RODRIGUEZ |
| 1/20/2022 16:37 | ███████████████████ | OMAYRA RODRIGUEZ |
| 1/20/2022 16:37 | Processing category justification text is revised as CP (Religion (Christian) & Disability & Retaliation & Age (47) & Sex (F) & Race (W) alleged she was mandated by R to be vaccinated against COVID-19. CP alleged it was against her religion to do so CP also has a disability that would conflict with the vaccine & CP alleged she requested a reasonable accommodation due to her religion and disability. CP alleged R denied her request and in retaliation for requesting a reasonable accommodation and has been intimidate with the discharge from her position. CP also alleged that a younger African American coworker has been allowed to coach a basketball team and still being paid his full salary while CP maintained her work responsibility and the African American's work responsibility. | |
| | | |
| Vaccine mandate policy | | |
| Detail why CP had to cover the African American's work | | |

11

Activity Log
523-2022-00202

| | | |
|---|---|---|
| Employee handbook | | |
| | | |
| 1/20/2022 - Case was reassessed per HQ guidance and determined by investigator to be appropriate for mediation. | OMAYRA RODRIGUEZ | |
| 1/20/2022 16:37 | Processing Category changed to (b) (5) ▮▮▮▮▮▮▮▮ | OMAYRA RODRIGUEZ |
| 1/18/2022 14:03 | General note added. Type:General and Non-Disclosable:No. | PEDRO HERNANDEZ |
| 1/18/2022 14:00 | Uploaded Document. Type: Correspondence with Respondent Attorney & FileName:4501-01-01 0000 Email from re S. Olson v. Takeda - EOA and Extension Request - EEOC Charge....msg | PEDRO HERNANDEZ |
| 1/18/2022 13:47 | Charge assignee Pedro Hernandez (Investigator) viewed charge details. | PEDRO HERNANDEZ |
| 1/18/2022 13:26 | Uploaded Document. Type: Position Statement Extension Request & FileName:EOA and Extension Request 2022.01.18_78887958v1_.PDF | Respondentportal User |
| 1/18/2022 13:13 | Downloaded Document. Type: Notice of Charge & FileName:NoticeofCharge.pdf | Respondentportal User |
| 1/18/2022 13:13 | Please provide a statement of your position on the issues covered in the charge & with any supporting documentation by February 05 & 2022. For guidance on how to best prepare your Position Statement & please review Effective Position Statements & as EEOC has revised its procedures related to the content and release of position statements & effective January 1 & 2016. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 1/18/2022 13:12 | Respondent logged in | Respondentportal User |
| 1/18/2022 9:55 | Downloaded Document. Type: Correspondence with Respondent & FileName:2022-01-12 0645 Email from re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202  2nd ....msg | Respondentportal User |
| 1/18/2022 9:55 | Downloaded Document. Type: Correspondence with Respondent & FileName:2022-01-06 1313 Email from re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg | Respondentportal User |
| 1/18/2022 9:54 | Added Respondent Legal Representative. | Respondentportal User |

12

Activity Log
523-2022-00202

| | | |
|---|---|---|
| 1/18/2022 9:53 | Please provide a statement of your position on the issues covered in the charge & with any supporting documentation by February 05 & 2022. For guidance on how to best prepare your Position Statement & please review Effective Position Statements & as EEOC has revised its procedures related to the content and release of position statements & effective January 1 & 2016. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 1/18/2022 9:53 | Respondent logged in | Respondentportal User |
| 1/18/2022 9:53 | Please provide a statement of your position on the issues covered in the charge & with any supporting documentation by February 05 & 2022. For guidance on how to best prepare your Position Statement & please review Effective Position Statements & as EEOC has revised its procedures related to the content and release of position statements & effective January 1 & 2016. You may be notified at a later date to respond to a Request for Information | Respondentportal User |
| 1/18/2022 9:53 | Respondent logged in | Respondentportal User |
| 1/18/2022 9:52 | Respondent password changed | Respondentportal User |
| 1/13/2022 16:47 | Document Download : Correspondence To/From Charging Party (2022-01-13 0738 Email from  re Recall_ Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 1/13/2022 8:03 | Document Download : Correspondence To/From Charging Party (2022-01-13 0738 Email from  re Recall_ Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 1/13/2022 8:02 | Uploaded Correspondence To/From Charging Party (2022-01-13 0738 Email from  re Recall_ Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 1/13/2022 7:59 | Deleted Correspondence To/From Charging Party (2022-01-13 0738 Email from  re Recall_ Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 1/13/2022 7:58 | Uploaded Correspondence To/From Charging Party (2022-01-13 0738 Email from  re Recall_ Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 1/12/2022 19:46 | Document Download : Correspondence To/From Charging Party (2021-12-30 0947 Email from  re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | Shannon Olson |

13

Activity Log
523-2022-00202

| | | |
|---|---|---|
| 1/12/2022 19:45 | Document Download : Charge of Discrimination (Charge of Discrimination.pdf) | Shannon Olson |
| 1/12/2022 19:41 | Document Download : Charge of Discrimination (Charge of Discrimination.pdf) | Shannon Olson |
| 1/12/2022 19:37 | Document Download : Correspondence To/From Charging Party (2022-01-03 0713 Email from EEOC re Recall_ Shannon Olson v. Takeda Pharmaceuticals 523-2022....msg) | Shannon Olson |
| 1/12/2022 19:36 | Charging party - (b) (6), (b) (7)(C) successfully logged into Public Portal | (b) (6), (b) (7)(C) - CP |
| 1/12/2022 6:58 | Deleted Correspondence To/From Respondent (2022-01-12 0645 Email from re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202 2nd ....msg) | PEDRO HERNANDEZ |
| 1/12/2022 6:58 | Uploaded Correspondence To/From Respondent (2022-01-12 0645 Email from re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202 2nd ....msg) | PEDRO HERNANDEZ |
| 1/12/2022 6:56 | Uploaded Correspondence To/From Respondent (2022-01-12 0645 Email from re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202 2nd ....msg) | PEDRO HERNANDEZ |
| 1/12/2022 6:44 | Document Download : Correspondence To/From Respondent (2022-01-06 1313 Email from re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 1/10/2022 9:28 | Document Download : Correspondence To/From Respondent (2022-01-06 1313 Email from re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 1/10/2022 0:00 | Case moved to Enforcement | OMAYRA RODRIGUEZ |
| 1/10/2022 0:00 | Case assigned to Pedro A. Hernandez | OMAYRA RODRIGUEZ |
| 1/6/2022 13:21 | Uploaded Correspondence To/From Respondent (2022-01-06 1313 Email from re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | Hernandez |
| 1/6/2022 13:15 | Document Download : Notice of Charge (NoticeofCharge.pdf) | Hernandez |
| 1/6/2022 2:16 | Uploaded Notice of Charge (Notice of Charge) | EEOC |
| 1/4/2022 10:09 | Receiving Office Intent selected: Investigate Charge & Deferral office: Florida Commission On Human Relations | PEDRO HERNANDEZ |
| 1/4/2022 10:09 | Florida Commission On Human Relations notified of dual-filing; Tampa Field Office intends to Investigate Charge | PEDRO HERNANDEZ |

14

Activity Log
523-2022-00202

| | | |
|---|---|---|
| 1/3/2022 7:15 | Uploaded Correspondence To/From Charging Party (2022-01-03 0713 Email from EEOC re Recall_ Shannon Olson v. Takeda Pharmaceuticals 523-2022....msg) | PEDRO HERNANDEZ |
| 1/3/2022 7:04 | Document Download : Correspondence To/From Charging Party (2021-12-30 0947 Email from  re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 1/3/2022 7:04 | Document Download : Correspondence To/From Charging Party (2021-12-30 0947 Email from  re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 12/30/2021 9:58 | Uploaded Correspondence To/From Charging Party (2021-12-30 0947 Email from  re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 12/28/2021 15:15 | Uploaded Charge of Discrimination (Charge of Discrimination.pdf) | PEDRO HERNANDEZ |
| 12/28/2021 0:00 | Charge filed | PEDRO HERNANDEZ |
| 12/28/2021 0:00 | Processing Category (b) (5) | PEDRO HERNANDEZ |
| 12/22/2021 18:11 | Uploaded Correspondence To/From Charging Party (2021-12-22 1747 Email from Shannon Olson re Shannon Olson v. Takeda Pharmaceuticals 523-202....msg) | PEDRO HERNANDEZ |
| 12/15/2021 7:17 | Document Download : Correspondence To/From Charging Party (2021-12-15 0711 Email from  re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 12/15/2021 7:17 | Uploaded Correspondence To/From Charging Party (2021-12-15 0711 Email from  re Shannon Olson v. Takeda Pharmaceuticals 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 12/13/2021 11:47 | Uploaded Internal Email/Correspondence - Enforcement (2021-12-13 1133 Email from EEOC re Please delete 523-2022-00859 as a duplicate to 523-2022-....msg) | PEDRO HERNANDEZ |
| 12/10/2021 14:02 | Uploaded Correspondence To/From Charging Party (2021-12-10 1153 Email from Shannon Olson re Shannon Olson v. Takeda Pharmaceuticals NA - 52....msg) | PEDRO HERNANDEZ |
| 12/6/2021 14:29 | Uploaded Correspondence To/From Charging Party (2021-12-06 1239 Email from Shannon Olson re Shannon Olson v. Takeda Pharmaceuticals NA - 52....msg) | PEDRO HERNANDEZ |
| 12/6/2021 14:29 | Uploaded Correspondence To/From Charging Party (2021-12-06 1421 Email from  re Shannon Olson v. Takeda Pharmaceuticals NA - 523-2022-00202.msg) | PEDRO HERNANDEZ |

Activity 175

523-2022-00202

| Date/Time | Activity | User |
|---|---|---|
| 11/30/2021 16:17 | Uploaded Correspondence To/From Charging Party (2021-11-30 1533 Email from Shannon Olson re Shannon Olson v. Takeda Pharmaceuticals NA - 52....msg) | PEDRO HERNANDEZ |
| 11/30/2021 16:17 | Uploaded Correspondence To/From Charging Party (2021-11-30 1543 Email from Shannon Olson re Shannon Olson v. Takeda Pharmaceuticals NA - 52....msg) | PEDRO HERNANDEZ |
| 11/30/2021 15:06 | Uploaded Correspondence To/From Charging Party (4501-01-01 0000 Email from  re Shannon Olson v. Takeda Pharmaceuticals NA - 523-2022-00202.msg) | PEDRO HERNANDEZ |
| 11/23/2021 14:34 | Uploaded Correspondence To/From Charging Party (2021-11-23 1116 Email from Shannon Olson re Shannon Olson v. Takeda Pharmaceuticals NA - 52....msg) | PEDRO HERNANDEZ |
| 11/15/2021 14:44 | Uploaded Correspondence To/From Charging Party (2021-11-15 1345 Email from Shannon Olson re Shannon Olson v. Takeda Pharmaceuticals NA - 52....msg) | PEDRO HERNANDEZ |
| 11/15/2021 11:18 | Charging party recommended change to charge - 523-2022-00202 | (b) (6), (b) (7)(C) -CP |
| 11/10/2021 8:24 | Document Download : Correspondence To/From Charging Party (CP Information from CP 2.msg) | PEDRO HERNANDEZ |
| 11/10/2021 8:24 | Document Download : Correspondence To/From Charging Party (CP Information from CP 2.msg) | PEDRO HERNANDEZ |
| 11/2/2021 12:24 | Document Download : Correspondence To/From Charging Party (CP Information from CP 1.msg) | Evangeline Hawthorne |
| 10/27/2021 16:12 | Document Download : Correspondence To/From Charging Party (CP Information from CP 2.msg) | Mercedes Casasola |
| 10/27/2021 16:11 | Document Download : Correspondence To/From Charging Party (CP Information from CP 1.msg) | Mercedes Casasola |
| 10/27/2021 6:31 | Uploaded Correspondence To/From Charging Party (CP Information from CP 2.msg) | PEDRO HERNANDEZ |
| 10/27/2021 6:30 | Uploaded Correspondence To/From Charging Party (CP Information from CP 1.msg) | PEDRO HERNANDEZ |
| 10/25/2021 6:09 | A 1-day reminder notice is emailed to the PCP.. | Public Portal |
| 10/25/2021 0:00 | Case assigned to Pedro A. Hernandez | CARLOS BORGES |
| 10/19/2021 9:11 | A PCP confirms a scheduled appointment. | (b) (6), (b) (7)(C) -CP |
| 10/19/2021 6:08 | A 5-day confirmation notice is emailed to the PCP. | Public Portal |
| 10/15/2021 14:10 | Supplemental Information added/updated for 523-2022-00202 | (b) (6), (b) (7)(C) -CP |
| 10/15/2021 14:09 | Supplemental Information added/updated for 523-2022-00202 | (b) (6), (b) (7)(C) -CP |
| 10/15/2021 14:08 | Supplemental Information added/updated for 523-2022-00202 | (b) (6), (b) (7)(C) -CP |

16

Activity 175

523-2022-00202

| | | |
|---|---|---|
| 10/15/2021 14:07 | Appointment Scheduled by Shannon Olson (b) (6), (b) (7)(C)          ) for 10-26-2021 08:30 US/Eastern | (b) (6), (b) (7)(C)          -CP |
| 10/15/2021 14:04 | Inquiry automatically transferred to Tampa Field Office from Boston Area Office for intake interview by PCP choice. | (b) (6), (b) (7)(C)          -CP |
| 10/15/2021 14:03 | Supplemental Information added/updated for 523-2022-00202 | (b) (6), (b) (7)(C)          -CP |
| 10/15/2021 14:02 | Supplemental Information added/updated for 523-2022-00202 | (b) (6), (b) (7)(C)          -CP |
| 10/15/2021 13:57 | PCP confirms Preservation of Evidence Notice. | (b) (6), (b) (7)(C)          -CP |
| 10/15/2021 13:50 | Online inquiry submitted for Boston Area Office | (b) (6), (b) (7)(C) CP |