UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANNON OLSON,

      Plaintiff,

v.                                          Case No. 8:23-cv-590-TPB-CPT

TAKEDA PHARMACEUTICALS
AMERICA, INC., et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Before me on referral is Defendant Takeda Pharmaceuticals America, Inc.'s (Takeda) *Motion to Determine Entitlement to Attorney[s'] Fees and Expenses*. *See* (Doc. 84); *see also* M.D. Fla. R 7.01 (establishing a bifurcated procedure for parties claiming post-judgment attorneys' fees and related non-taxable expenses).[1] For the reasons discussed below, I respectfully recommend that Takeda's motion be granted.

I.

The background of this case is set forth in prior decisions of the Court (Docs. 54, 81) and therefore need only be summarized here. Plaintiff Shannon Olson initiated this action in March 2023 against Takeda, her former employer, as well as several of

---

[1] In accordance with Local Rule 7.01, Takeda specifies that it will seek approximately $318,869.50 in fees and expenses incurred as of the filing of its motion. (Doc. 84 at 12).

her former supervisors at that company. (Doc. 1). In her complaint, Olson—who is white—averred that she consistently received positive evaluations during her more than twenty-year tenure at Takeda but that she began experiencing problems after the appointment of Defendant Jodi Gayle-Garcia as her manager and Jordan Davis as her co-worker. *Id.* According to Olson, the harm she suffered at the hands of the Defendants included harassment, discrimination, and retaliation due to her race, religion, and disability. *Id.*

After Olson amended her complaint, several of the Defendants—including Takeda and Gayle-Garcia—moved to dismiss it. (Docs. 36, 37). In response, the Court entered an Order in November 2023 dismissing Gayle-Garcia and the other individual Defendants with prejudice, and dismissing the remainder of Olson's amended complaint without prejudice as a shotgun pleading (Doc. 54). Of significance here, in rendering these rulings, the Court questioned the viability of a number of the foundational matters upon which Olson predicated her revised complaint, explaining that "many of [the] . . . grievances" she alleged in that filing "d[id] not constitute adverse employment actions that c[ould] be addressed in a court of law." *Id.* at 7. The Court also stated that certain of Takeda's arguments challenging Olson's averments "appear[ed] to be well-taken." *Id.* at 8.

Despite the Court's concerns, Olson submitted a second amended complaint in December 2023 and filed a third amended complaint against Takeda the next day. (Docs. 55, 56). In the latter pleading, Olson asserted claims for race-based disparate treatment under Title VII, religious discrimination under Title VII and the Florida

2

Civil Rights Act (FCRA), and disability discrimination under the Americans with Disability Act (ADA) and the FCRA. (Doc. 56).

Takeda countered by again filing a motion to dismiss (Doc. 57), which the Court granted in part and denied in part in an Order issued in January 2024 (Doc. 62). In particular, the Court dismissed Olson's religious discrimination counts with prejudice—which Olson abandoned in her response anyway (Doc. 59 at 2 n.1)—but allowed the rest of Olson's claims to proceed, explaining that it "would be moving too quickly and too far" were it to jettison the entirety of Olson's operative complaint at that juncture (Doc. 62) (citation and footnote omitted). Notwithstanding this ruling, the Court continued to express skepticism regarding the merits of Olson's lawsuit, observing that "many of [her] allegations ultimately [might] not survive the threshold for adverse employment actions." *Id.*

In the ensuing months, the parties engaged in various forms of discovery. (Doc. 84 at 5). That discovery included Takeda taking Olson's deposition in August 2024, and Olson conducting Rule 30(b)(6) depositions of two of Takeda's corporate representatives. *Id.*; (Doc. 91 at 2); (Doc. 98 at 2 & n.1).

Shortly after the close of discovery in September 2024, Takeda moved for summary judgement with respect to all of Olson's claims. (Doc. 77). Olson did not challenge this motion or even present any evidence in opposition to it. (Doc. 81). Instead, Olson informed Takeda in November 2024 that it would stipulate to a "discontinuance" or "withdrawal" of the action. (Doc. 91 at 5); (Doc. 98 at 4). Takeda did not agree to this proposal, however, because that offer did not account for

the "significant attorneys' fees, costs, and expenses" Takeda expended in defending the lawsuit. (Doc. 98 at 4).

Roughly two months later, in January 2025, the Court granted Takeda's summary judgment motion, finding that Olson's "numerous grievances" against Takeda did not entitle her to any relief. (Doc. 81 at 1–2). The Court stated, in part:

> [Olson] . . . failed to and cannot establish any adverse employment actions . . . or otherwise show that [Takeda] discriminated against her in any way. [Olson] d[id] not point to *any* evidence of discrimination. . . . Most, if not all, of . . . [Olson's] complaints amount to the sort of petty slights that are simply not actionable. Even as to any possible adverse actions, [Olson] has not shown that [Takeda's] proffered reasons for the actions were false, or that the real reason for its conduct was discrimination.

*Id.* at 16.

Takeda's instant fee motion followed. (Doc. 84). After reviewing that submission, the Court directed the parties to confer about the matter to see if they could resolve it on their own. (Doc. 87). In a subsequently filed notice, the parties advised that while Olson "d[id] not dispute . . . [Takeda was] entitle[d] to some attorneys' fees and expenses," the parties could not reach an agreement "as to the extent of . . . [Takeda's] entitlement." (Doc. 88). Takeda's fee motion is now ripe for the Court's consideration.

## II.

Firmly ensconced in our legal system is the "American Rule" that each party "bear[s her] own litigation expenses, including attorney's fees, regardless [of] whether

4

[she] wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011). This rule admits of a number of exceptions, however, one of which is where a statute authorizes a court to shift fees from one party to another. *See id*. As both Olson and Takeda acknowledge in their respective filings, Title VII, the ADA, and the FCRA are three such statutes. *See Fierro v. Beaches Sandbar, Inc.*, 2007 WL 4247793, at *1 (M.D. Fla. Nov. 27, 2007) (noting that Title VII allows a court to award reasonable attorney's fees to the prevailing party) (citing 42 U.S.C. § 2000e-5(k)); *Lamb v. Falika, Corp.*, 2005 WL 5954969, at *1 (M.D. Fla. Oct. 4, 2005) ("The [ADA] provides that '[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs.'") (quoting 42 U.S.C. § 12205); *Burke-Fowler v. Orange Cnty., Fla.*, 2005 WL 8159821, at *1 (M.D. Fla. Dec. 30, 2005) (stating that the FCRA "authorizes an award of reasonable attorneys' fees to the prevailing party in a civil action" pursued under the Act) (citations omitted), *report and recommendation adopted*, 2006 WL 8439441 (M.D. Fla. Jan. 23, 2006).

Fee requests brought pursuant to Title VII, the ADA, and the FCRA are governed by the framework enunciated by the Supreme Court in *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n,* 434 U.S. 412, 419 (1978). *See Hamilton v. Sheridan Healthcorp, Inc.*, 700 F. App'x 883, 885 (11th Cir. 2017) (per curiam) (applying the *Christiansburg* standard to the prevailing defendants in a case involving a

5

Title VII claim);[2] *Hodges v. Publix Super Mkts., Inc.*, 372 F. App'x 74, 78 (11th Cir. 2010) (per curiam) ("When a prevailing party in an ADA case seeks attorneys' fees, [a] court should analyze the request according to the *Christiansburg* standard[.]"); *Burke-Fowler*, 2005 WL 8159821, at *1 (determining that the attorney's fee provision in the FCRA "is to be interpreted in conformity with federal case law construing entitlement to attorneys' fees under Title VII") (citations omitted); Fla. Stat. § 760.11(5) ("It is the intent of the Legislature that this provision for attorney's fees [in the FCRA] be interpreted in a manner consistent with federal case law involving a Title VII action.").

In *Christiansburg*, the Court ruled that when the prevailing party seeking fees is a defendant as opposed to a plaintiff, a more stringent standard is employed given the "different equitable considerations" involved.  *Christiansburg,* 434 U.S. at 419; *see also Head v. Medford*, 62 F.3d 351, 355 (11th Cir. 1995) (per curiam) (same); *Boler v. Space Gateway Support Co. LLC*, 290 F. Supp. 2d 1272, 1279 (M.D. Fla. 2003) (same).  Under this more rigorous standard, a court may award fees only where it "find[s] that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," or where the plaintiff continued to litigate the case after it "clearly became" frivolous, unreasonable, or without foundation. *Christiansburg,* 434 U.S. at 421–22.

Deciding whether a plaintiff's lawsuit was frivolous requires a case-by-case analysis.  *Head*, 62 F.3d at 355 (citing *Sullivan v. School Bd.*, 773 F.2d 1182, 1188–90

---

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

(11th Cir. 1985)). In performing this assessment, a court must ascertain whether the action was "so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Sullivan*, 773 F.2d at 1189 (quotation and citation omitted). Factors that are "important" in making this determination include: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Id*. (citations omitted).[3] In evaluating these factors, a court must view the evidence in the light most favorable to the non-prevailing plaintiff. *Johnson v. Florida*, 348 F.3d 1334, 1354 (11th Cir. 2003) (citation omitted).

In the end, although the above factors are helpful, they "are general guidelines only, not hard and fast rules." *Sullivan*, 773 F.2d at 1189 (referencing the three *Sullivan* factors). Indeed, "[r]igid application" of these factors "would lead to a result that Congress did not intend—that any defendant who prevailed on a dispositive motion would be entitled to fees." *Boler*, 290 F. Supp. 2d at 1280.

With these principles in mind, I turn to the merits of Takeda's fee motion, beginning with the question of whether Takeda qualifies as the prevailing party. I find

---

[3] The Eleventh Circuit "recognize[s] a fourth consideration" in 1983 actions—namely, "whether there was enough support for the claim to warrant close attention by the court." *Beach Blitz Co. v. City of Miami Beach, Fla.*, 13 F.4th 1289, 1302 (11th Cir. 2021); *see also Busby v. City of Orlando*, 931 F.2d 764, 787 (11th Cir. 1991) (per curiam) ("Our circuit has held that [a] plaintiff's section 1983 claims should not be considered groundless or without foundation for the purpose of an award of fees in favor of the defendants when the claims are meritorious enough to receive careful attention and review.") (citation omitted).

that it does.  As discussed earlier, the Court resoundingly rejected all of Olson's claims

during the pretrial phase of this action and even foreshadowed early on that such a fate

was likely awaiting Olson if she proceeded with her lawsuit.  *See* (Docs. 62, 81).  The

Court's disposition of Olson's claims in this manner renders Takeda the prevailing

party for purposes of Title VII, the ADA, and the FCRA, *see Head*, 62 F.3d at 354–55,

and Olson notably does not argue otherwise (Doc. 88 at 1).

Having resolved this threshold issue, I proceed to the three *Sullivan* factors, the

first of which—as referenced above—is whether Olson established a prima facie case.

*Sullivan*, 773 F.2d at 1189.  This factor plainly counsels in favor of a finding of frivolity.

As noted previously, the Court dismissed Olson's religious discrimination claims with

prejudice at the pleading stage, and with her agreement no less.  *See* (Doc. 62); *see also*

*Beach Blitz Co.*, 13 F.4th at 1302 (concluding that the first factor militated in favor of a

frivolity finding since the plaintiff's claims "were dismissed on the merits and without

leave to amend"); *Fleuranville v. Miami-Dade Cnty.*, 2024 WL 5284893, at *3 (S.D. Fla.

Dec. 13, 2024) ("[T]he first *Sullivan* factor weighs in support of finding [that the

p]laintiff's claims [were] frivolous because the claims were dismissed with prejudice.")

(citation omitted), *report and recommendation adopted*, 2025 WL 33548 (S.D. Fla. Jan.

6, 2025).  And the Court later granted summary judgment on Olson's remaining counts

for race and disability discrimination after she failed to respond to Takeda's summary

judgment motion or tender any evidence in opposition to it.  *See* (Doc. 81); *see also*

*Sullivan*, 773 F.2d at 1189 ("Cases where findings of 'frivolity' have been sustained

typically have been decided in the defendant's favor on a motion for summary judgment[.]  In these cases, the plaintiffs did not introduce any evidence to support their claims.") (collecting cases); *Angiolillo v. Collier Cnty.*, 394 F. App'x 609, 616 (11th Cir. 2010) (per curiam) ("We have sustained findings of frivolity where a motion for summary judgment has been granted in instances in which the plaintiff did not introduce any evidence in support of his claim.") (citing *Roper v. Edwards*, 815 F.2d 1474, 1478 (11th Cir. 1987) (per curiam)); *Hava v. City of Hollywood Fla.,* 2025 WL 475862, at *5 (S.D. Fla. Jan. 28, 2025) ("Where . . . [the] plaintiffs did not introduce *any* evidence at the summary judgment stage to support their claims and summary judgment was entered against them, courts have found the claims to be frivolous (for failure to establish a prima facie case).") (citations and footnote omitted), *report and recommendation adopted*, 2025 WL 472308 (S.D. Fla. Feb. 12, 2025).  Of particular import is the fact that the Court grounded its summary judgment decision, in part, on admissions Olson made during her deposition which severely undercut several of her claims.  *See*, *e.g.*, (Doc. 81 at 7) (observing that Olson's assertion she suffered an adverse employment action because "she was deprived of the opportunity to participate in . . . conference calls" conflicted with her concession "during her deposition that she received calendar invites to and presented during the calls at issue," and that "she [had] no knowledge of the calls having any impact on her employment"); *id.* at 8 (noting that Olson's allegation she experienced a "purported adverse action" when Takeda "asked her to reach out to Jordan Davis to see how he was coping with the death of George Floyd" was refuted by her deposition testimony that "she did not

appear to believe th[is] request was improper or even recall if she had any discussion with Davis"); *id*. at 11 (commenting that while Olson "appear[red] to assert that [Takeda] did not accommodate her short-term disability request," she "admit[ted] that she took her full short-term disability leave and was ultimately paid all short-term disability benefits").

The second *Sullivan* factor—whether Takeda offered to settle the lawsuit—presents a closer question. *Sullivan*, 773 F.2d at 1189.  Although Takeda does not say so directly, it intimates in its motion that it tendered a settlement proposal to Olson during court-ordered mediation.  (Doc. 84 at 11) (explaining that Takeda "attended the mediation in compliance with the Court's directive" but that it "made no *pre-* or *post*-mediation settlement offers" to Olson) (emphasis added).[4]  Notwithstanding its implicit acknowledgment that it tried to dispose of Olson's case for a monetary sum, Takeda asserts that this factor bolsters its fee request.  *Id.*

The Eleventh Circuit was confronted with a nearly identical argument in *Quintana v. Jenne*, 414 F.3d 1306 (11th Cir. 2005).  Akin to the situation here, the prevailing defendant in *Quintana* did "not deny making an offer of settlement, but maintain[ed] that any settlement offer should not be considered because it would have been made only as an attempt to comply with court-ordered mediation."  *Id.* at 1310. Stating that it was "unaware of any authority that would preclude [it] from considering a settlement offer made during mediation," the Eleventh Circuit decided that this

---

[4] Olson does not address whether Takeda provided her with a settlement offer at the mediation or otherwise.  *See* (Doc. 91).

factor was neutral where there was no evidence of "an offer of a substantial amount in settlement." *Id.* The court emphasized in this respect that the magnitude of a settlement offer "is a necessary factor in evaluating whether . . . [the] offer militates against a determination of frivolity" and that an offer must be a "sufficient amount" to buttress a finding that a claim "was not frivolous." *Id*.

Against this backdrop, I find the second *Sullivan* factor does not support either party in this action since it is unknown what monetary figure Takeda offered to resolve the lawsuit, much less whether that sum was "sufficient" or "substantial." *Id*.; *see also Hybrid Pharma LLC v. Knispel*, 2025 WL 1047108, at *3 (S.D. Fla. Feb. 25, 2025) ("In the absence of information about a settlement offer, [the second *Sullivan* factor] is neutral."), *report and recommendation adopted*, 2025 WL 909189 (S.D. Fla. Mar. 25, 2025); *Hava,* 2025 WL 475862, at *5 (finding that a defendant's offer to settle "for an undisclosed amount of money" is, "[a]t best, . . . a neutral factor") (citing *Quintana*, 414 F.3d at 1310).

The third *Sullivan* factor—whether the Court dismissed the case prior to trial or held a trial on the merits—clearly favors Takeda. *Sullivan*, 773 F.2d at 1189. As described herein, this case was in trouble from the start—as the Court presaged in its earlier Orders—and did not make it past the summary judgment stage, nor did Olson contend that it should. *See* (Docs. 54, 62, 81); *see also McDonough v. City of Homestead*, 2024 WL 4579663, at *2 (11th Cir. Oct. 25, 2024) (per curiam) (ruling that the third *Sullivan* factor bolstered a frivolity finding where the case was dismissed with prejudice

before trial) (citation omitted); *Hava*, 2025 WL 475862, at *5 (finding that the third *Sullivan* factor favored the defendant because it prevailed on summary judgment).

In sum, applying the three *Sullivan* factors, I conclude that Olson's lawsuit was "frivolous, unreasonable, or without foundation." *Christiansburg*, 434 U.S. at 421; *see also Quintana*, 414 F.3d at 1310 (deciding that a claim was frivolous where "[t]he first and third *Sullivan* factors support[ed such] a determination," and "the second factor offer[ed] no support for either party").

In an effort to avoid this conclusion, Olson raises essentially three arguments. (Doc. 91 at 1–2, 4–6). Before assessing the merits of these arguments, I note at the outset that Olson does not mention any of the *Sullivan* factors in her response, much less endeavor to apply them. Olson's failure to address the *Sullivan* factors in any meaningful way arguably constitutes a waiver on the matter and justifies granting Takeda's motion on that basis alone. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."), *overruled on other grounds in part by United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015); *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1286 n.3 (11th Cir. 2003) (deeming an issue to be abandoned where no argument was made) (citations omitted).

Irrespective of the waiver issue, Olson's arguments fail in any event. Olson's first contention is that she was acting in good faith in bringing her lawsuit, which she asserts was not frivolous or unreasonable at the time she filed her initial complaint.

(Doc. 91 at 1–2, 4).  In an attempt to support this claim, Olson asserts that Gayle-Garcia, her former manager, is the subject of another discrimination action in the Eastern District of Tennessee that was brought by a white male against a different company where Gayle-Garcia now works.  *Id.* at 4.

There are several problems with this argument.  To begin, the Supreme Court made clear in *Christiansburg* that an action can be frivolous "even though [it was] not brought in subjective bad faith."  *Christiansburg,* 434 U.S. at 421–22.  Furthermore, Olson's reliance on the Eastern District of Tennessee case is predicated solely on the plaintiff's allegations in that litigation, not on any findings or determinations rendered by a judge or jury in that case.  Moreover and more significantly, the Eastern District of Tennessee lawsuit was apparently filed nearly a year *after* Olson commenced this action and thus cannot possibly evidence her good faith in initiating this case.

Olson's second and related argument is that "[o]ther critical facts regarding the legitimacy of [her] claims only became known [to her] during [the] discovery" conducted in this litigation.   (Doc. 91 at 2–3, 5).  This contention centers on Olson's efforts to use Davis as "comparator" for purposes of her Title VII racial discrimination count.  As the Court explained in its summary judgment decision in this respect:

> To establish a Title VII racial discrimination claim[,] . . . a plaintiff must prove, among other things, that she was treated less favorably than a similarly situated individual outside her protected class.  A comparator must be similarly situated in all material respects, meaning that the plaintiff and the comparator must be sufficiently similar, in an objective sense and cannot reasonably be distinguished . . . .   Although minor differences in job functions will not be dispositive, a similarly-situated comparator will ordinarily[ ] have engaged in the same basic conduct as

the plaintiff; been subject to the same employment policy; had the same supervisor; and share the plaintiff's employment or disciplinary history.

(Doc. 81 at 9–10) (internal alterations, quotation marks and citations omitted).

Olson insists here she was wholly unaware that Davis was not a viable comparator until she took her Rule 30(b)(6) depositions of Takeda's corporate representatives late in the discovery period. (Doc. 91 at 2–5). Olson places the blame for this belated revelation squarely on Takeda, which she avers failed to disclose to her that Davis had previously been disciplined and terminated by Takeda. *Id.* This argument does not survive scrutiny.

As an initial matter, there are reasons to doubt Olson's assertion that she was in the dark relative to Davis's struggles at Takeda prior to the Rule 30(b)(6) depositions. *See* (Doc. 98 at 2). According to Takeda, Olson worked with Davis in a "two-person pod" and therefore would presumably have known of Davis's firing, which occurred "almost four years before [Olson] filed her lawsuit." *Id.* at 2–3. Takeda also maintains that it advised Olson in its pre-suit position statement that Davis was put on a performance improvement plan and then terminated.[5] *Id.*; (Doc. 98-1 at 12). Regardless of these points, Olson fails to articulate why she did not uncover this seemingly straightforward information concerning Davis's employment situation with Takeda while investigating her claims in advance of commencing this litigation.

---

[5] Takeda maintains that Olson downloaded its position statement on at least two occasions in 2022. (Doc. 98 at 3).

14

Olson's second argument is flawed in other respects as well. For one, this contention only pertains to Olson's racial discrimination claim and seemingly has no bearing on her religious, disability, and retaliation-based counts. For another, the Court found that Davis was not a viable comparator on her racial discrimination count in any event because Olson and Davis had "wildly different employment histories and job duties." (Doc. 81 at 10). As the Court highlighted in its summary judgment Order, this was because Olson "worked as a Field Senior Sales Representative and was employed by Takeda for twenty-three years, while Davis was a Sales Representative and new hire." *Id.* The Court additionally noted in its decision that Olson failed to identify any evidence showing Takeda treated Davis more favorably than her and that Olson even acknowledged in her deposition that she did not have any information to back up such an accusation. *Id.*

Olson's third argument is that she acted reasonably and in good faith by not contesting Takeda's summary judgment motion and by offering to "withdraw" her case. (Doc. 91 at 5). This contention is likewise unavailing. Olson's proposal to discontinue her lawsuit only after Takeda filed its summary judgment motion and only after she failed to respond to that submission rings hollow. (Doc. 84-1). By that point, Takeda had devoted substantial time and effort to this action, including by filing multiple dispositive motions, participating in court-ordered mediation, and engaging in discovery. In short, Olson's belated effort to terminate the ligation when she had no other viable option does not render her claims any less frivolous or her prosecution of the case any less unreasonable under *Christiansburg*.

15

III.

Based upon the foregoing, I respectfully recommend that Takeda's motion for a determination of its entitlement to attorney's fees and expenses (Doc. 84) be granted.

Respectfully submitted this 1st day of July 2025.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record