**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **SHANNON OLSON** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 8:23-cv-00590-TPB-CPT |
| | ) | |
| **TAKEDA PHARMACEUTICALS** | ) | |
| **USA, Inc., et al.,** | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE 60(b)**

I.    **INTRODUCTION AND RELEVANT BACKGROUND**

Plaintiff (hereinafter "Ms. Olson" or "Plaintiff") worked for Defendant (hereinafter "Takeda" or "Defendant") for over twenty-three (23) years as a pharmaceutical sales representative, receiving strong evaluations and peer recognition (**Exhibit A**). Plaintiff filed a Third Amended Complaint (Doc. 56) alleging Title VII, ADA, and FCRA claims, including retaliation and failure to promote.

On or around January 2020, at the Fast Start Meeting, Ms. Olson led the Trintellix training, dissected the Boulenger study, and prepared supplemental notes on depression and treatments. (**Exhibit. B**)

1

On or around January 13–23, 2020, Sample Operations notified Jordan Davis of a variance. Ms. Olson worked with him to find and correct errors across multiple months. On or around January 23, 2020, Sample Ops ("Tolliver Turner") emailed Davis about disbursements; Jodi Gayle-Garcia thanked Olson for her help (**Exhibits C and D**).

On or around January 21, 2020, Ms. Olson created district routing (North/South) and added new providers per management focus. Both Davis and Jodi praised her plan ("Looks great"). (**Exhibit. E.**)

In or around February–March 2020, Jodi directed Davis to seek clarification on compliance while thanking Olson for assistance (**Exhibit F**). Ms. Olson scrubbed provider lists, updated St. Pete contacts, and offered to assist with Vyvanse lists that Davis failed to complete (**Exhibit G**).

On or around March 3, 2020, Ms. Olson launched "Rep Life," an independent onboarding/mentoring program for Davis, Rebekah Timmel, and Brad Watson. Calls covered samples, expense reporting, product knowledge, competitor landscape, and more. (**Exhibit H**).

During the approximate months of June–Oct 2020, Ms. Olson co-prepared management briefs on field access (June 1, 2020), circulated routing workbooks (June 6, 2020), updated provider records (July 16, 2020), prepared overlap reports

(August 8, 2020), and updated COVID target lists (October 21, 2020). (**Exhibits I, J, K, L, and M,** respectively).

Approximately, during 2020–2021, Ms. Olson authored extensive training materials, including Trintellix savings ROI, coupon utilization, clinical cognition data, receptor reviews, objection handlers, and best-practice trackers. (**Exhibit N**).

Throughout 2020, Ms. Olson was repeatedly recognized by peers and managers, including multiple commendations from Jodi Gayle-Garcia, Angie Warner, Debbi Owen, Milton Sanchez, Joanne Bottomley, USBU leadership, and others. Examples include: "Thank you for breaking down the Trintellix Copay report".

During the year 2021, despite this record, Takeda denied Ms. Olson a promotion to Territory Manager, citing a warning letter. At the same time, Ms. Olson continued to shoulder Davis's compliance issues without advancement. (**Exhibit O**).

Beginning in approximately March 2024**,** attorney Justin Gilbert, who represented an individual) In related litigation involving the same supervisor (Jodi Gayle-Garcia), Ms. Olson discovered this case through a PACER search. Mr. Gilbert promptly contacted Mr. Yoder's office after learning of a potential factual overlap that could benefit both clients.

- On or about March 22, 2024, Mr. Gilbert spoke directly with Mr. Yoder
  after multiple attempts and was assured that information could be
  shared.

- In the following weeks, Mr. Gilbert repeatedly followed up by phone
  and email with Mr. Yoder and his assistant ("Kate"), and later with co-
  counsel "Rachel."

- No messages were ever returned. By May 2024, Mr. Gilbert concluded
  that he could not ethically contact Ms. Olson directly because she
  remained represented.

This was only recently discovered by the undersigned after his various
lengthy attempts to retrieve the case file from Plaintiff's prior counsel, which
took longer than a month to get finally. Plaintiff's counsel received the
confirmation of the attempts, and they are annexed hereto as **Exhibit U.**

Around the same time, it is under information and belief, based on public
record, that Mr. Michael Alan Yoder, Esq, was under investigation from several
Bar Associations, to which there have been Bar-Disciplinary findings and/or
actions against him, including but not limited to suspensions and/or license
forfeiture (equivalent of a disbarment). Ms. Olson was never notified of this, and

he seemingly remained on the case. He did not notify this Court and is seemingly still on the docket (**Exhibit T***)*.

On or about September 27, 2024, Defendant filed for summary judgment (Doc. 77). Plaintiff's prior counsel failed to oppose despite conversations regarding the opposition and an expectation that her prior counsel was filing one. On or about January 29, 2025, this Court granted judgment for Defendant (Doc. 81). New counsel has since located substantial evidence, including deposition testimony and declaration of supervisor Jodi Gayle-Garcia and contemporaneous recognition materials (**Exhibits V and U**).

## II.    **LEGAL STANDARD**

Rule 60(b) permits relief from judgment based on (1) mistake, inadvertence, surprise, or excusable neglect, and (6) any other reason justifying relief. Relief under Rule 60(b)(1) must be filed within one year; Rule 60(b)(6) requires a reasonable time. Attorney abandonment and gross neglect may justify relief. See *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986); *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993).

This motion is filed within one year of the January 29, 2025, judgment (Rule 60(b)(1)) and within a reasonable time under Rule 60(b)(6).

## III.    **DISCUSSION**

### A. **PRIOR COUNSEL ABANDONED PLAINTIFF**

Prior Counsel ignored multiple outreach attempts, failed to respond to dispositive motions, and withheld key evidence. This conduct constitutes abandonment, not mere negligence. See *United States v. Cirami*, 563 F.2d 26, 34 (2d Cir. 1977).

Plaintiff's prior counsel, Michael Alan Yoder, entirely abandoned her case. Despite possessing critical evidence and repeated outreach from third parties offering corroboration, counsel failed to file any opposition to summary judgment or communicate with Plaintiff (**Exhibit X**).

Beginning in March 2024, attorney Justin Gilbert discovered this case through a PACER search. Mr. Gilbert promptly contacted Mr. Yoder's office after learning of potential factual overlap that could benefit both clients.

On March 22, 2024, Mr. Gilbert spoke directly with Mr. Yoder after multiple attempts and was assured that information could be shared.

In the following weeks, Mr. Gilbert repeatedly followed up by phone and email with Mr. Yoder and his assistant ("Kate"), and later with co-counsel "Rachel."

**No** messages were ever returned. By May 2024, Mr. Gilbert concluded that he could not ethically contact Ms. Olson directly because she remained represented.

Contemporaneous email correspondence confirms these efforts and the complete breakdown of communication. Once undersigned counsel entered an appearance, Mr. Gilbert immediately provided the same materials to new

counsel and met personally with Ms. Olson to share corroborating information about Takeda management.

This was not mere neglect; it was total abandonment. The Eleventh Circuit recognizes that such dereliction constitutes an extraordinary circumstance warranting relief under Rule 60(b). See *United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977).

By contrast, *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130 (11th Cir. 1986), denied Rule 60(b) relief where counsel's conduct amounted only to inadvertence or ordinary negligence. Here, however, Mr. Yoder's complete failure to respond, compounded by corroborating witness evidence and Bar-disciplinary findings, far exceeds the threshold of neglect addressed in *Solaroll*.

### B. PLAINTIFF HAS MERITORIOUS CLAIMS

Relief under Rule 60(b) also requires a showing that the underlying claims have potential merit. Plaintiff's claims, supported by extensive, previously unsubmitted evidence, amply satisfy that standard.

Disparate treatment is evidenced throughout the evidence and discovery. However, additional information was reasonably accessible to Plaintiff's prior counsel, which they blatantly ignored. Plaintiff's prior counsel would've had

access to Jodi Gayle-Garcia's deposition transcript or key points that would've further supported Plaintiff's claims. Jodi Gayle-Garcia admitted Plaintiff mentored Jordan Davis, corrected compliance errors, and created training programs. This demonstrates adverse treatment and extra burdens without advancement (**Ex.'s V and W)**

Additionally, the Court concluded that mentoring Davis was part of Plaintiff's normal duties. But the record shows otherwise: Jodi and "Sample Ops" ***directed*** Davis to rely on Olson and thanked her for correcting his errors and producing. These are not voluntary acts; they were imposed. Under *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), disadvantageous changes in work assignments can constitute adverse actions.

Failure to Promote is also evidenced in this case throughout discovery. Despite performing managerial tasks and earning praise, Plaintiff was denied promotion to Territory Manager in 2021. Defendant's reliance on a warning letter is pretextual. See *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Moreover, Defendant cited a warning letter, and the Court found no evidence of pretext. Yet, contemporaneous evidence shows that Ms. Olson was already performing managerial duties, including leading district trainings, mentoring new hires, creating compliance programs, and being publicly recognized by managers. The warning letter was given after the performance review and knowledge that

promotion was not given, which defines pretextual. This undermines Defendant's justification and permits a finding of pretext. *Id.*

Retaliation & Disability Discrimination is highlighted throughout this case, as well as being reasonably accessible to Plaintiff's prior counsel, which was deliberately and blatantly ignored. Jodi admitted awareness of Plaintiff's disability leave. Increased scrutiny and burdens followed. This supports ADA and retaliation claims. The Court found no evidence that management knew of Plaintiff's short-term disability leave. Yet deposition testimony and Ms. Olson's affidavit confirm management's awareness. Following her leave, Ms. Olson faced increased burdens and scrutiny. This evidence fills the gap identified by the Court.

Jodi acknowledged Jordan Davis's repeated mistakes and leniency, while Plaintiff bore responsibility for correcting them. This provides valid comparator evidence. See *Lewis v. City of Union City*, 918 F.3d 1213, 1227 (11th Cir. 2019). The Court found Davis to be an invalid comparator. However, contemporaneous records indicate that Davis repeatedly committed compliance errors and was treated leniently, whereas Ms. Olson corrected his mistakes (**Ex. X**). Under *Lewis v. City of Union City*, 918 F.3d 1213, 1228 (11th Cir. 2019), Davis is a proper comparator because he was similarly situated in material respects (same supervisor, same basic job requirements)

Combined, these facts form a "convincing mosaic" of discrimination. See *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Here, the Court found no mosaic. But the withheld evidence, including managerial reliance on Ms. Olson, recognition notes, disability-leave awareness, comparator treatment, and denial of promotion, creates precisely the circumstantial mosaic recognized by *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). This would be enough to survive a motion to dismiss and would be up to a jury to decide.

Based on the foregoing and annexed exhibits, Count I of the Amended Complaint (Disparate Treatment (Race Discrimination) Statute: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) would be a meritorious claim. Most notably:

- Plaintiff, a Caucasian female, was treated less favorably than similarly situated non-Caucasian coworkers. Evidence shows she was required to correct Jordan Davis's repeated compliance errors, handle his routing and reporting duties, and assume leadership functions without recognition or advancement; and

- Jodi Gayle-Garcia's deposition confirms Plaintiff's central role in mentoring Davis and her responsibility for team oversight.

Despite these leadership functions, Plaintiff was denied promotional opportunities extended to others. Her superior performance evaluations and dozens of written commendations directly contradict Defendant's assertion that she suffered no adverse employment action. This evidence demonstrates a triable question of disparate treatment and pretext under *McDonnell Douglas* and a "convincing mosaic" of discrimination under *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

Additionally, based on the foregoing and annexed exhibits, Count IV (Disability Discrimination (ADA)) of the Amended Complaint would be a meritorious claim. More specifically,

1. **Failure to Accommodate (Short-Term Disability Leave)**

   - Plaintiff took approved short-term disability leave in 2019 for PTSD and depression. She was initially denied benefits but was later reinstated after an appeal. Evidence shows Takeda's management, including Jodi Gayle-Garcia, was aware of her medical condition and leave.
   - Defendant's handling of the leave process, requiring her to work and provide unnecessary documentation, constitutes a denial of reasonable accommodation.

2. **Disparate Treatment (Based on Disability)**

   - Upon returning from leave, Plaintiff was subjected to differential treatment and increased scrutiny not applied to nondisabled peers. Emails and deposition testimony confirm that management publicly questioned her competence and reduced collaborative opportunities.

3. **Failure to Promote**

- Despite performing managerial functions, Plaintiff was deemed ineligible for promotion to Territory Manager due to a purported "warning letter." Defendant's explanation is pretextual, given Plaintiff's extensive leadership record and recognition for team development. The promotion denial was learned when a performance review was done with Matt Hand, which was prior to the warning letter.

### 4. Retaliation for Taking Leave

- Following her protected short-term disability leave, Plaintiff faced reduced assignments and negative commentary. This retaliatory treatment was causally linked to her use of protected rights under the ADA. See Higdon v. Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004).

### 5. Hostile Work Environment

- Plaintiff endured persistent marginalization, removal from team communications, and dismissal of contributions. The cumulative conduct altered the terms and conditions of her employment and created an abusive environment based on disability. See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

Finally, based on the foregoing and annexed exhibits, Count V (Disability Discrimination (FCRA)) would be a meritorious claim. Specifically, because the same conduct violates the ADA, it also violates the FCRA, which is interpreted in pari materia with federal law. See *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). Plaintiff's performance and the disparate treatment following her leave create factual disputes precluding summary judgment.

Had prior counsel filed an opposition and submitted these materials, the Court could not have found "no record evidence" supporting Plaintiff's claims. At a minimum, genuine disputes of material fact exist under Rule 56(a).

## C.  MANIFEST INJUSTICE

Plaintiff lost not on the merits, but due to counsel's abandonment. Relief is necessary to avoid manifest injustice. See *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). A Plaintiff should not be prejudiced or harmed by the omission, inaction, and/or gross negligence of their attorney(s). Rule 1 mandates adjudication on the merits. Again, Plaintiff lost because of counsel's abandonment, not because her claims lacked merit. Denying relief rewards neglect and undermines confidence in the judicial process. *Id*.

Moreover, newly obtained Bar disciplinary decisions corroborate that Ms. Olson's counsel engaged in the same misconduct toward multiple clients during the same period—neglect, failure to communicate, and abandonment resulting in dismissals. (**Ex. T**).

To allow judgment to stand despite those official findings would impose a manifest injustice and erode public confidence in the legal system. *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (emphasizing resolution on the merits).

## D. IN THE ALTERNATIVE, THE FINAL JUDGMENT FOR ATTORNEY'S FEES SHOULD BE SHIFTED TO PLAINTIFF'S PRIOR COUNSEL

As an equitable alternative, Plaintiff requests the Court condition relief on her former counsel reimbursing Defendant's reasonable fees incurred in this matter due to the foregoing facts that support Plaintiff's claims of attorney abandonment and gross negligence/malpractice. See *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 931 (5th Cir. 1976). The withheld or failure to oppose and include the following highlights that.

Adverse Action: Emails show duties beyond Olson's role imposed on her.

Comparator: In addition to what was explained earlier in this motion, Davis was repeatedly leniently treated despite compliance errors, while at the same time endorsed by management for a secondary income when evidence shows he was performing and producing second to last in a region, which prior counsel had as evidence. Additionally:

- Both Ms. Olson and Mr. Davis reported directly to District Manager Jodi Gayle-Garcia, sold the same Takeda neuroscience products (Trintellix, Vyvanse, Mydayis), and were evaluated under the same performance metrics and compliance policies.

- Deposition testimony and contemporaneous emails (January - February 2020) show that Davis repeatedly committed sample-compliance violations and data-entry errors that required Ms. Olson's intervention. Instead of disciplining Davis, management directed Ms. Olson to correct

his mistakes—an assignment outside her role—and praised Davis for improvements she actually implemented.

- When Ms. Olson later took protected leave and raised concerns about workload disparity, management treated her with suspicion, scrutinized her reports, and withheld promotional opportunities. Davis, by contrast, received continued support and was never formally reprimanded for conduct that would have justified discipline under company policy.

- The disparate treatment occurred within months of one another, under the same supervisor, eliminating any argument that policy or personnel changes explain the difference.

Disability Awareness: The Court's summary-judgment ruling incorrectly concluded that "Plaintiff has not identified evidence showing that management knew of any disability." (Doc. 81 at 12). That conclusion stemmed solely from counsel's failure to submit readily available evidence. In fact, the record, including deposition testimony from District Manager Jodi Gayle-Garcia and contemporaneous correspondence, shows that Takeda management possessed *direct knowledge* of Ms. Olson's PTSD, depression, and related short-term disability leave (**Ex's V and W**).

**Direct Acknowledgment of Leave and Medical Condition:**

- Jodi Gayle-Garcia testified that she was aware Ms. Olson took medical leave in 2021 and that she had communicated with Human Resources and the company's disability coordinator regarding Ms. Olson's status. (**Ex. W**)

- Ms. Gayle-Garcia further admitted she received internal updates about Ms. Olson's anticipated return-to-work date and restrictions. *Id.*

- Email correspondences from HR to Ms. Gayle-Garcia specifically reference "Shannon Olson's STD claim," confirming managerial awareness.

**Post-Leave Conduct Demonstrates Knowledge and Retaliatory Animus**

- Upon Ms. Olson's return, management reduced her territory coverage and reassigned certain accounts under the pretext of "business realignment," while leaving similarly situated representatives unaffected.

- Supervisors repeatedly referenced her "time away" and "personal challenges," evidencing both knowledge and discriminatory motive.

- Ms. Gayle-Garcia admitted in deposition that she discussed Ms. Olson's "time off for health reasons" with other district members, further proof that management was aware and treated the issue as a factor in employment decisions.

**Legal Significance of Knowledge**

Under Eleventh Circuit precedent, an employer's awareness of an employee's disability or protected leave is a prerequisite to liability for discrimination or retaliation. Where knowledge is shown and subsequent adverse actions follow, a jury may infer causation. *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004). Here, Takeda's documented awareness satisfies the knowledge element and supports a causal nexus between Ms. Olson's protected activity and the adverse treatment she suffered afterward.

**Failure to Accommodate and Interference with Leave**

- Despite her approved short-term disability status, Ms. Olson was asked to remain available for work-related communications and was pressed to provide additional medical documentation beyond what policy required.

- When she requested an extension consistent with her physician's recommendation, management delayed approval, creating undue stress and disruption. (**Ex. U**).

- Such actions constitute interference with reasonable accommodation under the ADA and FCRA. See Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1194 (11th Cir. 2004).

Had this evidence been presented, the Court could not have found a lack of awareness. The combination of HR correspondence, managerial admissions, and post-leave conduct establishes both actual knowledge and discriminatory/retaliatory motive, satisfying a key element of Counts IV and V. The omission of this material by prior counsel prejudiced Ms. Olson and justifies reopening under Rule 60(b).

Pretext: Evidence that Ms. Olson was compelled to remediate Davis's non-compliance while being denied credit and advancement supports a reasonable inference that Defendant's proffered reasons for adverse actions were pretextual. See *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008) ("Inconsistent discipline of comparators may show pretext."). In *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), the court held that differential treatment of employees engaged in similar conduct "is the essence of a disparate-treatment claim." Here, Ms. Olson's record shows she was disciplined, marginalized, and denied promotion for conduct tolerated in Davis and others.

Mosaic: The combination of these facts creates the type of circumstantial mosaic required by Eleventh Circuit precedent.

Because prior counsel failed to present this comparator evidence, the Court's ruling rests on an incomplete record. Rule 60(b) relief is necessary to correct that

18

manifest injustice and to permit adjudication on the true merits of Plaintiff's discrimination claims.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order:

1. Vacate the January 29, 2025, judgment;

2. Reopen this case to allow Plaintiff to oppose Defendant's summary judgment; and

3. Alternatively, condition relief on Plaintiff's prior counsel bearing Defendant's reasonable fees and costs.

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), the undersigned certifies that counsel for the parties have conferred, and Defendant does not consent to any aspect of this motion.

Respectfully submitted October 14, 2025.

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**

By: /s/ *Jared M. Wichnovitz*
Jared M. Wichnovitz, Esq.
*Pro Hac Vice Granted*

N.J. Bar I.D. Number 414022022
50 Harrison Street, Suite 206, P.O. Box 631
Hoboken, New Jersey 07030
Phone: (732) 765-2157
Fax: (732) 358-0178
Email: Jared@WichnovitzLaw.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 14, 2025, a true copy of the foregoing Plaintiff's Rule 60(b) Motion and annexed exhibits was filed and served upon all parties and counsel of record via PACER'S ECF.


/s/ *Jared M. Wichnovitz*

Jared M. Wichnovitz, Esq.