## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHANNON OLSON,

           Plaintiff,

    v.

TAKEDA PHARMACEUTICALS
AMERICA, INC.,

           Defendant.

Case No: 8:23-CV-00590-TPB-CPT

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DETERMINE ENTITLEMENT TO ATTORNEY'S FEES AND EXPENSES

## I.    INTRODUCTION

Eight-and-a-half months after summary judgment was entered—and only after the Court determined that Takeda is entitled to fees—Olson now makes a last-ditch effort to avoid the inevitable. She requests Rule 60(b) relief without identifying any legitimate grounds for it under relevant precedent. She rehashes the same merits-based arguments that either her prior counsel (correctly) determined were not viable or that this Court has already deemed insufficient. And in a request that gives away the game, she asks that fees be shifted to her counsel, despite that the request is inconsistent with the statutes at issue. For these reasons, which are discussed below, Olson's motion should be denied.

## II.    DISCUSSION

### A.    Olson Cannot Move for Relief Under Both Rule 60(b)(1) and 60(b)(6).

Throughout her motion, Olson fails to identify the particular provision of

Rule 60(b) to which her specific arguments are intended to correspond. Instead, she merely states in the "Legal Standard" section of her brief that "Rule 60(b) permits relief from judgment based on (1) mistake, inadvertence, surprise, or excusable neglect, and (6) any other reason justifying relief," and then cites the time limitations applicable to each provision. (Dkt. 114, at 5.)

Olson's effort to rely on both provisions is foreclosed by binding precedent. That is because the Eleventh Circuit "consistently has held that Rule 60(b)(1) and (b)(6) are mutually exclusive. Therefore, a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)." *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986); *accord Bouazizi v. Hillsborough Cty. Civ. Serv. Bd.*, 844 F. App'x 135, 141 (11th Cir. 2021) ("That claim we already addressed under Rule 60(b)(1); having found it unsuccessful there, she cannot resuscitate it under Rule 60(b)(6)."); *Firestone Building Prods. Co. v. Ramos*, 750 F. App'x 777, 783 (11th Cir. 2018) ("Because (b)(1) and (b)(6) are mutually exclusive, the district court could not grant relief for attorney negligence under (b)(6).").

### B.   Olson Has Not Identified Any Viable Ground for Relief Under Rule 60(b)(1) (or 60(b)(6)).

Olson's claims next fail because her motion simply does not provide any basis for this Court to grant Rule 60(b). It does not demonstrate that Olson personally exercised diligence. It does not point to conduct of her counsel—i.e., her agents—that warrants Rule 60(b) relief. And it does not provide evidence sufficient to show that Olson has a viable claim that could survive summary judgment.

1.    *Olson Presented No Evidence that She Exercised Diligence or
Adequately Monitored Her Case.*

Olson's arguments for Rule 60(b) relief, at their core, amount to a series of

after-the-fact complaints about her attorneys' handling of her lawsuit. But the

Court need not even reach those arguments because Olson wholly ignored her

*personal* failure to exercise diligence, as required by Eleventh Circuit precedent.

It is well-established that, to establish an entitlement to relief under Rule

60(b)(1), "[a]t the very least, a party must demonstrate his own diligence, even

where the attorney commits gross misconduct." *SEC v. Simmons*, 241 F. App'x

660, 664 (11th Cir. 2007). Thus, Olson cannot simply "blame[ her] attorney." *SEC

v. Toups*, No. 8:16-cv-1798-T-27AEP, 2019 WL 4992388, at *2 (M.D. Fla. Oct. 7,

2019). Instead, she must demonstrate that she complied with her "duty to monitor

the case," including by "mak[ing] reasonable inquiries into the status of the case."

*Simmons*, 241 F. App'x at 664. That duty includes not only personally monitoring

the case and communicating with her attorney, but also "inquir[ing] of the Court

as to the status of her case in the event that she is unable to contact her attorney."

*Ake v. Mini Vacations, Inc.*, 174 F.R.D. 110, 112 (M.D. Fla. 1997).

Here, Olson was well aware of the summary judgment motion at the time it

was filed. Indeed, Olson filed a motion for an extension of time to respond to the

same, in which it was noted that Olson was in active communication with her

counsel concerning the same. (Dkt. 78 ¶¶ 9–10.) Even in her submissions with the

instant motion, Olson admits to "communicat[ing] with [her counsel] regarding

Defendant's summary judgment motion" and providing "evidence and documents"

3

to her counsel in connection with the same. (Dkt. 114-2, at 168–69 ¶¶ 25, 27.)

Olson's response to the summary judgment motion was due on November 1, 2024 (Dkt. 79), and the Court entered its order granting the motion on January 29, 2025 (Dkt. 81.) Olson's claim that she was unaware that no summary judgment response was being filed is simply false. (Decl. of Rachel Dreher ¶¶ 2–3.[1]) To the extent she somehow now claims ignorance, Olson's motion is devoid of *any* evidence that she exercised diligence during the three months between the summary judgment response deadline and the Court's entry of its order. She does not claim that she monitored the case docket, which would have made clear no response was filed. She does not claim that she asked her counsel whether a response had been filed. And she does not claim that, if she had any issues with counsel's responsiveness, she made any inquiry to the Court as to the status of her case. *See Ake*, 174 F.R.D. at 112 (noting that each of the foregoing would be needed to demonstrate diligence). That absence of diligence by Olson is only heightened by her admitted awareness of the motion before her response was due—and thus for months before the Court granted its summary judgment order. *See Toups*, 2019 WL 4992388, at *2 (noting a failure to satisfy "the duty to monitor the progress of [the] case" when the party "learned of the motion before it was granted").

Equally problematic, Olson presents no evidence that she acted diligently

---

[1] Dreher's declaration was submitted with Takeda's contemporaneously filed motion to seal, which also requested leave for text messages to be submitted for *in camera* review. Given that motion, Takeda has limited the description of its specific contents in this Brief. Takeda, however, directs the Court to the declaration for additional relevant detail for this and any other citation to Dreher's declaration.

after becoming aware of the order being entered. That is, she has presented no coherent explanation why she waited *eight-and-a-half months* after the summary judgment order was entered to raise any issue with the Court. In the meantime, she allowed Takeda to file a motion for attorneys' fees and only submitted the instant motion months after the Court entered an order finding that Takeda was entitled to a fee award. (Dkts. 84, 88, 107–08; *see also, e.g.*, *Simmons*, 241 F. App'x at 664 ( "waiting over four months" precluded relief); *Valdez v. Feltman*, 328 F.3d 1291, 1298 (11th Cir. 2003) (two-month delay was too long).)

Simply put, to be entitled to Rule 60(b) relief under Eleventh Circuit precedent, Olson was required to show that she *personally* exercised diligence, both while the motion for summary judgment motion was pending and after the Court ruled on it. She has not presented sufficient evidence on either front.

2. *Olson Was Not "Abandoned," and the Matters She Raises Are Not Grounds for Rule 60(b) Relief.*

Even had Olson presented evidence that she discharged her diligence-related obligations (she did not), her motion would still fail because she has not cited any viable grounds for relief under Rule 60(b). Although Olson attempts to characterize the matters at issue as "abandonment," what her motion outlines are three *strategic decisions* of her counsel: (1) her counsel allegedly not engaging with an attorney handling a case involving a different defendant in Tennessee; (2) her counsel deciding that no good-faith basis existed to oppose Takeda's summary judgment motion; and (3) her counsel's "failure" to submit evidence that Olson appends to her motion. (Dkt. 114, at 6–7; Dreher Decl. ¶¶ 4–5.)

As an initial matter, "strategic miscalculation[s] and misinterpretations of the law do not warrant relief from judgment under Rule 60(b)." *In re Bonfiglio*, No. 18-8004, 2018 WL 5295879, at *4 (6th Cir. Oct. 24, 2018); *accord Chavez-DeRemer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 416 (4th Cir. 2025) ("[S]trategic decisions made during the course of litigation—even if later second-guessed—will not justify relief under Rule 60(b)(6)."); *Gulf Power Co. v. Coalsales II, LLC*, No. 3:06cv270/MCR/MD, 2011 WL 3269412, at *1 (N.D. Fla. July 29, 2011) ("Rule 60(b)(6) should be only sparingly used and may not be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." (quoting *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (internal quotation marks omitted)). Similarly, "represented parties are not entitled to relief simply because they were penalized by the omissions of counsel"—strategic or not. *United States v. Davenport*, 668 F.3d 1316, 1325 (11th Cir. 2012). That is because "a person voluntarily chooses his or her attorney as their representative and, therefore, the client cannot avoid the consequences of this choice in the event of acts or omissions by the attorney." *Ake*, 174 F.R.F. at 112.

And each of the specific issues raised by Olson has been determined by courts to be insufficient to justify Rule 60(b) relief. The Eleventh Circuit has expressly rejected that counsel "failing to present evidence" and "failing to [make] arguments" provide grounds for a viable Rule 60(b) motion. *Bouazizi*, 844 F. App'x at 140. It has similarly rejected the argument that counsel "chos[ing] to ignore the deadline to respond to [a] Motion for Summary Judgment" can serve as a basis for

relief under Rule 60(b). *Ramos*, 750 F. App'x at 783; *accord Bouazizi*, 844 F. App'x at 140 ("failing to respond to motions in a timely manner" was insufficient).

Moreover, the "evidence" Olson references is, in reality, evidence of nothing relevant to Takeda's motion for summary judgment. Olson complains that her counsel did not communicate with an attorney representing a different plaintiff suing a different defendant, concerning a timeframe after Jodi Gayle-Garcia had already left Takeda. Unsurprisingly, Olson presents no argument as to why any such communication would have any relevance to her summary judgment motion, because it plainly could not have. Olson already raised arguments concerning the relevance of this separate case, which the Court rejected. (Dkt. 107, at 13, *R&R adopted by* Dkt. 108.) Similarly, although Olson now submits supposed "key" evidence, she ignores that it has no bearing on the arguments presented in Takeda's summary judgment motion or resolved in the order on the same. She also fails to explain why, through her own diligence, she was unable to ensure that all such documentation was produced during discovery, as was her obligation.

Finally, Olson was not "abandoned."[2] Indeed, between Michael Yoder and Rachel Dreher—*her other counsel, who her motion disingenuously attempts to*

---

[2] Nor does Olson cite authority indicating that supposed "abandonment" under the facts presented here would warrant Rule 60(b) relief. She cites only *United States v. Cirami*, 563 F.2d 26 (1977) to support her argument. But the contentions she raises are not even remotely analogous to a situation in which counsel falsely claimed filings had been made, with the failure due to a "mental disorder." *Id*. at 34. Nor was *Cirami* analyzed under the standards that apply in this Circuit.

*ignore*[3]—Olson responded to multiple motions to dismiss; responded to discovery requests, including by making document productions; defended Olson's deposition; took two 30(b)(6) depositions; and served discovery requests on behalf of Olson. (Dkts. 43, 59; Dkt. 84, at 5; Decl. of Andrew McKinley, Exhibit A, ¶ 2.) Dreher communicated with Olson concerning her summary judgment motion, filed a motion to extend the deadline for responding to the same, and ultimately made a strategic decision concerning the summary judgment motion, based on information learned in discovery. (Dreher Decl. ¶¶ 2, 5.) Even after the strategic decision not to oppose the summary judgment motion was made, Dreher continued to act on behalf of Olson and made multiple filings, including an opposition to Takeda's fee-related motion. (Dkts. 88–89, 91, 97.)

To the extent Olson believe she has some genuine dispute with her counsel—though that is doubtful, given the frivolity of her claims—she is free to consider appropriate steps concerning them. *See, e.g.*, *Choice Hotels Int'l Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015) ("When lawyers fail, the remedy is malpractice litigation against the wrongdoer, not more litigation against an innocent adversary in the original litigation."); *Easley v. Kirmsee*, 382 F.3d 693, 700 n.6 (7th Cir. 2004) ("[A plaintiff] cannot employ her attorney's unprofessional conduct as a mechanism for reopening her cause of action against the defendants. . . . [Plaintiff] should not be permitted to shift the burden of its agent's neglect to the district

---

[3] Because Olson was also represented by Dreher, her assertions concerning disciplinary matters for Yoder in other matters are irrelevant and do not change the fact that she was adequately represented by counsel at the relevant time.

court and the defendants."). But Rule 60(b) is not an appropriate vehicle for the grievances she now raises, and her motion must be denied.

>   *3.     Olson Has Not Presented the Court Anything that Would Change the Court's Summary Judgment Ruling.*

Olson's request for Rule 60(b) relief also fails because she has not presented evidence of a "meritorious [argument] that might have affected the outcome" as to any (let alone all) of the claims on which the judgment was based. *See Simmons*, 241 F. App'x at 664; *accord, e.g.*, *Creighton v. Dep't of Transp.*, No. 6:13-cv-907-Orl-18TBS, 2014 WL 11456887, at *2 (M.D. Fla. July 14, 2014) (denying a Rule 60(b) motion when plaintiff had not shown an argument that "he would have included in a response to [a dispositive motion] that would affect the outcome of the case"); *Ake*, 174 F.R.D. at 112 (noting that, even when a basis for Rule 60(b) relief exists, a plaintiff "still must establish that she has a meritorious claim"). Such a showing requires "a clear and definite recitation of the facts" that would require a different ruling, *Vazquez v. Uooligan Gas Station Convenience Store Inc.*, No. 218CV611FTM38NPM, 2021 WL 75127, at *2 (M.D. Fla. Jan. 9, 2021), based on evidence, *Grant v. Pottinger-Gibson*, 725 F. App'x 772, 777 (11th Cir. 2018).

That Olson cannot meet this standard is entirely unsurprising, given that Takeda's motion for summary judgment (Dkt. 77) and the Court's order (Dkt. 81) relied—overwhelmingly—on Olson's own deposition testimony. While Olson now presents a series of disjointed arguments in defense of her claims, they serve only to reinforce that her claims had no factual merit and that her former counsel's *strategic* decision not to file an opposition to Takeda's summary judgment motion

the correct one under Rule 11. Olson's arguments as to race- and disability-based
claims will be discussed in the following sections, in turn.

> a.    Olson Has Not Shown Any Facts that Would Change the
>        Court's Judgment as to Her Race Claims.

In presenting her Rule 60(b) arguments, Olson almost entirely ignores the
grounds actually outlined by the Court as requiring summary judgment on her race
discrimination claims. The following sections discuss the alleged adverse actions
Olson did not address in her motion, before discussing the one she did address.

> i.    *The actions Olson did not address*

The Court observed in its order that "the conduct and actions complained of
in the third amended complaint do not constitute adverse employment actions."
(Dkt. 81, at 5.) The Court explained that the alleged deprivation of an opportunity
to participate in conference calls could not constitute an adverse action because,
among other things, Olson ultimately admitted during her deposition that she had,
in fact, presented during the calls. (*Id.* at 7.) The Court observed that Takeda
investigating her outside work could not qualify as an adverse employment action
because she did not experience harm and was ultimately approved for outside work
without consequences.[4] (*Id.*) And in holding that Olson being asked to check on
how a co-worker was coping with the death of George Floyd, the Court observed,
among other things, that (1) Olson testified that she did not believe the request was

---

[4] The Court further held that Takeda's questioning occurred for a legitimate,
nondiscriminatory, and nonpretextual reason. (Dkt. 81, at 7–8.) Olson does not present
any valid challenge to that conclusion..

improper or even if she had the discussion with the co-worker; and (2) the request had no impact on the terms and conditions of her employment. (*Id.* at 8.) Olson's Rule 60(b) motion does not address *any* of the foregoing, and thus she identified no pbasis for vacating the Court's judgment as to those claims. (*Id.* at 6–8.)

ii.     *Olson has no viable claim related to her job duties*

The only race-related allegedly adverse action that Olson's motion attempts to address was the "decision to impose Davis's job duties on Plaintiff," which the Court held also did not constitute an adverse action. (Dkt. 81, at 8–9.) Olson cites only two pieces of evidence in making her argument. First, she points to the same Declaration of Jodi Gayle-Garcia that Takeda submitted with its summary judgment motion. Second, she cites to a deposition transcript from an entirely different matter in which (1) Jodi Gayle-Garcia discussed Olson and Davis for a total of two pages and (2) no substantive testimony was elicited concerning the two other than that Davis played basketball for Gayle-Garcia's husband, Davis was black, and Olson was white. (Dkt. 114-2, at 123.) Unsurprisingly, a declaration that the Court considered in entering its summary judgment order and a deposition transcript adding nothing new or relevant does not undermine the Court's ruling.

Olson's substantive arguments similarly regurgitate points the Court has already rejected. Specifically, she argues that mentoring Davis was somehow not part of her job duties. But she wholly ignores—because it was confirmed by her own deposition testimony—the following conclusion of the Court:

> Job duties of senior sales representatives (like Plaintiff) include training and mentoring new sales representatives (like Davis). In her

senior role, Plaintiff was responsible for the entirety of her territory, including assisting her counterpart as needed to ensure that tasks were completed. Plaintiff has failed to demonstrate how any tasks she was asked to perform were outside of her normal job duties. Plaintiff is fundamentally complaining about doing her job – not adverse employment actions. Defendant is entitled to summary judgment on this claim.

(Dkt. 81, at 9 (citation omitted).) The fact that Olson was thanked for assisting Davis does not change the fact that assisting Davis to ensure tasks were completed for her territory was an inherent part of her job duties. (Dkt. 77-1, at 61:14–62:7, 63:12–16.) Thus, Olson's motion presents nothing that would likely lead the Court to a different conclusion as to the existence of a related adverse action.

The Court also held that, independent of the failure to establish an adverse employment action, the race-based claims failed because Davis was not a viable comparator, *based on Olson's own testimony*. (Dkt. 81, at 10.) Among other things,

Plaintiff ultimately admitted when deposed that she could not say that Davis was treated more favorably than her in any way. This is not surprising given the reality that Davis was given continuous performance criticism and coaching, placed on a performance improvement plan, and was ultimately terminated for his job performance issues while Plaintiff remains employed with Defendant.

(Dkt. 81, at 10.) It is thus bizarre that, in her Rule 60(b) motion, Olson ignores her own deposition and testimony and argues that Davis is a viable comparator because "he was treated leniently, whereas Ms. Olson corrected his mistakes." (Dkt. 114, at 9.) Termination, of course, is not "lenient" treatment. Regardless, Olson's argument simply does not align with what is required to establish a comparator—i.e., an individual who was similarly situated in all relevant respects, including by having engaged in the same "quality and quantity" of conduct. *West*

12

*v. Albany*, 830 F. App'x 588, 595–96 (11th Cir. 2020) Olson's Rule 60(b) motion presents no evidence of any such individual. Nor does it address Takeda's legitimate, nondiscriminatory reasons for its actions head-on. (Dkt. 77, at 14–15.)

Finally, Olson makes a cursory argument that she can show pretext and a convincing mosaic because "she was denied promotional opportunities extended to others." (Dkt. 114, at 11.) This argument is curious in several respects. *First*, Olson's Third Amended Complaint only raised the denial of a promotion as a part of her disability—not race—count. (Dkt. 63 ¶¶ 177, 182.) To the extent she now claims to raise new bases for her race claim in a post-judgment motion—which, in any event, are baseless for the same reasons her promotion-based disability claim fails—the effort is obviously improper. *Second*, the contention has nothing to do with the alleged adverse actions actually placed at issue for her race claim, and thus cannot establish pretext for, or anything relevant to, them. *Third*, to establish pretext, a plaintiff must show "*both* that the reason [for the action] was false, *and* that discrimination was the real reason.*" St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516 (1993). But Olson's evidence in her Rule 60(b) motion does neither. *Finally*, for similar reasons, Olson has not shown that race motivated any employment action and thus has not shown a "convincing mosaic" for the same reasons already outlined by the Court. (Dkt. 81, at 16.)

> b.  <u>Olson Has Not Shown Any Facts that Would Change the Court's Judgment as to Her Disability Claims.</u>

Olson has also not presented any facts indicating that the Court is likely to reach a different outcome for each of her disability-based claims.

i.    *Accommodation claim*

Olson's arguments concerning the sufficiency of her failure-to-accommodate claim are conclusory and fall well short of presenting specific facts that would make the Court likely to deny summary judgment. She merely notes that she was initially denied STD benefits before they were reinstated on appeal; claims that Gayle-Garcia knew "of her medical condition and leave"; and claims that she was "requir[ed] to work and provide unnecessary documentation." (Dkt. 114, at 11.) She cites no evidence for this argument, which alone dooms it.

But her argument also in no way undermines the Court's summary judgment ruling, which again was based on Olson's own deposition testimony. Indeed, the Court observed that "Plaintiff admits that she took her full short-term disability leave and was ultimately paid all short-term disability benefits" and that "[b]ecause an interactive process occurred that resulted in Plaintiff being reasonably accommodated, she cannot sustain a failure to accommodate claim." (Dkt. 81, at 11.) That Olson has chosen to ignore the reasons the Court granted summary judgment—and her own deposition admissions—does not entitle her to relief.

ii.    *Disparate treatment claims*

With respect to her disparate treatment claims, Olson similarly argues—in conclusory fashion—that she "was subjected to differential treatment and increased scrutiny not applied to nondisabled peers," had her competence

14

"questioned," and had "reduced collaborative opportunities."[5] (Dkt. 114, at 11.) Those, however, are indisputably not among the bases for the disparate treatment claims cited in the Third Amended Complaint. (Dkt. 63, Count V.) Again, a post-judgment motion is not an opportunity for Olson to assert entirely *new* grounds for her claims. Olson's *actual* bases for the claims were addressed in detail in the Court's order, and nothing in Olson's motion provides evidence or argument specifically countering the Court's findings. (Dkt. 81, at 11–13.)

Moreover, while the Court noted skepticism that any adverse action was at issue, it observed that "the bigger problem for Plaintiff is that her claims lack record factual support." (Dkt. 81, at 12.) That same problem pervades Olson's motion. She cites to no non-conclusory evidence of "differential treatment" or a specific similarly situated "nondisabled peer" supposedly treated more favorably than her. *Salimy v. Bethesda Hosp., Inc.*, No. 13-80728-CIV., 2015 WL 127929, at *7 (S.D. Fla. Jan. 8, 2015) (no comparator where plaintiff "conclusorily allege[d] that other similarly situated employees outside of her protected class were treated better, but she d[id] not identify th[o]se individuals by name or circumstance"). That is because Olson *admitted during her deposition* that she did not know of a nondisabled employee treated more favorably. (Dkt. 77-1, at 292:13–16.)

Further, Olson has done nothing to rebut the Court's holding that Olson had not presented evidence that any decisionmaker in any alleged employment action

---

[5] Increased scrutiny, even if supported by record citations (it is not), would not qualify as an adverse employment action. *See, e.g.*, *Kristoff-Rampata v. Publix Super Markets, Inc.*, No. 315CV01324HESPDB, 2016 WL 11431493, at *5 (M.D. Fla. Nov. 17, 2016).

had knowledge of any disability at the time that individual took the action. (Dkt. 81, at 12–13.) In fact, during her deposition, Olson again admitted that she had no evidence that any decisionmaker in any alleged act she has placed at issue had such knowledge. (Ex. A at 171:13–174:16.) Olson's attempt to claim otherwise in her declaration amounts to nothing more than a sham declaration that cannot be considered. *Akins v. Fulton County*, 278 F. App'x 964, 968 (11th Cir. 2008) ("Under the sham affidavit concept, [w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). In any event Olson cites to no evidence of whom the decisionmaker was for any particular action, or when (if ever) that person learned of a particular disability.

Simply put, there is no evidence at all of a disability being the but-for cause of any employment decision. *See, e.g.*, *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1193 (11th Cir. 2024) (disability claim must meet a but-for causation standard). And thus Olson's motion does not support a request for Rule 60(b) relief.

### iii.    *Failure to promote claim*

With respect to Olson's failure-to-promote claim, the Court granted summary judgment because (1) she was not qualified for the opening because her receipt of a warning letter in the six months prior made her ineligible, which was also a reason for her not being selected; (2) Olson could not identify any nondisabled person chosen for the territory manager role; and (3) she was not

believed to have consistently demonstrated strong competencies as a potential territory manager. Olson's Rule 60(b) motion largely ignores these issues. She ignores that her warning letter rendered her ineligible for the opening, arguing in conclusory fashion that it was "pretextual," despite admitting that she engaged in the conduct that resulted in the letter.[6] She ignores that she cannot identify any nondisabled individual chosen over her. And she ignores her prior deposition testimony that she could not say any individual involved in the decision believed she was ready to be a territory manager—that is, the testimony as to Hand's and Crouch's beliefs at the relevant time was and remains unrebutted. (Dkt. 77-3 ¶ 8; Dkt. 77-4 ¶ 5; Dkt. 77-1, at 269:9–270:10.) Olson's subjective belief that she was ready for the role is irrelevant. *See, e.g.*, *Lewis v. Blue Bird Corp.*, 835 F. App'x 526, 530 (11th Cir. 2020) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs or reality as it exists outside the decision maker's head."). Nor has she shown facts, for pretext, demonstrating that disability-based animus was the but-for cause of her non-selection. *See Akridge*, 93 F.4th at 1193.

### iv.    *Retaliation claims*

The Court next granted summary judgment on the retaliation claims

---

[6] Olson makes a conclusory assertion that "[t]he promotion denial was learned when a performance review was done with Matt Hand, which was prior to the warning letter." (Dkt. 114, at 12). That contention is not supported by any evidence. In her declaration, Olson states that her "review had already been finalized and discussed" before the warning letter issued. (Dkt. 114-2, at 165 ¶ 15.) She did *not* state (because it did not happen) that any promotion decision was made at that time. Instead, as explained by Hand in undisputed evidence, "[t]hat review had no impact on whether Olson was (or was not) promoted to Territory Manager." (Dkt. 77-3 ¶¶ 7.)

because (1) the alleged adverse actions were the same as for her disparate treatment claim, and thus were insufficient for the same reasons; (2) Olson did not establish causation between her April 2021 short-term disability leave and any adverse action; and (3) Takeda had legitimate, nonretaliatory reasons for its actions. (Dkt. 81, at 14–15.) Olson presents conclusory arguments in response, which wholly fail to address these fundamental facts. (Dkt. 114, at 12.) Moreover, to the extent she now tries to claim new adverse actions of "reduced assignments and negative commentary," she cannot raise new claims now, and in any event, she did not support with evidence as to each prima facie element.

v.    *Hostile work environment claim*

Olson's defense of her hostile work environment claim is similarly conclusory and insufficient to survive summary judgment or support Rule 60(b) relief. Olson ignores *her own deposition admissions* that she could not identify any comments she believed were discriminatory on the basis of her disability (Dkt. 77-1, at 273:20–274:11) or any conduct that she believed was discriminatory, apart from the handling of her STD claim, which the Court found was for legitimate, nondiscriminatory reasons (*id.* at 279:14–18). To the extent she now claims "marginalization, removal from team communications, and dismissal of contributions" (Dkt. 114, at 12), based on her testimony above, she cannot tie them to a disability. *See Mendoza v. Borden*, 195 F.3d 1238, 1247–48 (11th Cir. 1999) (plaintiff cannot "buttress a hostile work-environment claim with evidence but [unrelated to the protected trait], conduct"). Nor do the matters she cites, which

are not supported by evidence, come anywhere close to severe or pervasive harassment, as a matter of law. *See, e.g.*, *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 807 (11th Cir. 2012) (finding "only a few dozen comments or actions . . . over a period of eleven months" insufficient); *Mitchell v. Pope*, 189 F. App's 911, 913–14 & n.3 (11th Cir. 2006) (finding approximately 16 categories of incidents, some of which occurred multiple times, insufficient).

### C.    There Is No Basis for the Court to Shift Attorneys' Fees.

Finally, Olson asks that the Court "condition relief on her former counsel reimbursing Defendant's reasonable fees incurred in this matter." (Dkt. 114, at 14.) In effect, Olson asks that, if this Court does not set aside the judgment, it shift any attorneys' fees to her former counsel. This argument suffers from clear defects.

*First*, Olson's opportunity to challenge the entry of a fee award against was while Takeda's motion to determine its fee entitlement was pending. Olson did not request fee shifting in her opposition. Nor did she file any objection to the Report and Recommendation ("R&R") issued by the Magistrate Judge, despite being informed that the failure to object to the R&R resulted in waiver. (Dkt. 107.)

*Second*, the fundamental problem with Olson's argument is that it is not only legally baseless, but it asks this Court to act in contravention of the statutes under which fees are being awarded to Takeda.[7] The Court awarded fees under Title VII, the ADA, and the FCRA. (Dkts. 107–08.) Those statutes, however, only authorize

---

[7] Although this dispute is lagely between Olson and her counsel. Takeda has no desire to invite further wasteful litigation activity flowing from Olson's obstinate and baseless litigation activity, including via any appeal that may result from Olson's meritless request.

an award of attorneys' fees against a *party*—not her counsel. *See, e.g.*, *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1238 (11th Cir. 2007) ("The Title VII attorney's fee provision . . . authorizes attorney's fees *only* against litigants, not against counsel."); *Williams v. Packaging Corp. of Am.*, No. 7:06-cv-111(HL), 2010 WL 1418378, at *5 (M.D. Ga. Apr. 7, 2010) ("Title VII[] and ADA cases contemplate that the losing party will pay the fees, not the party's attorney."); *Jones v. United Space Alliance, LLC*, 494 F.3d 1306, 1310 (11th Cir. 2007) (holding that "the FCRA is modeled on Title VII" and that fee standards for Title VII apply to the FCRA). That is, Takeda could not have sought fees from Olson's counsel, and thus the same fees cannot now be shifted to them by Olson.

Olson's motion is tellingly absent of any authority supporting the extraordinary relief she requests. In fact, the only case that she cites is *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 931 (5th Cir. 1976). But it is difficult to discern why she does, given that attorneys' fees are not discussed in that decision.

*Finally*, Olson motion provides no legitimate basis for the shifting of attorneys' fees. Her arguments are simply a rehashing of the baseless arguments she raises in support of her request for Rule 60(b) relief. Just as those arguments were insufficient there, they do not support the fee-related relief requested here.

## III. CONCLUSION

In light of the foregoing, Olson's motion should be denied.

Respectfully submitted November 4, 2025.

**SEYFARTH SHAW LLP**

By: _/s/ Andrew M. McKinley_

     Andrew M. McKinley
     Florida Bar No. 122069
     1075 Peachtree Street, N.E.
     Suite 2500
     Atlanta, GA 30309-3958
     Telephone:  (404) 885-1500
     Facsimile:  (404) 892-7056
     amckinley@seyfarth.com

     *Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2025, the document was filed via CM/ECF, which served a copy of the same on all counsel of record.

/s/ *Andrew M. McKinley*
Andrew M. McKinley