IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SHANNON OLSON,<br><br>Plaintiff,<br><br>v.<br><br>TAKEDA PHARMACEUTICALS USA, INC., et al.,<br><br>Defendants. | Case No.: 8:23-CV-590 |

**CASE MANAGEMENT CONFERENCE PROCEEDINGS**
**BEFORE THE HONORABLE THOMAS P. BARBER**
**UNITED STATES DISTRICT JUDGE**

**September 27, 2023**
**1:59 p.m. to 2:11 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:** MICHAEL A. MENDOZA, ESQUIRE
Mendoza Family Law
200 East Robinson Street
Suite 1270
Orlando, Florida 32801

**FOR THE DEFENDANTS:** ALEXANDER C. MEIER, ESQUIRE
Lee Meier
695 Pylant Street NE
Suite 105
Atlanta, Georgia 30306

**ALSO PRESENT:** SHANNON OLSON, PLAINTIFF

(Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.)

**REPORTED BY:**
Rebekah M. Lockwood, RDR, CRR
Official Court Reporter
(813) 301-5380 | r.lockwooduscr@gmail.com
801 North Florida Avenue, Tampa, Florida 33602

(Call to Order of the Court at 1:59 p.m.)

**THE COURT:** Next case is Olson versus Takeda.

Go ahead and introduce yourselves, starting when you get to the podium, please.

The plaintiff, go ahead.

**MR. MENDOZA:** Good afternoon, Your Honor. Michael Mendoza appearing here today on behalf of the plaintiff, Shannon Olson.

**MR. MEIER:** Good afternoon, Your Honor. Alex Meier on behalf of all the defendants who have been served, which would be Takeda, Jodi Gayle-Garcia, Matthew Hand, and --

**THE COURT:** The individuals.

**MR. MEIER:** Well, the individuals who have been served.

**THE COURT:** Right.

**MR. MEIER:** Because Ms. Miller, Heidi Miller, and Gregory Crouch have not been served.

**THE COURT:** Maybe they won't be, because are you guys agreeing to sue the corporate entity and not the individuals, and we can clean it up that way?

**MR. MENDOZA:** So just as a preliminary statement -- I'm local counsel here. Mr. Yoder is, I think, lead counsel for the plaintiff in this case. Just wanted to make the Court aware, it's my understanding that there is another local counsel who's filed a notice of appearance on this case.

**THE COURT:** There is?

**MR. MENDOZA:** I'm sorry?

**THE COURT:** I didn't know that, but --

**MR. MENDOZA:** I received a copy of it this morning. I can provide her name. The plaintiff, just so the Court is aware -- I recognize this a little unusual, but she has elected to be present and is here in the gallery today.

**THE COURT:** That's okay.

**MR. MENDOZA:** So notwithstanding, I don't know -- I do know that the defendants have filed a motion to dismiss, that that is pending. Today is the deadline to file a response in opposition and a brief in opposition to that motion to dismiss. It's my understanding that that is forthcoming. Mr. Yoder will be filing that. Unfortunately, he couldn't be present today.

**THE COURT:** Well, yeah. I don't know what's going on. I have in my notes, parties, you know, called, don't want to come to court. My cases are held in the United States District Court in Tampa, Florida, not by Zoom, not by phone call. So if you want to have a case in this court, you've got to come to court. Now, I don't have a problem if people cover it. That's fine. Whoever the lawyers are can cover it. But I also do things in court, too.

And I'll just tell you right now, my reading of this case -- I haven't seen his response yet. I'll take a look at

it. But my reading of the -- I mean, and I know that the plaintiff, Ms. Olson, might want to sue these people individually. She might like to do that. She might wish she could do that, but that doesn't mean the law lets her do it.

My reading of the case is, that it's not going to -- it's going to be almost impossible to sue the individuals, and there's a claim for intentional infliction of emotional distress. This is an employment case. That's probably not going to make it either. And he's probably going to have to replead. So I'll take a look at it.

By the way, since Ms. Olson is here, if the case is dismissed -- I had clients that got all upset when their case -- they said, why did my case get dismissed? That sounds terrible. It doesn't mean anything. In the system, when the cases are dismissed, they're almost always dismissed with what's called leave to amend, which means you reword your complaint, and you change some things around, and then you're good to go in court.

So if I end up dismissing this, I'm not really dismissing it forever. I'm just saying replead, take out the individuals, take out the intentional infliction of emotional distress, and then we'll see where we are. Probably a good case at that point. Probably not going to get dismissed with prejudice. It's probably going to have to be litigated a little bit and see where we are.

So that's where I am on this. But I still don't have a case management report. You should be able to respond to that. What's the deal on that?

**MR. MEIER:** Your Honor, I just received a draft JCMO this morning. I provided my edits to the joint case management order, and we'll get one filed, hopefully today, now that I've had one.

**MR. MENDOZA:** If I may add to that, Your Honor. I do have a little knowledge of that. This morning, Mr. Yoder filed a Rule 6 motion for leave to file, based on the passage of the deadline. I believe it was August 31st. He briefed that. It included a proposed case management report as an exhibit to that. So that is before the Court. However, that draft, just as Mr. Meier mentioned, did not include the benefit of his red-line edits to those. So he has provided those. I expect that Mr. Yoder will provide those.

**THE COURT:** Can we just do it right now? Is anything controversial? I mean, what is it? Can we just talk about it and get it done and say it's done?

**MR. MEIER:** Sure. I'm happy to do that.

**THE COURT:** Yeah.

**MR. MEIER:** So the only -- there are kind of three, I guess, main issues that we had with the draft report. The first is consent-to-magistrate jurisdiction. We do not consent to that. The box was checked that there was consent.

**THE COURT:** That's not debatable unless both sides agree. Now, I'll tell you this much. My system of coming to court in Tampa, Florida is totally optional. It's totally optional. If you agree to the magistrate, you can do it -- they don't make you come to court. So if anyone has an issue coming to court, just consent to the magistrate. They're very experienced people.

Who's the magistrate on this thing? Judge Tuite. Very experienced guy. He'll do it the usual federal court way, where you can do everything by paper and that sort of thing.

**MR. MEIER:** I like Tampa. Nothing wrong with visiting.

**THE COURT:** All right. Well, then, don't call and say you don't want to come, because I'm going to say you should have agreed to the magistrate.

**MR. MEIER:** Understood, Your Honor. I did not --

**THE COURT:** All right. So that's nonnegotiable.

What else?

**MR. MEIER:** I think the deadlines for discovery are a little far out in the draft that I received. It was July 26th. I think we pushed that up to April 26th of 2024. The dispositive motion deadline was September 13th, '24. I think that can be pushed up, again, to May 17th. The deadline for participating in mediation, I think, is far too far out. It's my opinion that this is a case that would benefit from an early

mediation rather than one, say, at the close of discovery.

Ms. Olson is still employed by Takeda. She's been there for 20-plus years. So this isn't the case where the adverse employment action is a termination of employment. And so I'd like to get a demand so that we could have a conversation about that. I haven't gotten one yet. And I think we would benefit from getting a decision on the motion to dismiss and then potentially trying to schedule a mediation soon after that.

So my proposal was to put the mediation deadline as December 22nd, '24 rather than -- or excuse me -- yeah, December 22nd of '23, not October 25th of '24.

**THE COURT:** There's nobody that says you can only -- you know, you can mediate once a month until the end of the case. I mean, it's not a one-time-only thing.

Okay. Here's what we're going to do on that. Everything you just said is overruled. We're going with what the plaintiff wants, except that mediation. I agree with you on that. The reason I'm letting this case go a little longer and not tightening it up, like you're suggesting, is we're going have to go back and forth a little on an amended complaint and stuff like that. That's going to burn some time.

So -- but I agree with you. Do the mediation by December of whatever date you said, and we'll go with that.

Sonya, you don't have anything from them, or do you

have what you need?

**THE COURTROOM DEPUTY:** Yes, sir.

**THE COURT:** Okay. All right. Is that clear? Good? So we're doing it the plaintiff's way on those last objections, except the one about the mediation.

Who are you going to use for a mediator in this case? Any ideas?

**MR. MEIER:** The mediator that I proposed was Marlene Quintana at GrayRobinson.

**THE COURT:** Okay. This is a different case, when you got somebody who's been working there 24 years and is still working there. I mean, they need to figure it out. Is there a way to do it sooner rather than later, I think, is what you're trying to accomplish. And I agree with that. Because she still wants to work there. Right? She hasn't quit. Right?

**MR. MENDOZA:** She has not quit.

**THE COURT:** You still want to work there? All right. So let's sit down, talk turkey, and not spend a bunch of money on attorneys going back and forth over unnecessary stuff, if we can get this worked out.

What do you do there?

**MS. OLSON:** I'm in sales.

**THE COURT:** Sales, like pharmaceutical sales? Like you go around to doctors and stuff? Huh. Okay.

What is your particular drug that you represent?

**MS. OLSON:** So it's -- I have something for depression.

**THE COURT:** Depression. Probably get a lot of business with that. Right.

**MS. OLSON:** Number one cause of disability in the US.

**THE COURT:** And you probably make a lot of money doing that, too. So it's a win-win for everybody. No? The reason I say that is because it's kind of a little bit of a thing that lawyers throw around and say, oh, I should have been a pharmaceutical rep, because we think that you guys make all this money. That's all. Maybe not.

**MR. MEIER:** Lawyers support a lot of pharmaceutical reps.

**THE COURT:** What?

**MR. MENDOZA:** Lawyers support a lot of pharmaceutical reps.

**THE COURT:** Yeah. Yeah. What's another thing?

(Discussion off the record.)

**THE COURT:** All right. I think we've cleaned this thing up a lot. I'll take a look at whatever Mr. Yoder is going to file on this. I'll do a quick written order. If there's an amended complaint, do the amended complaint. And I think we're in business.

What else can I do on this to try to get these parties working together?

**MR. MEIER:** Your Honor, I'd like to have the two unserved defendants dismissed.

**THE COURT:** Okay. We'll see what he says on that. You've already heard kind of where I'm leaning on that.

What else?

**MR. MENDOZA:** Your Honor, just a question in terms of procedure. I know that the Court has probably not yet received the notice of appearance from new local counsel.

**THE COURT:** Right.

**MR. MENDOZA:** Okay. I recognize the local rule requires a motion to withdraw. I've had a conversation with Mr. Meier. Of course, the defendants don't oppose that.

What's the best way forward to handle that in light of the notice of appearance not hitting the file?

**THE COURT:** I don't care.

Sonya, do you care? What do you want him to do?

Are you making an oral motion to withdraw because somebody else has filed a notice of appearance?

**MR. MENDOZA:** Yes. That's correct.

**THE COURT:** Granted.

**MR. MENDOZA:** Thank you, Your Honor.

**THE COURT:** All right. Done. That's it.

Future court date -- what's our January date, Sonya?

**THE COURTROOM DEPUTY:** January 17th.

**THE COURT:** See me on January 17th. I'm going to

want to know how that December mediation went. I'm going to want to hope that everyone has a merry Christmas and they get this thing worked out. All right.

**MR. MENDOZA:** Thank you, Your Honor.

**MR. MEIER:** Thank you.

**THE COURT:** See you next time. Not you. We'll see you next time.

**MR. MEIER:** One minor point of clarification. Is that for 1:30 set, as well, or is that in the morning?

**THE COURT:** 1:30.

**MR. MEIER:** Thank you, Your Honor.

**THE COURT:** You'll get a case management order from me probably today or tomorrow that has all the dates in it that we just went over. Take that, calendar those dates, and you're in business.

**MR. MEIER:** Thank you, Your Honor.

**MR. MENDOZA:** Thank you, Your Honor.

**THE COURT:** Thank you.

(Proceedings adjourned at 2:11 p.m.)

**CERTIFICATE OF REPORTER**

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

I, Rebekah M. Lockwood, RDR, CRR, do hereby certify that I was authorized to and did stenographically report the foregoing proceedings; and that the foregoing pages constitute a true and complete computer-aided transcription of my original stenographic notes to the best of my knowledge, skill, and ability.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand at Tampa, Hillsborough County, Florida, this 17th day of April 2026.

REBEKAH M. LOCKWOOD, RDR, CRR
Official Court Reporter
United States District Court
Middle District of Florida