**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 25-14527
Non-Argument Calendar

---

SHANNON OLSON,

*Plaintiff-Appellant,*

*versus*

TAKEDA PHARMACEUTICALS AMERICA, INC.,

*Defendant-Appellee,*

TAKEDA PHARMACEUTICALS USA, INC.,
f.k.a. Takeda Pharmaceuticals North America, Inc., et al.,

*Defendants.*

---

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cv-00590-TPB-CPT

---

Before JORDAN, ROSENBAUM, and KIDD, Circuit Judges.

PER CURIAM:

Shannon Olson appeals the district court's denial of her motion under Fed. R. Civ. P. 60(b)(6) to reopen the judgment on her employment-discrimination action against Takeda Pharmaceuticals America, Inc. After careful review, we affirm.

**I.**

Olson worked as a pharmaceutical sales representative for Takeda for more than two decades. In March 2023, she filed a counseled employment-discrimination complaint against Takeda and other defendants. Her operative third amended complaint asserted five claims for relief: race discrimination under Title VII, religious discrimination under Title VII, religious discrimination under the Florida Civil Rights Act ("FCRA"), disability discrimination under the Americans with Disabilities Act ("ADA"), and disability discrimination under the FCRA. The district court dismissed the religious discrimination claims with prejudice, and the remaining claims proceeded to discovery.

*A.*

On September 27, 2024, Takeda moved for summary judgment. The district court granted Olson's motion for an extension of time to respond, setting a deadline of November 1, 2024. No summary-judgment response was filed. So on January 29, 2025, the court granted Takeda's motion for summary judgment.

In February 2025, Takeda moved to determine entitlement to attorney's fees and expenses as a prevailing party. Olson responded in opposition, asserting that, due to information that came out during discovery, she had declined to oppose the motion for

summary judgment "in good faith and to conserve judicial resources." A magistrate judge concluded that Takeda was entitled to reasonable attorney's fees because the action was frivolous, and the district court adopted the judge's recommendation without objection by either party. On September 30, 2025, Takeda sought an award of $332,859.50 in attorney's fees and $6,559.16 in expenses.

*B.*

Meanwhile, after obtaining substitute counsel in June 2025, Olson moved for relief from the judgment under Federal Rule of Civil Procedure 60(b) on October 14, 2025. She argued that prior lead counsel, Michael Alan Yoder, had "entirely abandoned her case" by failing to file any opposition to summary judgment or to respond to another attorney who possessed potential evidence. She also asserted that her underlying claims had merit.

Olson attached more than 300 pages of supporting exhibits to her Rule 60(b) motion. The exhibits showed that, in March 2024, Yoder was contacted by another attorney, offering to speak about a race-discrimination case involving Olson's supervisor at another company, but Yoder never followed up. Then, on September 6, 2024, just weeks before Takeda moved for summary judgment, Yoder agreed to a six-month suspension of his Virginia law license for failing to draft a complaint after agreeing to do so and failing to keep clients reasonably informed, among other violations. Olson also submitted a personal declaration, asserting that she had believed Yoder "was preparing and would file an opposition" to sum-

mary judgment, but that she "later formally learned that no opposition had been filed, and that summary judgment was granted . . . without [her] knowledge or participation."

Takeda responded in opposition to the Rule 60(b) motion and submitted two declarations from Rachel Dreher, who, along with Yoder represented Olson from September 2023 through June 2025. The second declaration included text messages between Olson and Dreher in October and November of 2024 about the motion for summary judgment.

In the text messages, Dreher conveyed to Olson her belief that she lacked evidence necessary to support a good-faith response in opposition to Takeda's motion for summary judgment, which she described as "very strong." Dreher wrote that Olson had "major issues with both claims since the black employee was fired for bad performance but you were not and they paid you for your leave and ultimately granted the disability." Dreher also noted her concern "about being sanctioned if we submit frivolous papers." A few days later, on November 4, Dreher told Olson that the motion for summary judgment "will be granted as it's unopposed and the case will be over."

Olson filed a reply in support of her Rule 60(b) motion, submitting additional emails and text messages between Dreher, Olson, and Yoder, as well as emails between Dreher and Olson's new counsel in June 2025. In the latter emails, Dreher told new counsel that Yoder had been lead counsel and that he had the "entire case file," and that she had only "limited information and access."

Nonetheless, in an August 2025 email to Olson, Yoder indicated that he had given Dreher "access to [the case file] repeatedly."

The district court denied Olson's motion for relief from the judgment under Rule 60(b). In a paperless order, the court found that Olson had not shown that she acted diligently while the motion for summary judgment was pending or after judgment was entered. The court noted that she had offered "zero explanation" for not filing the Rule 60(b) motion until "over eight and a half months after the entry of judgment" and "nearly four months after retaining new counsel." The court also rejected Olson's "claims that her prior counsel 'abandoned' her and that she did not know about the strategic decision to not respond to the summary judgment motion," stating that the text messages between Dreher and Olson "show these claims to be, at best, inaccurate." Finally, the court suggested that Olson may have filed the Rule 60(b) motion "only when confronted with the possibility of an award of attorney's fees against her."

Olson appeals the denial of her Rule 60(b) motion. Takeda responds and requests sanctions against Olson under Federal Rule of Appellate Procedure 38 for filing a frivolous appeal.

**II.**

Rule 60(b) vests "district courts with the power to vacate judgments whenever such action is appropriate to accomplish justice." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (quotation marks omitted). Because relief under Rule 60 is "directed to the sound discretion of the district court," our review is

"limited to whether the district court abused its discretion in denying the Rule 60 motion." *Id.* The appellant "cannot prevail simply because the district court properly could have vacated its order." *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) (quotation marks omitted). Instead, the appellant "must demonstrate a justification so compelling that the district court was required to vacate its order." *Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1294 (11th Cir. 2013) (quotation marks omitted).

"A district court's decision to grant or deny an evidentiary hearing in a Rule 60(b) proceeding is also reviewed only for an abuse of discretion." *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1207 (11th Cir. 2014). When "[a]n evidentiary hearing would have served no useful purpose in aid of the court's analysis," a court does not abuse its discretion by failing to hold one. *Cano v. Baker*, 435 F.3d 1337, 1342–43 (11th Cir. 2006).

*A.*

Rule 60(b)(1) permits post-judgment relief based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). But we have shown a "wariness of grants of Rule 60(b)(1) relief for excusable neglect based on claims of attorney error." *Cavaliere*, 996 F.2d at 1115. Rule 60(b)(6) provides a catchall for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Because Rule "60(b)(1) and (b)(6) are mutually exclusive[,] . . . a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)." *Cavaliere*, 996 F.2d at 1115.

"Relief under Rule 60(b)(6) requires extraordinary circumstances." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025). The party seeking relief under Rule 60(b)(6) "has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." *Griffin*, 722 F.2d at 680.

Generally speaking, "represented parties are not entitled to relief simply because they were penalized by the omissions of counsel." *United States v. Davenport*, 668 F.3d 1316, 1325 (11th Cir. 2012). In other words, clients "bear[] the risk of negligent conduct on the part of" their attorneys. *Maples v. Thomas*, 565 U.S. 266, 281 (2012). Thus, "claims of attorney error and even attorney malpractice, including strategic miscalculation or counsel's misinterpretation, do not warrant an award of relief under Rule 60(b)(1), [or] . . . under Rule 60(b)(6)." *King v. United States*, 143 F.4th 705, 711 (6th Cir. 2025); *see Chavez-DeRemer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 416 (4th Cir. 2025) ("[S]trategic decisions made during the course of litigation—even if later second-guessed—will not justify relief under Rule 60(b)(6).") (quotation marks omitted).

But "under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him." *Maples*, 565 U.S. at 283. Some courts have found exceptional circumstances where a diligent client was harmed by counsel's "gross neglect," "gross misconduct," or abandonment. *See Solaroll Shade & Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986); *see Thomas v. Att'y Gen.*, 992 F.3d 1162, 1181–82 (11th Cir. 2021) (discussing "when an attorney's misconduct may rise to

the level of 'extraordinary circumstances'" for purposes of equitable tolling); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1170 (9th Cir. 2002) ("[A]n attorney's gross negligence may constitute 'extraordinary circumstances' under Rule 60(b)(6)."). We have not applied Rule 60(b)(6) to grant relief on these grounds, however. *See, e.g.*, *Solaroll Shade*, 803 F.2d at 1133 (suggesting that relief for attorney error is not available under Rule 60(b)(6)).

*B.*

Here, the district court did not abuse its discretion by denying Olson relief from the judgment under Rule 60(b)(6). Olson has not shown extraordinary circumstances "so compelling that the district court was required to vacate its order." *Galbert*, 715 F.3d at 1294. Even assuming Rule 60(b)(6) permits relief in cases of attorney abandonment, the record does not support Olson's claim that she ceased to have meaningful representation of counsel in the underlying proceeding, despite the failure to oppose Takeda's summary-judgment motion.

Olson's Rule 60(b) motion claimed that she had been abandoned by lead counsel Yoder, whose license to practice law in Virginia was suspended just weeks before Takeda filed its summary-judgment motion. Yoder was licensed in Virginia and the District of Columbia, and he appeared in this case *pro hac vice*.

But the Rule 60(b) motion did not address cocounsel Dreher. And text messages between Dreher and Olson—the validity of which Olson does not dispute—establish that they actively dis-

cussed the motion for summary judgment on October 31 and November 1. These communications do not support Olson's current claim that Dreher "lacked the file and the record" and so could not function as counsel.

Olson cherry-picks Dreher's comments that she had "nothing" to work with and did not "have anything to use for opposition," casting them as admissions that Dreher lacked necessary records. But it's clear in context that Dreher was referring to the legal sufficiency of Olson's claims for race and disability discrimination. Dreher referenced the strength of Takeda's motion and outlined specific details about and problems with Olson's claims, noting that Olson's alleged comparator "was fired for bad performance but you were not and they paid you for your leave and ultimately granted the disability." Dreher also stated that she had "spent the entire week looking for ANY angle to go with."

We see nothing in these messages to support, let alone to compel, the conclusion that Dreher was prevented from drafting an opposition due to lack of access to the case file. In fact, Olson submitted an email from Dreher to Olson dated October 31, 2024, advising that based on Dreher's review of "the file, defendant's motion for summary judgment, the depositions and other discovery[,] . . . there is no justifiable legal argument for me to raise in opposition of defendant's motion for summary judgment." That's also consistent with representations made in post-judgment filings by Dreher on Olson's behalf in opposition to Takeda's request for attorney's fees.

Olson's other evidence is likewise insufficient to suggest that Dreher "lacked the record" or was otherwise prevented from responding to the summary-judgment motion. Whether Dreher had only "limited information and access" to the case file in June 2025, as she told new counsel, says very little about whether she had access to the case file at the relevant time more than six months earlier. And other evidence indicates that Yoder had given Dreher "access to [the case file] repeatedly." Olson further notes that Dreher relied on advice from Yoder, a "suspended attorney." But in any event, Olson remained represented by Dreher, a licensed attorney.

In sum, evidence submitted by both parties tends to contradict Olson's claim that she was abandoned by counsel in the underlying proceeding. Rather, the record shows that Dreher represented and communicated with Olson in connection with the motion for summary judgment, and that Dreher decided not to oppose Takeda's motion for summary judgment out of concern that she lacked good-faith grounds to do so based on evidence that came out during discovery.

The district court reasonably concluded that this conduct did not reflect abandonment of the attorney-client relationship or other extraordinary circumstances warranting relief under Rule 60(b)(6). *See King*, 143 F.4th at 711 (stating that claims of "attorney error" or "strategic miscalculation" do not warrant relief under Rule 60(b)); *Solaroll Shade*, 803 F.2d at 1132.

Additional factors support the district court's denial of Rule 60(b) relief in this case. A "lack of diligence" may suggest an absence of extraordinary circumstances. *See Gonzalez v. Crosby*, 545 U.S. 524, 537 (2005) (describing the circumstances of a petitioner's case as "all the less extraordinary" where he showed a "lack of diligence in pursuing review" of his case); *Tucker v. Commonwealth Land Title Ins. Co.*, 800 F.2d 1054, 1056 (11th Cir. 1986) (concluding that a ten-month lapse evidenced a "lack of diligence preclud[ing] Rule 60(b)(6) relief"). We have recognized that, to warrant Rule 60(b) relief, a client generally has a "duty to act with some diligence to ensure that [her] attorney was protecting [her] interests." *Fla. Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993).

The record here supports the district court's finding that Olson did not act diligently to protect her interests after learning in November 2024 that her attorneys intended not to oppose the motion for summary judgment. The court did not enter final judgment until January 30, 2025, but it appears Olson did not alert the court or seek any relief until she filed the Rule 60(b) motion on October 14, 2025, nearly a year after the summary-judgment deadline. Olson's lack of diligence in raising the issue either before or soon after entry of judgment weighs against a finding that the circumstances here were extraordinary. *See, e.g.*, *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 738 (11th Cir. 2014) (concluding that an unexplained five-month delay in moving for Rule 60(b)(6) relief was "unreasonable").

Olson also has not made an "affirmative showing of a [claim] that is likely to be successful." *Solaroll Shade*, 803 F.2d at 1133. Olson's Rule 60(b) motion did not offer grounds for concluding that the district court overlooked important evidence or arguments in resolving her claims. Rather, her motion was largely directed at relitigating the court's rulings at summary judgment, which were based in substantial part on Olson's own deposition testimony.[1]

While Olson contends that Yoder failed to develop the record, noting that he conducted only two depositions of corporate representatives, she fails to explain how the testimony of unspecified "fact witnesses, comparators, or supervisors" would have made a difference at summary judgment. And she makes no attempt on appeal to address the deficiencies identified by the court in granting summary judgment.

For these reasons, Olson has not met her heavy burden of establishing circumstances "so compelling that the district court was required to vacate its order," even assuming the court would have been permitted to reopen proceedings under Rule 60(b). *See Galbert*, 715 F.3d at 1294.

*C.*

---

[1] For instance, the district court noted that, during her deposition, Olson admitted that she could not say that the comparator was treated more favorably than she was in any way, that she took her full short-term disability leave and was ultimately paid all short-term disability benefits, and that no one said anything to her that was discriminatory on the basis of disability.

Finally, the district court did not abuse its discretion by declining to hold an evidentiary hearing before denying Olson's Rule 60(b) motion. *See Lugo*, 750 F.3d at 1207. A court's findings of fact are not "clearly erroneous simply because it did not hold an evidentiary hearing." *Jenkins v. Anton*, 922 F.3d 1257, 1270–71 (11th Cir. 2019). And the court here did not need to hold a hearing because the relevant facts were set forth adequately in the record and the supplemental evidentiary materials submitted by both parties. Olson's suggestion that Dreher lacked access to the case file is too speculative to warrant a hearing. *See United States v. Arias-Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006) (noting that evidentiary hearings are not required to explore "mere speculation" or unsupported assertions); *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("Conclusory allegations are simply not enough to warrant a hearing.").

Because we cannot say that an evidentiary hearing would have served a "useful purpose in aid of the court's analysis," the district court did not abuse its discretion by failing to hold a hearing before denying the Rule 60(b) motion. *See Cano*, 435 F.3d at 1342.

**III.**

Finally, Takeda seeks an award of its attorney's fees and double costs under Appellate Rule 38, which permits an award of "just damages and single or double costs" if we determine "that an appeal is frivolous." Fed. R. App. P. 38. "Rule 38 sanctions are appropriately imposed against appellants who raise clearly frivolous claims in the face of established law and clear facts." *Parker v. Am.*

*Traffic Sols., Inc.*, 835 F.3d 1363, 1371 (11th Cir. 2016) (quotation marks omitted). And in this Circuit, "a claim is clearly frivolous if it is utterly devoid of merit." *Id.* (quotation marks omitted). But a losing appeal is not necessarily a frivolous one. And here, although we affirm the denial of Olson's Rule 60(b) motion, we cannot say that the appeal was so "utterly devoid of merit" as to warrant the imposition of sanctions. *See id.* Accordingly, we **DENY** the motion for sanctions.

**IV.**

In sum, we affirm the denial of Olson's motion for relief from the judgment under Rule 60(b)(6).

**AFFIRMED.**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 16, 2026

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 25-14527-AA
Case Style: Shannon Olson v. Takeda Pharmaceuticals America, Inc.
District Court Docket No: 8:23-cv-00590-TPB-CPT

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. The Court has proposed amending 11th Cir. R. 40-1 (Number of Copies) to no longer require paper copies of a petition for panel rehearing or a petition for rehearing en banc. Based on the proposed amendment, other than an original petition filed in paper by a non-electronic filer, **parties are asked not to submit any paper copies** of a petition for panel rehearing or a petition for rehearing en banc.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion